# Exhibit C

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director*
Camp Springs, MD 20588-0009



January 1, 2026                                                                PM-602-0194

# Policy Memorandum

**SUBJECT:**   Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries[1]

**Purpose**

Effective immediately, this memorandum directs U.S. Citizenship and Immigration Services (USCIS) personnel to:

1. Place a hold[2] on all pending benefit applications, for aliens[3] listed[4] in Presidential Proclamation (PP) 10998, *Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States*,[5] pending a comprehensive review, regardless of entry date;[6]
2. Conduct a comprehensive review of all policies, procedures, and screening and vetting processes for benefit requests for aliens from countries listed in PP 10998; and
3. Conduct a comprehensive re-review of approved benefit requests implicated in PP 10998 that were approved on or after January 20, 2021.

---

[1] On December 16, 2025, the President issued Presidential Proclamation (PP) 10998, *Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States*. Exercising authority under INA 212(f), the proclamation continues the full restrictions and entry limitations of nationals from the original high-risk countries established under PP 10949, *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats* (June 4, 2025), and imposes restrictions, limitations, and exceptions on additional high-risk countries. Under INA 212(f), the President may suspend or restrict the entry of any aliens deemed detrimental to U.S. interests.

[2] A "hold" allows a case to proceed through processing, up to final adjudication. A "final adjudication" refers to the issuance of a final decision on a case, such as an approval, denial, or dismissal.

[3] The term "alien" means any person not a citizen or national of the United States. See INA 101(a)(3) and 8 U.S.C. 1101(a)(3).

[4] This refers to aliens with a nationality, country of birth, or aliens who have acquired Citizenship by Investment (CBI) listed in PP 10998. "As an example, a foreign national from a country that is subject to travel restrictions could purchase CBI from a second country that is not subject to travel restrictions, obtain a passport in the citizenship of that second country, and subsequently apply for a United States visa for travel to the United States, thus evading the travel restrictions on his or her first country." Further, this includes aliens with varying nationalities but are traveling on a Palestinian-Authority-issued document.

[5] This applies to aliens who list one of the high-risk countries as their Country of Birth or Country of Citizenship.

[6] Immigrant visas for family members of individuals in the United States will no longer be automatically or broadly exempt from PP 10949 and JP 10998 restrictions or requirements. Family-based immigrant visa applications are now subject to the same review, restrictions, or additional scrutiny as other benefit requests.

PM-602-0194: Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries
Page: 2

This memorandum specifies which cases are subject to the adjudicative hold, identifies exemptions, and outlines the factors to consider when assessing benefit eligibility during the re-review, interview, or re-interview of affected aliens. USCIS personnel are instructed to prioritize national security and public safety concerns and ensure compliance with applicable laws and regulations during the adjudication process. All findings must be documented in accordance with established protocols to support any subsequent determinations or actions.

This memorandum does not supersede the guidance in Policy Memorandum, *Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries* on December 1, 2025[7] except as specified under the "Exceptions to the Adjudication Hold" outlined in this memorandum.

**Background**

On January 20, 2025, the President issued Executive Order (EO) 14161, titled *Protecting the United States From Foreign Terrorists and Other National Security and Public Safety Threats*. This order aimed to safeguard U.S. citizens from aliens who may seek to commit terrorist acts, pose threats to national security, promote hateful ideologies, or exploit immigration laws for malicious purposes. EO 14161 underscores the importance of vigilance during the visa issuance process to ensure that individuals approved for admission into the United States do not intend to harm Americans or compromise U.S. national interests.

Accordingly, through PP 10949 and PP 10998, the President restricted the entry of foreign nationals from countries lacking adequate screening and vetting information to safeguard the national security and public safety of the United States and its citizens. The proclamations also instructed the United States Government to promptly engage with the countries identified, outlining the necessary steps to meet U.S. screening, vetting, immigration, and security standards. However, despite those efforts, most of the countries named in PP 10949 and PP 10998 – and others – continue to demonstrate significant deficiencies in screening, vetting, and information sharing. In addition to PP 10949, PP 10998 emphasizes that "it is the policy of the United States to protect its citizens from foreign nationals who intend to commit terrorist attacks, threaten our national security and public safety, incite hate crimes, or otherwise exploit the immigration laws for malevolent purposes."

Following the continued review since the issuance of PP 10949, as well as the responses of foreign countries to that proclamation, the United States Government has identified additional countries that are unable to meet basic criteria for identifying their nationals and residents who may pose national security and public safety risks, or for sharing necessary information with the United States. It is paramount that the United States Government ensure aliens in the United States do not intend to threaten its citizens or undermine or destabilize its culture, government, institutions, or

---

[7] USCIS issued a public-facing version on December 2, 2025. See Policy Memorandum, *Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries,* December 2, 2025 (PM-602-0192).

PM-602-0194: Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries
Page: 3

founding principles. Entry will not be granted to aliens who advocate for, aid, or support designated foreign terrorists or other threats to our national security or public safety.

As a result of these reviews and considerations, the President has determined to maintain and adjust the restrictions outlined in sections 2 and 3 of PP 10949 regarding the entry of certain classes of foreign nationals into the United States. Additionally, further limitations have been imposed on the entry of aliens from additional high-risk countries in PP 10998.

Considering identified concerns and the threat to the American people, USCIS has determined a comprehensive re-review, potential interview, and re-interview of all aliens from high-risk countries of concern who entered the United States on or after January 20, 2021, is necessary.[8]

USCIS remains dedicated to ensuring aliens from high-risk countries of concern who have entered the United States do not pose risks to national security or public safety. To faithfully uphold United States immigration law, the flow of aliens from countries with high overstay rates, significant fraud, or both must stop. To address potential vulnerabilities, USCIS will place an adjudicative hold on all pending benefit requests submitted by or for aliens from the high-risk countries identified in PP 10998, allowing for a thorough case-by-case review. This hold will remain in effect until lifted or modified by the USCIS Director through a subsequent memorandum or memorandum attachment. Any requests to lift the hold due to litigation or other extraordinary circumstances must receive approval from the USCIS Director or Deputy Director.

**Guidance**

USCIS has determined the operational necessity to ensure all aliens from high-risk countries of concern who entered the United States do not pose a threat to national security or public safety. This effort ensures USCIS exercises its full authority to investigate immigration benefit requests filed by or for aliens who may pose risks to the national security and public safety of the United States, as outlined in DHS Delegation of Authority 0150.1, issued June 5, 2003.

USCIS will conduct a thorough review on a case-by-case basis to assess benefit eligibility including whether:

1. The alien is listed in the Terrorist Screening Dataset (TSDS) as a Known or Suspected Terrorist under Tier 1 or Tier 2 classifications or is included in Tier 3 of the TSDS with significant derogatory information related to the alien.
2. The alien is connected to prior, current, or planned involvement in, or association with, an activity, individual, or organization described in sections 212(a)(3)(A), (B), or (F), or 237(a)(4)(A) or (B) of the Immigration and Nationality Act (INA).
3. The alien is linked to prior, current, or planned involvement in, or association with, an activity, individual, or organization that may pose a risk of serious harm or danger to the community, including criminal conduct described in INA 101(a)(43), 212(a)(1)(A)(iii), 212(a)(2), 237(a)(2), or 237(a)(4)(A)(ii).

---

[8] Additionally, USCIS may, when appropriate, extend this review and re-interview process to aliens who entered the United States outside of this timeframe.

PM-602-0194: Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries
Page: 4

4. The alien is unable to establish their identity as outlined in PP 10949 and PP 10998.[9]

Many of these restricted high-risk countries experience widespread corruption, unreliable or fraudulent civil documents and criminal records, and lack effective birth registration systems, which systematically hinder accurate vetting and identity verification. Officers must consider these country-specific factors when conducting security and background checks, and when reviewing civil documents such as passports, marriage and divorce certificates, and birth certificates, as well as criminal history information. Officers must follow established policies to ensure proper screening and vetting procedures are conducted, and that any derogatory information is thoroughly evaluated and appropriately resolved.

This process ensures that USCIS exercises its full authority to protect national security and public safety while adhering to the provisions of the INA and applicable laws. USCIS has considered that this direction may result in delay to the adjudication of some pending applications and has weighed that consequence against the urgent need for the agency to ensure that aliens are vetted and screened to the maximum degree possible. Ultimately, USCIS has determined the burden of processing delays which will fall on some aliens is necessary and appropriate, when weighed against the agency's obligation to protect and preserve our national security.

*Exceptions to the Adjudication Hold*[10]

Exceptions to the adjudication hold for cases with identified national security, public safety, or fraud-related derogatory information still require the adjudicative directorate or program office to coordinate with U.S. Immigration and Customs Enforcement (ICE) in accordance with current policies and procedures before final adjudication. The following are exceptions to the adjudication hold:

1. Form I-90, Application to Replace Permanent Resident Card (Green Card);[11]
2. Form N-565, Application for Replacement Naturalization/Citizenship Document;
3. Form N-600, Application for Certificate of Citizenship;[12]

---

[9] See USCIS Policy Manual, Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8].

[10] Any request for an exemption to the adjudicative hold must be coordinated with the USCIS Office of Policy and Strategy (OP&S). OP&S will track and record all the hold lifts. OP&S will issue additional guidance within 7 days of issuing this memorandum.

[11] Lawful permanent residents are entitled to evidence of status in the United States. Lawful permanent residents are eligible for replacement of their Permanent Resident Card if they meet certain requirements. See USCIS Policy Manual, Volume 11, Travel and Identity Documents, Part B, Permanent Resident Cards, Chapter 2, Replacement of Permanent Resident Card [11 USCIS-PM B.2].

[12] Except Yemen and Somalia. Yemen and Somalia are not included in this particular exception due to security and documentary concerns specific to those countries as documented on the Department of State Visa Reciprocity Schedules for these countries.

PM-602-0194: Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries
Page: 5

4. Form I-765, Application for Employment Authorization filed under the (c)(8),[13] limited (c)(11),[14] and limited (c)(14)[15] categories;

5. Form I-910, Application for Civil Surgeon Designation (only for physicians that are citizens or nationals of the United States);

6. Benefit requests filed by any alien who is an athlete or member of an athletic team, including the coaches, persons performing a necessary support role, and immediate relatives for the purpose of participating in the World Cup, Olympics, or other major sporting event as determined by the Secretary of State;

7. Benefit requests that are a priority for law enforcement and where ICE has requested USCIS take adjudicative action to uphold public safety or national security;

8. Benefit requests filed by aliens whose entry would serve a United States national interest;[16]

9. Benefit requests, as well as the associated underlying benefits, for any programs that are terminated or discontinued as a result of an Executive Order, Proclamation, Federal Register Notice, or Directive issued by the President, the Secretary of Homeland Security, or the USCIS Director; and

10. Automatic termination decisions for ancillary or related benefit requests when an alien is granted Legal Permanent Resident status or becomes a naturalized citizen.[17]

Within 90 days of this memorandum issuance, and in consultation with OP&S and the Fraud Detection and National Security Directorate, USCIS will prioritize a list for review, interview, and re-interview, and issue operational guidance.

**Use**

This policy memorandum is intended solely for the guidance of USCIS personnel in the performance of their official duties, but it does not remove their discretion in making adjudicatory decisions. It may not be relied upon to create any right or benefit, substantive or procedural, enforceable under law or by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

---

[13] See 8 CFR 274a.12(c)(8). Only applies to *initial* (c)(8) filings. *Asylumworks v. Mayorkas* requires USCIS to process all initial Form I-765 filed under the (c)(8) category within 30 days.

[14] See 8 CFR 274a.12(c)(11). Form I-765 filed under the (c)(11) category exceptions only apply when the request comes from law enforcement because the alien is assisting law enforcement.

[15] See 8 CFR 274a.12(c)(14). Form I-765 filed under the (c)(14) category exceptions only apply when the request comes from law enforcement because the alien is assisting law enforcement.

[16] For example, a benefit request filed by an alien whose entry into the United States would provide significant benefit to the United States may include, but is not limited to, a scientist or medical researcher working on a critical public health project, an engineer with specialized skills needed for a key infrastructure initiative, or someone with unique expertise supporting U.S. national security or economic interests. This is a case-by-case determination and requires approval from the headquarters of the adjudicative directorate or program office.

[17] For example, when USCIS approves an individual's Form I-485, any associated or underlying applications, such as Form I-765, will be automatically terminated, as the benefit provided by the ancillary form is no longer necessary.