# Ex. 1

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

<table>
<tr><td>

DORCAS INT'L INST. OF R.I., *et al.*,

    Plaintiffs,

      v.

U.S. CITIZENSHIP AND
IMMIGRATION SERVS., *et al.*,

    Defendants.

</td><td>

Civil Action No.
26-cv-132-JJM-PA

</td></tr>
</table>

## INDEX AND THE CERTIFIED ADMINISTRATIVE RECORD FOR
## POLICY ALERT PA-2025-26

| Document No. | Date | Document Title | Beginning Bates No. | Ending Bates No. |
|---|---|---|---|---|
| 01 | 06/10/2025 | Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats | CAR-000001 | CAR-000009 |
| 02 | 10/14/2025 | Presidential Proclamation 10949 and Other Applications of Section 212(f) of the INA: Impacts to USCIS' Exercise of Adjudicative Discretion | CAR-000010 | CAR-000013 |
| 03 | 11/27/2025 | USCIS Policy Manual 20251127-internal-Volume 1, Part E, Chapter 8 | CAR-000014 | CAR-000036 |
| 04 | 11/27/2025 | USCIS Policy Manual 20251127-internal-Volume 7, Part A, Chapter 10 | CAR-000037 | CAR-000048 |
| 05 | 11/27/2025 | USCIS Policy Manual 20251127-internal-Volume 9, Part A, Chapter 5 | CAR-000049 | CAR-000054 |
| 06 | 11/27/2025 | USCIS Policy Manual 20251127-internal-Volume 10, Part A, Chapter 4 | CAR-000055 | CAR-000071 |

| 07 | 11/27/2025 | Policy Alert: Impact of INA 212(f) on USCIS' Adjudication of Discretionary Benefits | CAR-000072 | CAR-000073 |
|---|---|---|---|---|

I, Nathaniel Stiefel, make the following declaration, as provided by Section 1746 of Title 28 of the United States Code. I am aware that this declaration will be filed in the above-captioned civil action with the United States District Court for the Northern District of California. I hereby certify that:

1. I am the Deputy Chief for the Office of Policy and Strategy (OP&S), of U.S. Citizenship and Immigration Services (USCIS), a component agency within the U.S. Department of Homeland Security (DHS). I have held this position since May 2025. Since 2006, I have served in a variety of roles at USCIS, including my current role, which I also held prior to my appointment as the Deputy Ombudsman within the DHS Office of the Citizenship and Immigration Services Ombudsman. I also previously served as Deputy Chief of the USCIS Office of Citizenship.

2. OP&S leads the development, coordination, and governance of immigration policy and the regulatory development process for USCIS to ensure compliance with leadership's policy goals.

3. I certify that, to the best of my knowledge, information, and belief that the documents listed in the accompanying administrative record index hereto constitute the nonprivileged documents and materials directly and indirectly considered by USCIS and that these documents constitute the administrative record the agency considered in issuing Policy Alert "Impact of INA 212(f) on USCIS' Adjudication of Discretionary Benefits" (PA-2025-26) (Nov. 27, 2025).

I certify under penalty of perjury that the foregoing is true and correct.

NATHANIEL I STIEFEL
Digitally signed by NATHANIEL I STIEFEL
Date: 2026.03.25 15:58:33 -04'00'

_____          _____

Nathaniel Stiefel                                                            Date
Deputy Chief, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
U.S. Department of Homeland Security

3

# Presidential Documents

Proclamation 10949 of June 4, 2025

## Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats

**By the President of the United States of America**

**A Proclamation**

During my first Administration, I restricted the entry of foreign nationals into the United States, which successfully prevented national security threats from reaching our borders and which the Supreme Court upheld. In Executive Order 14161 of January 20, 2025 (Protecting the United States From Foreign Terrorists and Other National Security and Public Safety Threats), I stated that it is the policy of the United States to protect its citizens from aliens who intend to commit terrorist attacks, threaten our national security, espouse hateful ideology, or otherwise exploit the immigration laws for malevolent purposes.

I also stated that the United States must be vigilant during the visa-issuance process to ensure that those aliens approved for admission into the United States do not intend to harm Americans or our national interests. More importantly, the United States must identify such aliens before their admission or entry into the United States. The United States must ensure that admitted aliens and aliens otherwise already present in the United States do not bear hostile attitudes toward its citizens, culture, government, institutions, or founding principles, and do not advocate for, aid, or support designated foreign terrorists or other threats to our national security.

I directed the Secretary of State, in coordination with the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence, to identify countries throughout the world for which vetting and screening information is so deficient as to warrant a full or partial suspension on the admission of nationals from those countries pursuant to section 212(f) of the Immigration and Nationality Act (INA), 8 U.S.C. 1182(f). After completing that process, the Secretary of State determined that a number of countries remain deficient with regards to screening and vetting. Many of these countries have also taken advantage of the United States in their exploitation of our visa system and their historic failure to accept back their removable nationals.

As President, I must act to protect the national security and national interest of the United States and its people. I remain committed to engaging with those countries willing to cooperate to improve information-sharing and identity-management procedures, and to address both terrorism-related and public-safety risks. Nationals of some countries also pose significant risks of overstaying their visas in the United States, which increases burdens on immigration and law enforcement components of the United States, and often exacerbates other risks related to national security and public safety.

Some of the countries with inadequacies face significant challenges to reform efforts. Others have made important improvements to their protocols and procedures, and I commend them for these efforts. But until countries with identified inadequacies address them, members of my Cabinet have recommended certain conditional restrictions and limitations. I have considered and largely accepted those recommendations and impose the limitations

set forth below on the entry into the United States by the classes of foreign nationals identified in sections 2 and 3 of this proclamation.

NOW, THEREFORE, I, DONALD J. TRUMP, President of the United States of America, by the authority vested in me by the Constitution and the laws of the United States of America, including sections 212(f) and 215(a) of the INA, 8 U.S.C. 1182(f) and 1185(a), and section 301 of title 3, United States Code, hereby find that, absent the measures set forth in this proclamation, the immigrant and nonimmigrant entry into the United States of persons described in sections 2 and 3 of this proclamation would be detrimental to the interests of the United States, and that their entry should be subject to certain restrictions, limitations, and exceptions. I therefore hereby proclaim the following:

**Section 1**. *Policy and Purpose.* (a) It is the policy of the United States to protect its citizens from terrorist attacks and other national security or public-safety threats. Screening and vetting protocols and procedures associated with visa adjudications and other immigration processes play a critical role in implementing that policy. These protocols enhance our ability to detect foreign nationals who may commit, aid, or support acts of terrorism, or otherwise pose a safety threat, and they aid our efforts to prevent such individuals from entering the United States.

(b) Information-sharing and identity-management protocols and practices of foreign governments are important for the effectiveness of the screening and vetting protocols and procedures of the United States. Governments manage the identity and travel documents of their nationals and residents. They also control the circumstances under which they provide information about their nationals to other governments, including information about known or suspected terrorists and criminal-history information. It is, therefore, the policy of the United States to take all necessary and appropriate steps to encourage foreign governments to improve their information-sharing and identity-management protocols and practices and to regularly share their identity and threat information with the immigration screening and vetting systems of the United States.

(c) Section 2(b) of Executive Order 14161 directed the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence, within 60 days of the date of that order, to jointly submit to the President, through the Assistant to the President for Homeland Security, a report identifying countries throughout the world for which vetting and screening information is so deficient as to warrant a full or partial suspension on the entry or admission of nationals from those countries pursuant to section 212(f) of the INA (8 U.S.C. 1182(f)).

(d) On April 9, 2025, the Secretary of State, with the Assistant to the President for Homeland Security, presented the report described in subsection (c) of this section, recommending that entry restrictions and limitations be placed on foreign nationals of several countries. The report identified countries for which vetting and screening information is so deficient as to warrant a full suspension of admissions and countries that warrant a partial suspension of admission.

(e) In evaluating the recommendations from the Secretary of State and in determining what restrictions to impose for each country, I consulted with the Secretary of State, the Secretary of Defense, the Attorney General, the Secretary of Homeland Security, appropriate Assistants to the President, the Director of National Intelligence, and the Director of the Central Intelligence Agency. I considered foreign policy, national security, and counterterrorism goals. And I further considered various factors, including each country's screening and vetting capabilities, information sharing policies, and country-specific risk factors—including whether each country has a significant terrorist presence within its territory, its visa-overstay rate, and its cooperation with accepting back its removable nationals.

I also considered the different risks posed by aliens admitted on immigrant visas and those admitted on nonimmigrant visas. Persons admitted on immigrant visas become lawful permanent residents of the United States. Such persons may present national security or public-safety concerns that may be distinct from those admitted as nonimmigrants. The United States affords lawful permanent residents more enduring rights than it does to nonimmigrants. Lawful permanent residents are more difficult to remove than nonimmigrants, even after national security concerns arise, which increases the costs and aggravates the dangers of errors associated with admitting such individuals. And although immigrants are generally subject to more extensive vetting than nonimmigrants, such vetting is far less reliable when the country from which someone seeks to emigrate maintains inadequate identity-management or information-sharing policies or otherwise poses risks to the national security of the United States.

I reviewed these factors and assessed these goals, with a particular focus on crafting country-specific restrictions. This approach was designed to encourage cooperation with the subject countries in recognition of each country's unique circumstances. The restrictions and limitations imposed by this proclamation are, in my judgment, necessary to prevent the entry or admission of foreign nationals about whom the United States Government lacks sufficient information to assess the risks they pose to the United States. The restrictions and limitations imposed by this proclamation are necessary to garner cooperation from foreign governments, enforce our immigration laws, and advance other important foreign policy, national security, and counterterrorism objectives.

(f) After reviewing the report described in subsection (d) of this section, and after accounting for the foreign policy, national security, and counterterrorism objectives of the United States, I have determined to fully restrict and limit the entry of nationals of the following 12 countries: Afghanistan, Burma, Chad, Republic of the Congo, Equatorial Guinea, Eritrea, Haiti, Iran, Libya, Somalia, Sudan, and Yemen. These restrictions distinguish between, but apply to both, the entry of immigrants and nonimmigrants.

(g) I have determined to partially restrict and limit the entry of nationals of the following 7 countries: Burundi, Cuba, Laos, Sierra Leone, Togo, Turkmenistan, and Venezuela. These restrictions distinguish between, but apply to both, the entry of immigrants and nonimmigrants.

(h) Sections 2 and 3 of this proclamation describe some of the identity-management or information-sharing inadequacies that led me to impose restrictions. These inadequacies are sufficient to justify my finding that unrestricted entry of nationals from the named countries would be detrimental to the interests of the United States. Publicly disclosing additional details on which I relied in making these determinations, however, would cause serious damage to the national security of the United States, and many such details are classified.

**Sec. 2**. *Full Suspension of Entry for Nationals of Countries of Identified Concern.* The entry into the United States of nationals of the following countries is hereby suspended and limited, as follows, subject to the categorical exceptions and case-by-case waivers described in section 5 of this proclamation:

(a) *Afghanistan*

(i) The Taliban, a Specially Designated Global Terrorist (SDGT) group, controls Afghanistan. Afghanistan lacks a competent or cooperative central authority for issuing passports or civil documents and it does not have appropriate screening and vetting measures. According to the Fiscal Year 2023 Department of Homeland Security (DHS) Entry/Exit Overstay Report ("Overstay Report"), Afghanistan had a business/tourist (B–1/B–2) visa overstay rate of 9.70 percent and a student (F), vocational (M), and exchange visitor (J) visa overstay rate of 29.30 percent.

(ii) The entry into the United States of nationals of Afghanistan as immigrants and nonimmigrants is hereby fully suspended.

(b) *Burma*

(i) According to the Overstay Report, Burma had a B–1/B–2 visa overstay rate of 27.07 percent and an F, M, and J visa overstay rate of 42.17 percent. Additionally, Burma has historically not cooperated with the United States to accept back their removable nationals.

(ii) The entry into the United States of nationals of Burma as immigrants and nonimmigrants is hereby fully suspended.

(c) *Chad*

(i) According to the Overstay Report, Chad had a B–1/B–2 visa overstay rate of 49.54 percent and an F, M, and J visa overstay rate of 55.64 percent. According to the Fiscal Year 2022 Overstay Report, Chad had a B–1/B–2 visa overstay rate of 37.12 percent. The high visa overstay rate for 2022 and 2023 is unacceptable and indicates a blatant disregard for United States immigration laws.

(ii) The entry into the United States of nationals of Chad as immigrants and nonimmigrants is hereby fully suspended.

(d) *Republic of the Congo*

(i) According to the Overstay Report, the Republic of the Congo had a B–1/B–2 visa overstay rate of 29.63 percent and an F, M, and J visa overstay rate of 35.14 percent.

(ii) The entry into the United States of nationals of the Republic of the Congo as immigrants and nonimmigrants is hereby fully suspended.

(e) *Equatorial Guinea*

(i) According to the Overstay Report, Equatorial Guinea had a B–1/B–2 visa overstay rate of 21.98 percent and an F, M, and J visa overstay rate of 70.18 percent.

(ii) The entry into the United States of nationals of Equatorial Guinea as immigrants and nonimmigrants is hereby fully suspended.

(f) *Eritrea*

(i) The United States questions the competence of the central authority for issuance of passports or civil documents in Eritrea. Criminal records are not available to the United States for Eritrean nationals. Eritrea has historically refused to accept back its removable nationals. According to the Overstay Report, Eritrea had a B–1/B–2 visa overstay rate of 20.09 percent and an F, M, and J visa overstay rate of 55.43 percent.

(ii) The entry into the United States of nationals of Eritrea as immigrants and nonimmigrants is hereby fully suspended.

(g) *Haiti*

(i) According to the Overstay Report, Haiti had a B–1/B–2 visa overstay rate of 31.38 percent and an F, M, and J visa overstay rate of 25.05 percent. Additionally, hundreds of thousands of illegal Haitian aliens flooded into the United States during the Biden Administration. This influx harms American communities by creating acute risks of increased overstay rates, establishment of criminal networks, and other national security threats. As is widely known, Haiti lacks a central authority with sufficient availability and dissemination of law enforcement information necessary to ensure its nationals do not undermine the national security of the United States.

(ii) The entry into the United States of nationals of Haiti as immigrants and nonimmigrants is hereby fully suspended.

(h) *Iran*

(i) Iran is a state sponsor of terrorism. Iran regularly fails to cooperate with the United States Government in identifying security risks, is the source of significant terrorism around the world, and has historically failed to accept back its removable nationals.

(ii) The entry into the United States of nationals of Iran as immigrants and nonimmigrants is hereby suspended.

CAR-000004

(i) *Libya*

(i) There is no competent or cooperative central authority for issuing passports or civil documents in Libya. The historical terrorist presence within Libya's territory amplifies the risks posed by the entry into the United States of its nationals.

(ii) The entry into the United States of nationals of Libya as immigrants and nonimmigrants is hereby fully suspended.

(j) *Somalia*

(i) Somalia lacks a competent or cooperative central authority for issuing passports or civil documents and it does not have appropriate screening and vetting measures. Somalia stands apart from other countries in the degree to which its government lacks command and control of its territory, which greatly limits the effectiveness of its national capabilities in a variety of respects. A persistent terrorist threat also emanates from Somalia's territory. The United States Government has identified Somalia as a terrorist safe haven. Terrorists use regions of Somalia as safe havens from which they plan, facilitate, and conduct their operations. Somalia also remains a destination for individuals attempting to join terrorist groups that threaten the national security of the United States. The Government of Somalia struggles to provide governance needed to limit terrorists' freedom of movement. Additionally, Somalia has historically refused to accept back its removable nationals.

(ii) The entry into the United States of nationals of Somalia as immigrants and nonimmigrants is hereby fully suspended.

(k) *Sudan*

(i) Sudan lacks a competent or cooperative central authority for issuing passports or civil documents and it does not have appropriate screening and vetting measures. According to the Overstay Report, Sudan had a B–1/B–2 visa overstay rate of 26.30 percent and an F, M, and J visa overstay rate of 28.40 percent.

(ii) The entry into the United States of nationals of Sudan as immigrants and nonimmigrants is hereby fully suspended.

(l) *Yemen*

(i) Yemen lacks a competent or cooperative central authority for issuing passports or civil documents and it does not have appropriate screening and vetting measures. The government does not have physical control over its own territory. Since January 20, 2025, Yemen has been the site of active United States military operations.

(ii) The entry into the United States of nationals of Yemen as immigrants and nonimmigrants is hereby fully suspended.

**Sec. 3.** *Partial Suspension of Entry for Nationals of Countries of Identified Concern.*

(a) *Burundi*

(i) According to the Overstay Report, Burundi had a B–1/B–2 visa overstay rate of 15.35 percent and an F, M, and J visa overstay rate of 17.52 percent.

(ii) The entry into the United States of nationals of Burundi as immigrants, and as nonimmigrants on B–1, B–2, B–1/B–2, F, M, and J visas, is hereby suspended.

(iii) Consular officers shall reduce the validity for any other nonimmigrant visa issued to nationals of Burundi to the extent permitted by law.

(b) *Cuba*

(i) Cuba is a state sponsor of terrorism. The Government of Cuba does not cooperate or share sufficient law enforcement information with the United States. Cuba has historically refused to accept back its removable nationals. According to the Overstay Report, Cuba had a B–1/B–2 visa overstay rate of 7.69 percent and an F, M, and J visa overstay rate of 18.75 percent.

(ii) The entry into the United States of nationals of Cuba as immigrants, and as nonimmigrants on B–1, B–2, B–1/B–2, F, M, and J visas, is hereby suspended.

(iii) Consular officers shall reduce the validity for any other nonimmigrant visa issued to nationals of Cuba to the extent permitted by law.

(c) *Laos*

(i) According to the Overstay Report, Laos had a B–1/B–2 visa overstay rate of 34.77 percent and an F, M, and J visa overstay rate of 6.49 percent. Laos has historically failed to accept back its removable nationals.

(ii) The entry into the United States of nationals of Laos as immigrants, and as nonimmigrants on B–1, B–2, B–1/B–2, F, M, and J visas, is hereby suspended.

(iii) Consular officers shall reduce the validity for any other nonimmigrant visa issued to nationals of Laos to the extent permitted by law.

(d) *Sierra Leone*

(i) According to the Overstay Report, Sierra Leone had a B–1/B–2 visa overstay rate of 15.43 percent and an F, M, and J visa overstay rate of 35.83 percent. Sierra Leone has historically failed to accept back its removable nationals.

(ii) The entry into the United States of nationals of Sierra Leone as immigrants, and as nonimmigrants on B–1, B–2, B–1/B–2, F, M, and J visas is hereby suspended.

(iii) Consular officers shall reduce the validity for any other nonimmigrant visa issued to nationals of Sierra Leone to the extent permitted by law.

(e) *Togo*

(i) According to the Overstay Report, Togo had a B–1/B–2 visa overstay rate of 19.03 percent and an F, M, and J visa overstay rate of 35.05 percent.

(ii) The entry into the United States of nationals of Togo as immigrants, and as nonimmigrants on B–1, B–2, B–1/B–2, F, M, and J visas is hereby suspended.

(iii) Consular officers shall reduce the validity for any other nonimmigrant visa issued to nationals of Togo to the extent permitted by law.

(f) *Turkmenistan*

(i) According to the Overstay Report, Turkmenistan had a B–1/B–2 visa overstay rate of 15.35 percent and an F, M, and J visa overstay rate of 21.74 percent.

(ii) The entry into the United States of nationals of Turkmenistan as immigrants, and as nonimmigrants on B–1, B–2, B–1/B–2, F, M, and J visas is hereby suspended.

(iii) Consular officers shall reduce the validity for any other nonimmigrant visa issued to nationals of Turkmenistan to the extent permitted by law.

(g) *Venezuela*

(i) Venezuela lacks a competent or cooperative central authority for issuing passports or civil documents and it does not have appropriate screening and vetting measures. Venezuela has historically refused to accept back its removable nationals. According to the Overstay Report, Venezuela had a B–1/B–2 visa overstay rate of 9.83 percent.

(ii) The entry into the United States of nationals of Venezuela as immigrants, and as nonimmigrants on B–1, B–2, B–1/B–2, F, M, and J visas is hereby suspended.

(iii) Consular officers shall reduce the validity for any other nonimmigrant visa issued to nationals of Venezuela to the extent permitted by law.

**Sec. 4**. *Scope and Implementation of Suspensions and Limitations.* (a) *Scope.* Subject to the exceptions set forth in subsection (b) of this section and

any exceptions made pursuant to subsections (c) and (d) of this section, the suspensions of and limitations on entry pursuant to sections 2 and 3 of this proclamation shall apply only to foreign nationals of the designated countries who:

(i) are outside the United States on the applicable effective date of this proclamation; and

(ii) do not have a valid visa on the applicable effective date of this proclamation.

(b) *Exceptions.* The suspension of and limitation on entry pursuant to sections 2 and 3 of this proclamation shall not apply to:

(i) any lawful permanent resident of the United States;

(ii) any dual national of a country designated under sections 2 and 3 of this proclamation when the individual is traveling on a passport issued by a country not so designated;

(iii) any foreign national traveling with a valid nonimmigrant visa in the following classifications: A–1, A–2, C–2, C–3, G–1, G–2, G–3, G–4, NATO–1, NATO–2, NATO–3, NATO–4, NATO–5, or NATO–6;

(iv) any athlete or member of an athletic team, including coaches, persons performing a necessary support role, and immediate relatives, traveling for the World Cup, Olympics, or other major sporting event as determined by the Secretary of State;

(v) immediate family immigrant visas (IR–1/CR–1, IR–2/CR–2, IR–5) with clear and convincing evidence of identity and family relationship (*e.g.,* DNA);

(vi) adoptions (IR–3, IR–4, IH–3, IH–4);

(vii) Afghan Special Immigrant Visas;

(viii) Special Immigrant Visas for United States Government employees; and

(ix) immigrant visas for ethnic and religious minorities facing persecution in Iran.

(c) Exceptions to the suspension of and limitation on entry pursuant to sections 2 and 3 of this proclamation may be made for certain individuals for whom the Attorney General finds, in her discretion, that the travel by the individual would advance a critical United States national interest involving the Department of Justice, including when individuals must be present to participate in criminal proceedings as witnesses. These exceptions shall be made only by the Attorney General, or her designee, in coordination with the Secretary of State and the Secretary of Homeland Security.

(d) Exceptions to the suspension of and limitation on entry pursuant to sections 2 and 3 of this proclamation may be made case-by-case for individuals for whom the Secretary of State finds, in his discretion, that the travel by the individual would serve a United States national interest. These exceptions shall be made by only the Secretary of State or his designee, in coordination with the Secretary of Homeland Security or her designee.

**Sec. 5**. *Adjustments to and Removal of Suspensions and Limitations.* (a) The Secretary of State shall, in consultation with the Attorney General, the Secretary of Homeland Security, and the Director for National Intelligence, devise a process to assess whether any suspensions and limitations imposed by sections 2 and 3 of this proclamation should be continued, terminated, modified, or supplemented. Within 90 days of the date of this proclamation, and every 180 days thereafter, the Secretary of State, in consultation with the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence, shall submit a report to the President, through the Assistant to the President for Homeland Security, describing his assessment and recommending whether any suspensions and limitations imposed by sections 2 and 3 of this proclamation should be continued, terminated, modified, or supplemented.

CAR-000007

(b) The Secretary of State, in consultation with the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence, shall immediately engage each of the countries identified in sections 2 and 3 of this proclamation on measures that must be taken to comply with United States screening, vetting, immigration, and security requirements.

(c) Additionally, and in light of recent events, the Secretary of State, in consultation with the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence, shall provide me an update to the review of the practices and procedures of Egypt to confirm the adequacy of its current screening and vetting capabilities.

Sec. 6. *Enforcement.* (a) The Secretary of State and the Secretary of Homeland Security shall consult with appropriate domestic and international partners, including countries and organizations, to ensure efficient, effective, and appropriate implementation of this proclamation.

(b) In implementing this proclamation, the Secretary of State and the Secretary of Homeland Security shall comply with all applicable laws and regulations.

(c) No immigrant or nonimmigrant visa issued before the applicable effective date of this proclamation shall be revoked pursuant to this proclamation.

(d) This proclamation shall not apply to an individual who has been granted asylum by the United States, to a refugee who has already been admitted to the United States, or to an individual granted withholding of removal or protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment of Punishment (CAT). Nothing in this proclamation shall be construed to limit the ability of an individual to seek asylum, refugee status, withholding of removal, or protection under the CAT, consistent with the laws of the United States.

Sec. 7. *Severability.* It is the policy of the United States to enforce this proclamation to the maximum extent possible to advance the national security, foreign policy, and counterterrorism interests of the United States. Accordingly:

(a) if any provision of this proclamation, or the application of any provision of this proclamation to any person or circumstance, is held to be invalid, the remainder of this proclamation and the application of its other provisions to any other persons or circumstances shall not be affected thereby; and

(b) if any provision of this proclamation, or the application of any provision of this proclamation to any person or circumstance, is held to be invalid because of the lack of certain procedural requirements, the relevant executive branch officials shall implement those procedural requirements to conform with existing law and with any applicable court orders.

Sec. 8. *Effective Date.* This proclamation is effective at 12:01 a.m. eastern daylight time on June 9, 2025.

Sec. 9. *General Provisions.* (a) Nothing in this proclamation shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This proclamation shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable by law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

IN WITNESS WHEREOF, I have hereunto set my hand this fourth day of June, in the year of our Lord two thousand twenty-five, and of the Independence of the United States of America the two hundred and forty-ninth.

[FR Doc. 2025–10669
Filed 6–9–25; 11:15 am]
Billing code 3395–F4–P

CAR-000009

FOR OFFICIAL USE ONLY



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director*
Camp Springs, MD 20588-0009

**U.S. Citizenship and Immigration Services**

October 14, 2025

## Memorandum

TO:  Sarah Kendall, Associate Director
Field Operations Directorate

     Carrie Selby, Associate Director
Service Center Operations Directorate

     Ted Kim, Associate Director
Refugee, Asylum and International Operations Directorate

     Andrew Davidson, Associate Director (A)
Fraud Detection and National Security Directorate

     Susan Dibbins, Chief
Administrative Appeals Office

☒ Close Hold
(Limit review to
senior leadership)

FROM:  Joseph B. Edlow
Director, U.S. Citizenship and Immigration Services

SUBJECT:  **Presidential Proclamation 10949 and Other Applications of Section 212(f) of the INA: Impacts to USCIS' Exercise of Adjudicative Discretion**

---

**Purpose:** Effective immediately, this memorandum directs USCIS to consider adverse country-specific factors in Presidential Proclamation 10949 (PP 10949) *Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats*[1] as significant negative discretionary factors when adjudicating all discretionary benefit requests filed by aliens from these countries, given the insufficient vetting and screening information which limits USCIS' ability to assess the risks these aliens pose to the United States. This guidance specifically addresses PP 10949, but all past and future proclamations applying section 212(f) of the Immigration and Nationality Act (INA) that are still in effect will be addressed in an equivalent manner.

---

[1] *See* 90 FR 24497 (June 4, 2025).

FOR OFFICIAL USE ONLY

PRE-DECISIONAL/DELIBERATIVE – FOR OFFICIAL USE ONLY

**Background:** On June 4, 2025, the President issued Proclamation 10949, *Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and other National Security and Public Safety Threats*, suspending the entry or admission of aliens from nineteen countries due to insufficient vetting and screening information as well as other country-specific reasons. There is a full entry or admission restriction of aliens from twelve countries which includes, both immigrant and nonimmigrants, from Afghanistan, Burma, Chad, Republic of Congo, Equatorial Guinea, Eritrea, Haiti, Iran, Libya, Somalia, Sudan, and Yemen. There is a partial restriction on the entry or admission of aliens from seven additional countries which includes immigrants and B-1, B-2, B-1/B-2, F, M, and J nonimmigrant visas from Burundi, Cuba, Laos, Sierra Leone, Togo, Turkmenistan, and Venezuela. The reasons for the restrictions are country-specific and specified in the Proclamation.

USCIS has assessed the specific terms of the Proclamation as they relate to USCIS' adjudication of any discretionary immigration benefit request, including but not limited to adjustment of status (AOS), extension of status (EOS), and change of status (COS).[2]

PP 10949 only applies to aliens who both 1) are outside the United States on June 9, 2025, and 2) do not hold a valid visa on June 9, 2025.[3] Since USCIS can only adjust the status of an alien who is physically present in the United States, aliens from the 19 countries who are present in the United States and are seeking adjustment of status are not categorically ineligible for adjustment of status based on the restrictions in PP 10949. Similarly, aliens present in the United States as nonimmigrants who are seeking EOS or COS are not categorically ineligible for those benefits due to PP 10949.[4]

However, when adjudicating an AOS, EOS, or COS application or petition, or any other discretionary benefit, once the applicant or petitioner has demonstrated that they meet all threshold eligibility criteria, USCIS makes a separate discretionary determination, in which USCIS assesses whether the applicant or petitioner demonstrated he or she warrants a favorable exercise of discretion.[5] In doing so, USCIS weighs all relevant positive and negative factors and considers the totality of the circumstances in the specific case.[6]

**Discussion:** USCIS has broad authority to deny discretionary benefit requests when adverse factors outweigh positive factors based on the totality of the circumstances. Therefore, when determining whether an alien from one of the designated countries, either fully or partially restricted from entry and admission, warrants a favorable exercise of discretion, USCIS will

---

[2] Form I-730, following-to-join asylee petitions filed on behalf of domestic beneficiaries shall be considered within the discretionary framework outlined in this memo.

[3] Section 4b. of PP 10949 provides for certain exceptions to the suspension and limitation on entry of citizens and nationals of the 19 listed countries. If an exception is present in a case, an adjudicator may factor it into the discretionary analysis.

[4] See INA §§ 214(a)(1) and 248(a).

[5] USCIS Policy Manual, Volume 1, Part E, Chapter 8 Discretionary Analysis, found at https://www.uscis.gov/policy-manual/volume-1-part-e-chapter-8; see also *Matter of Patel (PDF)*, 17 I&N Dec. 597 (BIA 1980).

[6] *See Matter of Marin*, 13 I&N Dec. 581, 585 (NIA 1978) (in making a decision as to whether to favorably exercise discretion, adjudicator must balance all positive and negative factors).

PRE-DECISIONAL/DELIBERATIVE – FOR OFFICIAL USE ONLY

PRE-DECISIONAL/DELIBERATIVE – FOR OFFICIAL USE ONLY

review all relevant factors in the alien's individual case, which will include the country-specific facts and circumstances set forth in PP 10949 such as insufficient vetting and screening information. USCIS will treat relevant country-specific facts and circumstances set forth in PP 10949 as a significant negative discretionary factor in the totality of the circumstances. For example, the countries: Afghanistan, Eritrea, Libya, Somalia, Sudan, Yemen, and Venezuela lack a competent or central authority for issuing passports and civil documents among other concerns which may directly relate to USCIS' ability to meaningfully assess eligibility for benefit requests and, at a minimum, is worthy of USCIS consideration when exercising discretion.

USCIS will consider insufficient vetting and screening information as well as other country-specific factors as significant negative factors when performing the discretionary analysis. USCIS adjudicates many discretionary benefit requests and will include the insufficient screening and vetting, and other country-specific information cited in the President's Proclamation, as part of its adjudicative discretionary determinations consistent with law.

Benefit requests denied on the basis of an unfavorable exercise of discretion must include analysis containing the positive and negative factors considered and why the negative factors outweigh the positive factors in the decision.[7] As directed in this memo, this discretionary analysis should take into account the extraordinary nature of the President's decision to exercise his authority under section 212(f) of the INA to bar entire classes of aliens from entry, with some exceptions.

**Authorities:** A non-exhaustive list of legal, regulatory, and policy authorities relevant to this decision include:

- INA § 103(a)(1) – Authority to Administer and Enforce the INA
- INA § 204 – Procedure for Granting Immigrant Status
- INA § 214 – Admission of Nonimmigrants
- INA § 215(a) – Travel Control of Citizens and Aliens, Restrictions and Prohibitions
- INA § 212(a)(3) – Inadmissible Aliens, Security Related Grounds
- INA § 212(f) – Inadmissible Aliens, Suspension of Entry or Imposition of Restrictions by President
- INA § 245(a) – Adjustment of Status
- INA § 248 – Change of Nonimmigrant Status
- 8 CFR 103.2(b)(16)(i)-(iv) – Inspection of evidence
- 8 CFR 214 – Nonimmigrant Classes
- 8 CFR 248.1(a)- Change of Nonimmigrant Classification, Eligibility
- Presidential Proclamation 10949 – Restricting The Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats

The above authorities list is not exhaustive. This memo applies to all discretionary adjudicative decisions.

---

[7] 8 CFR 103.2.

PRE-DECISIONAL/DELIBERATIVE – FOR OFFICIAL USE ONLY

PRE-DECISIONAL/DELIBERATIVE – FOR OFFICIAL USE ONLY

**Decision/Action:** Effective immediately, USCIS will consider the above referenced country-specific factors found in PP 10949 as significant negative discretionary factors when adjudicating all discretionary benefit requests filed aliens from those countries.

Within 30 days of issuance of this memorandum, USCIS adjudicative directorates and program offices, in consultation with Fraud Detection and National Security Directorate (FDNS) will provide implementation guidance to officers. The Office of Policy & Strategy (OP&S), in consultation with FDNS, will update the USCIS Policy Manual to reflect this policy decision within 30 days.

cc:     Andrew Good, Chief, Office of Policy & Strategy
        David Roy, Acting Chief Counsel, Office of Chief Counsel

[^ 99] If the derogatory information is disclosed during an interview, the officer records the information and the benefit requestor's rebuttal. See Section D, Types of Evidence, Subsection 2, Testimonial Evidence [1 USCIS-PM E.6(D)(2)].

[^ 100] See 8 CFR 103.2(b)(16). A determination of statutory eligibility must be based only on information contained in the record of proceeding that is disclosed to the benefit requestor, except as provided in 8 CFR 103.2(b)(16)(iv). See 8 CFR 103.2(b)(16)(ii).

[^ 101] Any attempts to explain or reconcile such inconsistencies, absent competent objective evidence pointing to where the truth lies, will not suffice. See *Matter of Ho*, 19 I&N Dec. 582 (BIA 1988).

[^ 102] For example, a benefit requestor's tax return statement submitted with the Form I-130 that USCIS uses as evidence of a lack of a qualifying spousal relationship.

[^ 103] For example, records such as marriage certificates or personal financial statements submitted with a previous spousal petition.

[^ 104] USCIS is not required to disclose derogatory information of which the benefit requestor is aware. See 8 CFR 103.2(b)(16). See Section F, Requests for Evidence and Notices of Intent to Deny [1 USCIS-PM E.6(F)]. However, USCIS may disclose derogatory information that the benefit requestor may be aware of to ensure the benefit requestor has sufficient opportunity to rebut information used in an adverse decision.

[^ 105] For example, officers may provide a copy of the source document containing derogatory information, such as a lease agreement, in instances where the document contains no privileged or confidential information, or information that is otherwise prohibited from disclosure.

[^ 106] USCIS must not provide screenshots of information obtained from DHS or other third agency systems absent permission from the data owner. If an adverse decision is based primarily on derogatory information that originates from such systems, any disclosure must be in a detailed summary statement and is subject to the terms and conditions of applicable data sharing agreements, such as the agreement between USCIS and DOS on disclosure authorization requirements.

## Chapter 7 - Interviews [Reserved]

## Chapter 8 - Discretionary Analysis

Many immigration benefits require the requestor[1] to demonstrate that the request merits a favorable exercise of discretion in order to receive the benefit.[2] For these benefits, a discretionary analysis is a separate, additional component of adjudicating the benefit request. Whether to favorably exercise discretion is typically assessed after an officer has determined that the requestor meets all applicable threshold eligibility requirements.

The discretionary analysis involves the review of all relevant, specific facts and circumstances in an individual case. However, there are limitations on how the officer may exercise discretion; the officer may not

exercise discretion arbitrarily, inconsistently, or in reliance on biases or assumptions.

In some contexts, there are regulations and case law that outline certain factors that officers must review and use as a guide in making a discretionary determination. However, there is no exhaustive list of factors that officers must consider. To perform a discretionary analysis, officers must weigh all positive factors present in a particular case against any negative factors in the totality of the record.[3] The analysis must be comprehensive, specific to the case, and based on all relevant facts known at the time of adjudication. For complex or difficult cases, officers should consult with supervisors and local counsel.

## A. Applicability

Congress generally provides discretionary authority explicitly in the statutory language that governs an immigration benefit. In some instances, however, discretionary authority is less explicit and must be inferred from the statutory language. Executive agencies may also outline their discretionary authority explicitly in regulations.[4]

Many immigration benefit requests are filed under provisions of law that require the favorable exercise of discretion to administer the benefit.[5] In these cases, the benefit requestor has the burden of demonstrating eligibility for the benefit sought and that USCIS should favorably exercise discretion.[6] Where an immigration benefit is discretionary, meeting the statutory and regulatory requirements alone does not entitle the requestor to the benefit sought.

Certain immigration benefits are not discretionary.[7] In these cases, if the requestor properly filed and meets the eligibility requirements then USCIS must approve the benefit request. There is no discretionary analysis as part of the adjudication, and these requests cannot be denied as a matter of discretion.

The following table provides a non-exhaustive overview of immigration benefits and whether discretion is involved in the adjudication of such benefits.

Immigration Benefits Involving Discretionary Review

| Benefit Type | Discretion Involved (Yes or No) |
|---|---|
| Petition to classify an alien as a nonimmigrant worker[8] | No (with some exceptions) |
| Petition to classify an alien as a fiancé(e) of a U.S. citizen[9] | Yes |
| Application to extend or change nonimmigrant status[10] | Yes |
| Advance permission to enter as a nonimmigrant[11] | Yes |

CAR-000015

| Benefit Type | Discretion Involved (Yes or No) |
| --- | --- |
| Initial Parole Document (for aliens who are currently outside the United States) also referred to as "humanitarian parole"[12] | Yes |
| International entrepreneur parole[13] | Yes |
| Temporary protected status[14] | Yes |
| Refugee status[15] | Yes (with some exceptions)[16] |
| Asylum[17] | Yes |
| Petition to classify an alien as a family-based immigrant[18] | No (with some exceptions) |
| Petition to classify an alien as an employment-based immigrant[19] | No (with one exception)[20] |
| Petition to classify an alien as an immigrant investor[21] | No (with some exceptions)[22] |
| Applications by an existing or prospective Regional Center[23] | No (with some exceptions)[24] |
| Adjustment of status[25] | Yes (with some exceptions)[26] |
| Registration[27] | Yes |
| Recognition as an American Indian born in Canada[28] | No |
| Waivers of inadmissibility[29] | Yes |
| Consent to reapply for admission after deportation or removal[30] | Yes |
| Employment authorization[31] | Yes (with some exceptions) |
| Removal of conditions on permanent residence[32] | No (with some exceptions)[33] |
| Naturalization[34] | No |
| Application for a Certificate of Citizenship[35] | No |

[Redaction - Start]

CAR-000016

Officers are reminded to follow regulations and specific guidance applicable to the underlying eligibility category, as reflected in standard operating procedures (SOPs) and training materials. For example, specific regulations at 8 CFR 208.13(b)(1)(i)-(ii) govern portions of the discretionary analysis for asylum applications. The RAIO Training Module on Discretion (PDF) provides further information. In cases affected by special circumstances outlined in operational guidance, officers should consult with their supervisors before deciding if the negative factors in a particular case are significant enough to warrant an unfavorable exercise of discretion.

[Redaction - End]

## B. Overview of Discretion

### 1. Definition

The Board of Immigration Appeals (BIA) has described the exercise of discretion as:

- A balancing of the negative factors evidencing the alien's undesirability as a permanent resident with the social and humane considerations presented on his or her behalf to determine whether relief appears in the best interests of this country.[36]
- A matter of administrative grace where the applicant has the burden of showing that discretion should be exercised in his or her favor.[37]
- A consideration of negative factors and the need for the applicant to offset such factors by showing unusual or even outstanding equities.[38]

These characterizations imply that the exercise of discretion cannot be arbitrary, inconsistent, or dependent on intangible or imagined circumstances.

In short, discretion is defined as the ability or power to exercise sound judgment in decision-making. While the discretionary analysis gives the officer some autonomy in the way in which he or she decides a particular case after all applicable eligibility requirements are established, that autonomy may only be exercised within the confines of certain legal restrictions. These restrictions define the scope of the officer's discretionary authority.[39]

### 2. Adjudicative Discretion

There are two broad types of discretion that may be exercised in the context of immigration law: prosecutorial (or enforcement) discretion[40] and adjudicative discretion. The scope of discretion is defined by what type of discretionary decision is being made. This chapter only discusses the exercise of adjudicative discretion.

Adjudicative discretion requires an officer to decide whether to exercise discretion favorably when adjudicating a request for an immigration benefit. This decision is guided by the applicable statutes,

regulations, and policies that outline the eligibility requirements for the benefit and the facts present in the case at issue. The U.S. Supreme Court has referred to adjudicative discretion as merit-deciding discretion.[41]

In general, an officer may exercise favorable adjudicative discretion to approve a benefit request when the requestor has met the applicable eligibility requirements and negative factors impacting discretion are not present.[42] An exercise of discretion to grant a benefit may also be appropriate when the requestor has met the eligibility requirements for the benefit, and the positive factors outweigh the negative factors. An exercise of discretion to deny, rather than to grant, may likewise be appropriate when the requestor has met the requirements of the request, but negative factors found in the course of the adjudication outweigh the positive factors.

### 3. Who Exercises Discretion

Congress expressly granted discretion to the Secretary of Homeland Security in deciding when to grant certain immigration benefits. For example, the Immigration and Nationality Act (INA) states: "The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum . . . ."[43]

The Secretary's discretionary power is delegated to the officer, through DHS and USCIS. Therefore, when an officer exercises discretion in adjudicating a request for an immigration benefit, the officer is exercising discretion on behalf of the Secretary of Homeland Security.

In many cases, the INA still refers to the Attorney General's discretion because the statutory text has not been changed to reflect the creation of DHS and the transfer of many functions from the U.S. Department of Justice (DOJ) to DHS.[44] If USCIS has adjudicative authority over the benefit, the statute should be read as conferring the power to exercise discretion on the Secretary of Homeland Security.[45]

### 4. Discretion

*Eligibility Threshold*

For discretionary benefits, there is never discretion to grant an immigration benefit if the benefit requestor has not first met all applicable threshold eligibility requirements.

It is legally permissible to deny an application as a matter of discretion without determining whether the requestor is otherwise eligible for the benefit.[46] However, the record is essentially incomplete if USCIS denies an application, petition, or request in its exercise of discretion without making a determination concerning eligibility.

Therefore, as a matter of policy, officers should generally make a specific determination regarding eligibility before addressing the exercise of discretion. Where denying the benefit request is appropriate, the officer should generally include in the denial letter his or her determination on all eligibility requirements, including

but not limited to discretionary grounds, if applicable, so that the reasons for the ultimate denial are clearly reflected in the record.

*Lack of Negative Factors*

An alien's threshold eligibility for the benefit sought is generally also a positive factor. Therefore, absent any negative factors, USCIS ordinarily exercises discretion positively.[47] Generally, if there are no negative factors to weigh against that positive factor, denial of the benefit would be an inappropriate use of discretion.

## C. Adjudicating Discretionary Benefits

When adjudicating a discretionary benefit, the officer should first determine whether the requestor meets all threshold eligibility requirements. For example, in adjudicating an application for adjustment of status under INA 245(a), the officer should first determine:

- Whether the applicant was inspected and admitted or paroled or has an approved petition as a VAWA self-petitioner;
- Is eligible to receive an immigrant visa;
- Is admissible to the United States for permanent residence; and
- Has an immigrant visa immediately available to him or her at the time he or she files the adjustment application.[48]

If the officer finds that the requestor does not meet the eligibility requirements but may be eligible for a waiver, exemption, or other form of relief, the officer should determine whether the requestor qualifies for a waiver, exemption, or other form of relief. Not all applications are concurrently filed, and in some instances, applicants must file a separate waiver application or application for relief and have that application approved before the applicant qualifies for the benefit.

If the officer finds that the requestor meets the eligibility requirements because of an approved waiver, exemption, or other form of relief, the officer must then determine whether the request should be granted as a matter of discretion. If the officer finds that the requestor does not meet all applicable eligibility requirements, the officer can still include a discretionary analysis in the denial. The discretionary determination is the final step in the adjudication of a benefit request. Adding a discretionary analysis to a denial is useful if an appellate body on review disagrees with the officer's conclusion that the requestor failed to meet the threshold eligibility requirements. In such a situation, the discretionary denial may still stand.

## 1. Basic Adjudication Steps

Officers should generally follow a three-step process when adjudicating a benefit request involving a discretionary analysis.

| Basic Adjudication Steps Involving Discretion | |
|---|---|
| **Step One** | Fact finding |
| **Step Two** | Determine whether requestor meets the threshold eligibility requirements |
| **Step Three** | Conduct discretionary analysis |

*Fact Finding*[49]

Fact finding refers to the process of gathering and assessing evidence. The focus of fact finding should be to obtain credible evidence relevant to a requestor's eligibility for the benefit, including the discretionary determination. If a requestor is interviewed, the officer should elicit information pertinent to fact finding during the interview. As part of fact finding, officers should evaluate relevant information present in the record. Depending on the benefit sought, such information might include, but is not limited to:

- Immigration history;
- Family ties in the United States;
- Any serious medical conditions;
- Any criminal history;
- Other connections to the community; or
- Information indicating a public safety or national security concern.

Background information may be relevant for eligibility determinations and to the exercise of discretion.

For discretionary benefits, the benefit requestor has the burden of showing that a favorable exercise of discretion is warranted through the submission of evidence.[50] In cases where negative factors are present, the officer may ask the requestor directly why he or she warrants a favorable exercise of discretion. The officer should document any response, or lack thereof, in the record.

*Determining Whether Requestor First Meets Threshold Eligibility Requirements*

The discretionary analysis is the final step in the adjudication. Generally, the officer should first determine whether the requestor meets all threshold eligibility requirements before beginning the discretionary analysis. If the officer determines the requestor has not met the eligibility requirements for the benefit sought, the officer may deny the request without completing a discretionary analysis. However, an officer may include a discretionary analysis if a discretionary denial would be warranted even if the requestor had met the threshold statutory and regulatory requirements.

In the process of determining whether the requestor has met the eligibility requirements for the benefit sought, the officer might find that certain facts related to threshold eligibility for the specific benefit may also be relevant to the discretionary determination.

For example, if an officer finds that an adjustment applicant was convicted of a crime, the applicant might be inadmissible. The criminal conviction may also affect the discretionary analysis.

CAR-000020

*Conducting Discretionary Analysis*

The act of exercising discretion involves the weighing of positive and negative factors and considering the totality of the circumstances in the specific case. In the immigration context, the goal is to assess whether, based on the totality of the circumstances, the alien warrants a favorable exercise of discretion.[51]

## 2. Identifying Discretionary Factors

Any facts related to the alien's identity, conduct, character, family or other ties to the United States, immigration status, or any other humanitarian concerns may be appropriate factors to consider in the exercise of discretion. An alien's conduct can include how he or she entered the United States and what he or she has done since arrival, such as employment, schooling, or any evidence of criminal activity.

Whether the alien has family members living in the United States also is relevant to the discretionary analysis. Ties to the United States may include owning real estate or a business; the conduct of that business (including maintenance of such business in compliance with the law) may also be relevant to the discretionary analysis. Humanitarian concerns may include, but are not limited to, health issues.

Precedent case law provides guidance on how to consider evidence and weigh the positive and negative factors present in a case. These precedent decisions and USCIS guidance provide a framework to assist officers in making discretionary decisions that are reasonable and fair.[52]

*Factors That May Be Considered*

There are a number of factors or factual circumstances that are generally considered when conducting a discretionary analysis. Factors may include, but are not limited to:

- Extent to which identity can be established and aliases are disclosed;
- Contribute to the good order and happiness of the United States;
- Ties to family members in the United States and the closeness of the underlying relationships;[53]
- Hardship due to an adverse decision;[54]
- Value and service to the community;[55]
- Length of lawful residence in the United States and any immigration status held during that residence, including the age at which residence in the United States began;[56]
- Service in the U.S. armed forces;[57]
- History of employment;[58]
- Property or business ties in the United States;[59]
- History of taxes paid;
- Nature and underlying circumstances of any inadmissibility grounds at issue, the seriousness of the violations, and eligibility for a waiver of inadmissibility or other form of relief;[60]
- Likelihood that lawful permanent resident (LPR) status will ensue soon;

- Evidence regarding respect for law and order, good character, and intent to hold family responsibilities (for example, affidavits from family, friends, and responsible community representatives);[61]
- Criminal history (in the United States and abroad) and extent of rehabilitation and reform;[62]
- Community service, not including any instances imposed by the courts;
- Existence of an unexecuted administratively final removal, deportation, or exclusion order;[63]
- Public safety or national security concerns;[64]
- Moral depravity or criminal tendencies reflected by a single serious crime or an ongoing or continuing criminal record, with attention to the nature, scope, seriousness, and recent occurrence of criminal activity.[65]
- Findings of juvenile delinquency;[66]
- Compliance with immigration laws, including lawful entry into the United States;[67]
- Whether the alien has endorsed, promoted, supported, or otherwise espoused anti-American views or the views of a terrorist organization or group (including in social media content by, or involving an alien). This includes organizations who support or promote anti-American ideologies or activities, antisemitic terrorism, antisemitic terrorist organizations, antisemitic ideologies, or has engaged in physical harassment of any person in furtherance of the organization or group;[68]

[Redaction - Start]

This also includes antisemitic terrorism and antisemitic terrorist organizations such as Hamas, Palestinian Islamic Jihad, Hezbollah, or Ansar Allah "the Houthis." Upon identifying such a case, officers must notify and consult with their supervisory chain of command, and their local Fraud Detection and National Security point of contact.

[Redaction - End]

- In the case of an alien who was admitted or paroled into the United States, whether the application for admission or parole violated the laws, regulations, and policies in place at the time;[69]
- Relevant country-specific facts and circumstances, such as insufficient vetting and screening information;[70]
- Previous instances of fraud or false testimony in dealings with USCIS or any government agency;
- Marriage to a U.S. citizen or LPR for the primary purpose of circumventing immigration laws;[71]
- Conduct after admission as a nonimmigrant, where such conduct is inconsistent with the nonimmigrant status (for example, engaging in unlawful employment or unauthorized academic study) or with representations made to consular officers or DHS officers when applying for admission (for example, failing to engage in the activities for which they sought admission); and
- Other indicators of character.[72]

This is a non-exhaustive list of factors; the officer may consider any relevant fact in the discretionary analysis.

*Country-Specific Facts and Circumstances*

CAR-000022

On June 4, 2025, the President issued Presidential Proclamation 10949, *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats*, to exercise his authority under INA 212(f) and impose certain restrictions, limitations, and exceptions on the entry of aliens from 19 countries: Afghanistan, Burma, Burundi, Chad, Republic of Congo, Cuba, Equatorial Guinea, Eritrea, Haiti, Iran, Laos, Libya, Sierra Leone, Somalia, Sudan, Togo, Turkmenistan, Venezuela, and Yemen.[73] The Proclamation fully or partially restricts the entry or admission of aliens from those 19 countries who were outside the United States on or after June 9, 2025, and who do not have a valid visa on or after June 9, 2025. The reasons for the restrictions are country-specific and specified in the Proclamation.

The Proclamation's categorical ineligibility for entry or admission does not apply to adjustment of status, extension of stay, change of status, or other discretionary benefits made by applicants physically present in the United States. However, USCIS may considers on a case-by-case basis country-specific facts and circumstances, such as those outlined in the Proclamation, as a significant negative factor when making an individual assessment in weighing discretion, with certain exceptions.[74]

For example, certain countries (including but not limited to Afghanistan, Eritrea, Libya, Somalia, Sudan, Yemen, and Venezuela) lack a competent or central authority for issuing passports and civil documents among other concerns, which directly relates to USCIS' ability to meaningfully assess eligibility for benefit requests including identity, and therefore whether an alien warrants a favorable exercise of discretion.[75]

Where country-specific concerns relate to a high rate of overstay, such data may impact an officer's determination of likelihood that a particular individual may overstay, coupled with other case-specific facts and circumstances. For example, if an alien's conduct after admission as a nonimmigrant is inconsistent with the nonimmigrant status, and the alien is from a country with a high rate of overstay, then the officer may conclude that the alien's conduct should be considered as a significantly negative factor.

The mere fact that an individual is from a country subject to INA 212(f) restrictions on entry or admission, however, is not by itself a significant negative factor. USCIS considers relevant country-specific facts and circumstances such as those outlined in the Proclamation[76] on a case-by-case basis in the totality of the circumstances, considering the relevance of those facts to the benefit request being adjudicated and the alien requesting the benefit. USCIS weighs all relevant positive and negative factors when making these discretionary determinations.

[Redaction - Start]

Officers should consult with their supervisory chains of command before issuing a discretionary denial where country-specific factors such as those outlined in the Proclamation would warrant a denial but the case may also fall under an exception. See, for example, Section 4(b)-(d) of Presidential Proclamation 10949, 90 FR 24497, 24503 (June 4, 2025).

[Redaction - End]

*Anti-American Views or Views of a Terrorist Organization*

USCIS considers circumstances where an alien has endorsed, promoted, supported, or otherwise espoused anti-American views or the views of a terrorist organization or group, including terrorist organizations who support or promote antisemitic terrorism, antisemitic terrorist organizations, and antisemitic ideologies, as mentioned above, to be overwhelmingly negative factors in any applicable case involving USCIS discretionary analysis. Accordingly, USCIS enforces all relevant immigration laws to the maximum degree, including the use of discretion, to deny the benefit request involving such circumstances.

[Redaction - Start]

While engaging in the conduct cited above at any time is an overwhelmingly negative discretionary factor in the exercise of discretion, the officer should assign particular focus to aliens who engaged in on-campus anti-American and antisemitic activities that occurred on or after October 7, 2023.

This includes, in particular, aliens who file the following particular benefit requests:

Petition for a Nonimmigrant Worker (Form I-129) for the following categories:

- Petitions filed by any college, university, technical school, or similar educational institution where USCIS determines that significant antisemitic activity in violation of Executive Order 14188, Additional Measures to Combat Anti-Semitism, 90 FR 8847 (Jan. 29, 2025), has occurred.

Application to Register Permanent Residence or Adjust Status (Form I-485) for the following categories:

- Applications where, upon review, the officer has reason to believe the alien was studying, teaching, working, or otherwise affiliated with a college, university, technical school, or similar educational institution at any point after the October 7, 2023 Hamas attacks, regardless of whether the alien was engaged in this activity pursuant to an F1 or other nonimmigrant visa.

Application to Extend/Change Nonimmigrant Status (Form I-539) for the following category:

- Reinstatement of F-1 nonimmigrant status.

Application for Employment Authorization (Form I-765) for the following category:

- (c)(3)(A), F-1 student, pre-completion Optional Practical Training.

In addition, on February 20, 2025, the United States designated Tren de Aragua (TdA) as a Foreign Terrorist Organization. On March 14, 2025, the President issued Presidential Proclamation 10903, "Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua." In furtherance of the proclamation, USCIS officers must not approve any petition, application, or benefit request, under any circumstances, where an activity, association, or nexus with a known or suspected TdA member has been identified.

USCIS officers may continue to process cases with a known or suspected TdA member other than a grant or approval (such as denials or referrals). However, officers should consult with their supervisory chains of command to coordinate notification with U.S. Immigration and Customs Enforcement (ICE) prior to taking any adjudicative action and provide any relevant information ICE deems appropriate. USCIS will take all actions necessary to support law enforcement at all levels with their actions in support of the provisions of the proclamation.

Evidence of a nexus to TdA (or any other terrorist organization), which includes any unresolved evidence that tends to suggest an alien's involvement or association with TdA, is an overwhelmingly negative factor in any discretionary analysis.

When compelling circumstances exist, necessary vetting, deconfliction, and administrative investigative actions have been completed, and USCIS determines the approval of the benefit does not pose a threat to national security or public safety, the benefit may be approved only following approval from the USCIS Senior Leadership Review Board.

[Redaction - End]

## 3. Weighing Factors

The act of exercising discretion involves weighing both positive and negative factors and considering the totality of the circumstances in the case before making a decision. Whether a favorable exercise of discretion is warranted is case-specific and depends on the evidence of positive and negative factors submitted by the requestor. As the negative factors grow more serious, a favorable exercise of discretion may not be warranted without the existence of unusual or outstanding equities in the case.[77]

*Totality of the Circumstances: Evaluating the Case-Specific Considerations for Each Factor*

An officer must consider the totality of the facts and circumstances of each individual case involving discretionary benefit requests. To do so, officers should ensure discretionary factors are considered in the context of all factors in the case.

There is no formula for determining the weight to be given a specific positive or negative factor. Officers should not attempt to assign numbers or points to a specific factor to determine if one factor is more or less favorable than another. Officers should consider each factor separately and then all the factors as a whole. The negative and positive factors should be balanced against each other and then evaluated cumulatively. [78] The weight given to each factor may vary depending on the facts of a particular case as well as the relationship of the factor to other factors in the analysis.

Discretionary factors are often interrelated. Officers must therefore determine whether each particular factor is positive or negative and how it affects the other factors under consideration. Some factors are generally given more weight than others. A small number of positive factors may overcome a larger number of negative factors, and vice versa, depending on the specific factors.

For example, when weighing the positive and negative factors, the officer should not consider the various factors individually, in isolation from one another.[79] When considering each factor individually, without considering how all the factors relate to each other, it becomes difficult to weigh the positive and negative factors properly.

Once the officer has weighed each factor individually, the officer should consider all the factors cumulatively to determine whether the unfavorable factors outweigh the favorable ones. If, after weighing all the factors, the officer determines that the positive factors outweigh the negative factors, then the requestor merits a favorable exercise of discretion. If the negative factors outweigh the positive factors, then the officer may decline to favorably exercise discretion and deny the benefit request. There may be instances where the gravity of a negative factor is of such significance that the factor by itself weighs heavily against a favorable exercise of discretion.[80]

Cases that are denied on the basis of an unfavorable exercise of discretion must include an officer's explanation of why USCIS is not exercising discretion in the requestor's favor.[81] The denial notice must clearly set forth the positive and negative factors considered and explain why the negative factors outweigh the positive factors.

## 4. Supervisory Review[82]

Officers should discuss complex or difficult cases with their supervisors, as needed, particularly those involving criminality or national security issues, regardless of whether the outcome is favorable or unfavorable to the applicant. As appropriate, supervisors may raise issues with USCIS local counsel.

Sometimes a case, especially when coupled with government errors or delay and compelling humanitarian factors, may justify an exercise of discretion resulting in an extraordinarily favorable outcome for the applicant. Officers considering such action should carefully confirm the availability of such action under the law, weigh the factors as in every discretionary decision, consult with supervisors or counsel, and make a record of the analysis and consultation.

## D. Documenting Discretionary Determinations

When issuing a decision that involves a discretionary determination, a careful explanation of the officer's findings and analysis (communicating the positive and negative factors considered and how the officer weighed these factors) helps ensure that the decision is legally sufficient and appropriate. The discretionary determination gives the officer authority to ultimately approve a benefit or form of relief or deny a benefit or form of relief when the applicant otherwise meets eligibility requirements. Officers, however, cannot exercise that authority arbitrarily or capriciously.

*Favorable Exercise of Discretion*

If no negative factors are present, the officer may provide a simple statement in the file noting the absence of negative factors (for example, comments indicating that the applicant is eligible, that there are no negative

factors, and that therefore USCIS grants the benefit in the exercise of discretion).

If an officer grants a benefit in the exercise of discretion where negative factors are present but the positive factors outweigh the negative factors, the file should contain a record of the officer's deliberations. The officer should clearly annotate the favorable factors in the file. The officer should also annotate the file regarding any consultations that supported the approval in complex or difficult cases. In some situations, the file annotation may be the only record or documentation for other officers to understand the reasons for the decision.

The officer should indicate the rationale for the decision in a clear manner so that it is easily understandable to others reviewing the file. This may include the officer addressing the discretionary issues in the written decision or by making an annotation in the file.

*Unfavorable Exercise of Discretion*[83]

If negative factors outweigh the positive factors and USCIS denies the benefit request, the written decision must contain an analysis of the factors considered in exercising discretion, where possible.[84]

Negative factors must never be analyzed in a generalized way. The decision must address negative factors on an individualized basis, applying the totality of the circumstances to the specific facts of the case. The decision should specify both the positive and negative factors that the officer identified and considered in support of the decision and should explain how the officer weighted the different factors. The denial notice should set forth the rationale for the decision so that the officer's deliberation may be understood by the requestor as well as any administrative reviewer (such as the Administrative Appeals Office or immigration judge) and the federal courts.

*Articulating Analysis Separately for Discretion and Threshold Eligibility Requirements*

In cases involving the negative exercise of discretion, officers should generally articulate clearly the legal analysis of whether the applicant meets the threshold eligibility requirements and then, separately, the discretionary analysis.

*Denying Benefit Requests as a Matter of Discretion*

If the officer denies a benefit request as a matter of discretion, the officer generally must, in the written notice to the requestor:[85]

- Indicate the decision to deny was made as a matter of discretion;
- Identify, specifically, each positive factor presented by the facts of the case;
- Identify, specifically, each negative factor;
- Explain the relative decisional weight given to each negative and positive factor; and
- Explain the cumulative weight given to the negative and positive factors, and reason for the outcome.

By including the appropriate articulation of discretionary determinations in USCIS decision-making, officers enhance the quality of adjudications and provide appropriate explanation to the requestor.

## Footnotes

[^ 1] For purposes of this Policy Manual part, the term requestor means the person, organization, or business requesting an immigration benefit from USCIS. This may include an applicant or petitioner, depending on the request.

[^ 2] See *Matter of Patel (PDF)*, 17 I&N Dec. 597 (BIA 1980). See the program-specific Policy Manual part to determine whether the adjudication of a benefit request requires the exercise of discretion.

[^ 3] See Section C, Adjudicating Discretionary Benefits, Subsection 3, Weighing Factors [1 USCIS-PM E.8(C)(3)].

[^ 4] For example, see *Kucana v. Holder*, 558 U.S. 233 (2010) (comparing discretion provided in statutory language against regulations promulgated by the U.S. Department of Justice).

[^ 5] See, for example, INA 245(a) (adjustment of status).

[^ 6] See INA 291. See *Matter of Patel (PDF)*, 17 I&N Dec. 597 (BIA 1980). See *Matter of Leung (PDF)*, 16 I&N Dec. 12 (BIA 1976). See *Matter of Arai (PDF)*, 13 I&N Dec. 494 (BIA 1970).

[^ 7] See, for example, INA 316 (naturalization).

[^ 8] See Petition for a Nonimmigrant Worker (Form I-129). See INA 101(a)(15). See INA 214 and 8 CFR 214.

[^ 9] See Petition for Alien Fiancé(e) (Form I-129F). See INA 101(a)(15)(K). See INA 214(d) and INA 214(r). See 8 CFR 214.2(k).

[^ 10] See Application to Extend/Change Nonimmigrant Status (Form I-539). See INA 214 and 8 CFR 214.

[^ 11] See Application for Advance Permission to Enter as a Nonimmigrant (Form I-192). See INA 212(d)(3)(A).

[^ 12] See Application for Travel Documents, Parole Documents, and Arrival/Departure Records (Form I-131). See INA 212(d)(5)(A).

[^ 13] See INA 212(d)(5)(A). See 8 CFR 212.19. See Volume 3, Humanitarian Protection and Parole, Part G, International Entrepreneur Parole [3 USCIS-PM G].

[^ 14] See Application for Temporary Protected Status (Form I-821). See INA 244 and 8 CFR 244.

[^ 15] See Refugee/Asylee Relative Petition (Form I-730). See INA 207 and 8 CFR 207.

[^ 16] Except for following-to-join refugee adjudications. See 8 CFR 207.7.

[^ 17] See Application for Asylum and for Withholding of Removal (Form I-589). See INA 208 and 8 CFR 208. See *Matter of Pula (PDF)*, 19 I&N Dec. 467, 471 (BIA 1987).

[^ 18] See Petition for Alien Relative (Form I-130). See INA 203(a) and INA 204(a)(1)(A)-(D). See 8 CFR 204.

[^ 19] See Immigrant Petition for Alien Workers (Form I-140). See INA 203(b) and INA 204(a)(1)(E)-(G). See 8 CFR 204.5.

[^ 20] The national interest waiver element of a petition seeking classification under INA 203(b)(2)(B) is discretionary. See *Mousavi v. USCIS*, 828 Fed. Appx. 130, 133 (3rd Cir. 2020). See *Poursina v. USCIS*, 936 F.3d 868, 870-72 (9th Cir. 2019). See *Matter of Dhanasar*, 26 I&N Dec. 884, 889 n. 9 (AAO 2016). For specific information on applying discretion in national interest waiver petitions, see Volume 6, Immigrants, Part F, Employment-Based Classifications, Chapter 5, Advanced Degree or Exceptional Ability, Section D, National Interest Waiver of Job Offer [6 USCIS-PM F.5(D)].

[^ 21] See Immigrant Petition by Standalone Investor (Form I-526) or Immigrant Petition by Regional Center Investor (Form I-526E). See INA 203(b)(5) and INA 204(a)(1)(H). See 8 CFR 204.6.

[^ 22] Exceptions include threats to the national interest, fraud, deceit, misrepresentation, and criminal misuse. See INA 203(b)(5)(N)(i) and INA 203(b)(5)(O)(i). See Volume 6, Immigrants, Part G, Investors, Chapter 8, Sanctions and Discretionary Determinations [6 USCIS-PM G.8].

[^ 23] See Application for Regional Center Designation (Form I-956) and Application for Approval of an Investment in a Commercial Enterprise (Form I-956F).

[^ 24] Exceptions include threats to the national interest, fraud, deceit, misrepresentation, and criminal misuse. See INA 203(b)(5)(N)(i) and INA 203(b)(5)(O)(i). See Volume 6, Immigrants, Part G, Investors, Chapter 8, Sanctions and Discretionary Determinations [6 USCIS-PM G.8].

[^ 25] See Application to Register Permanent Residence or Adjust Status (Form I-485). For more information on how to conduct a discretionary analysis in the context of an adjustment application, see Volume 7, Adjustment of Status, Part A, Adjustment of Status Policies and Procedures, Chapter 10, Legal Analysis and Use of Discretion [7 USCIS-PM A.10].

[^ 26] See, for example, INA 245(a) and INA 209(b). Exceptions include adjustment of status based on Nicaraguan Adjustment and Central American Relief Act of 1997 (NACARA), Title II of Pub. L. 105-100 (PDF), 111 Stat. 2160, 2193 (November 19, 1997); refugee-based adjustment under INA 209(a)(2); adjustment of status based on Haitian Refugee Immigration Fairness Act of 1998 (HRIFA), Section 902 of Division A, Title IX of Pub. L. 105-277 (PDF), 112 Stat. 2681, 2681-538 (October 21, 1998); adjustment of status based on Liberian Refugee Immigration Fairness (LRIF) law, Section 7611 of the National Defense Authorization Act for Fiscal Year 2020, Pub. L. 116-92 (PDF), 113 Stat. 1198, 2309 (December 20, 2019).

[^ 27] See Application to Register Permanent Residence or Adjust Status (Form I-485). See INA 249. See 8 CFR 249. For more information, see Volume 7, Adjustment of Status, Part O, Registration [7 USCIS-PM O].

CAR-000029

[^ 28] See INA 289 and 8 CFR 289.

[^ 29] See Application for Waiver of Grounds of Inadmissibility (Form I-601). See Application for Provisional Unlawful Presence Waiver (Form I-601A). See Application by Refugee for Waiver of Inadmissibility Grounds (Form I-602). See, for example, INA 209(c), INA 212(a)(9)(B)(v), INA 212(a)(9)(C)(iii), and INA 212(g)-(i). For more information on how to conduct a discretionary analysis in the context of a waiver application, see Volume 9, Waivers and Other Forms of Relief, Part A, Waiver Policies and Procedures, Chapter 5, Discretion [9 USCIS-PM A.5]. [Redaction - Start] Additional guidance for officers adjudicating refugee claims is available in International and Refugee Affairs Division (IRAD) materials. [Redaction - End]

[^ 30] See Application for Permission to Reapply for Admission into the United States After Deportation or Removal (Form I-212). See INA 212(a)(9)(A)(iii) and INA 212(a)(9)(C)(ii).

[^ 31] See Application for Employment Authorization (Form I-765). See INA 274A. See 8 CFR 274a.12. For more information, see Volume 10, Employment Authorization [10 USCIS-PM].

[^ 32] See Petition to Remove Conditions on Residence (Form I-751). See Petition by Investor to Remove Conditions on Permanent Resident Status (Form I-829). See INA 216 and INA 216A. See 8 CFR 216.

[^ 33] When a family-based conditional permanent resident files a Petition to Remove Conditions on Residence (Form I-751) as a waiver request based on termination of marriage, battery or extreme cruelty, or extreme hardship, it is a discretionary decision. See INA 216(c)(4).

[^ 34] See Application for Naturalization (Form N-400). See INA 316. For more information, see Volume 12, Citizenship and Naturalization [12 USCIS-PM].

[^ 35] See Application for Certificate of Citizenship (Form N-600). See INA 301, INA 309 and INA 320. For more information, see Volume 12, Citizenship and Naturalization, Part K, Certificates of Citizenship and Naturalization [12 USCIS-PM K].

[^ 36] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 584 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Morales (PDF)*, 21 I&N Dec. 296, 300 (BIA 1996).

[^ 37] See *Matter of Patel (PDF)*, 17 I&N Dec. 597 (BIA 1980) (adjustment of status). See *Von Pervieux v. INS*, 572 F.2d 114, 118 (3rd Cir. 1978). See *Ameeriar v. INS*, 438 F.2d 1028, 1030 (3rd Cir. 1971). See *Matter of Marques (PDF)*, 16 I&N Dec. 314 (BIA 1977).

[^ 38] See *Matter of Ortiz-Prieto (PDF)*, 11 I&N Dec. 317 (BIA 1965).

[^ 39] See Subsection 4, Discretion [1 USCIS-PM E.8(B)(4)].

[^ 40] Prosecutorial discretion is a decision to enforce or not enforce the law against someone. Prosecutorial discretion is exercised when an agency makes a decision with respect to enforcing the law. USCIS, along with

other DHS agencies such as U.S. Immigration and Customs Enforcement and U.S. Customs and Border Protection, has the authority to exercise prosecutorial discretion related to immigration enforcement actions it may take, particularly in the context of initiating removal proceedings through the issuance of a non-mandatory Notice to Appear. Prosecutorial discretion does not decrease USCIS' commitment to enforcing the immigration laws. Rather, it is a means to use agency resources in a way that best accomplishes the mission of administering and enforcing the immigration laws of the United States.

[^ 41] See *INS v. Doherty (PDF)*, 502 U.S. 314 (1992).

[^ 42] See *Matter of Arai (PDF)*, 13 I&N Dec. 494, 496 (BIA 1970) ("In the absence of adverse factors, adjustment will ordinarily be granted, still as a matter of discretion."). See *Matter of Pula (PDF)*, 19 I&N Dec. 467, 474 (BIA 1987) ("In the absence of any adverse factors, however, asylum should be granted in the exercise of discretion.").

[^ 43] See INA 209(b).

[^ 44] As of March 1, 2003, in accordance with Section 1517 of the Homeland Security Act of 2002 (HSA), Pub. L. 107-296 (PDF), 116 Stat. 2135, 2311 (November 25, 2002), any reference to the Attorney General in a provision of the INA describing functions that were transferred from the Attorney General or other DOJ official to DHS by the HSA "shall be deemed to refer to the Secretary" of Homeland Security. See 6 U.S.C. 557 (codifying Section 1517 of the HSA).

[^ 45] See 6 U.S.C. 275.

[^ 46] See *INS v. Abudu (PDF)*, 485 U.S. 94, 105 (1988). See *INS v. Bagamasbad (PDF)*, 429 U.S. 24, 26 (1976). See *INS v. Rios-Pineda (PDF)*, 471 U.S. 444 (1985).

[^ 47] See *Matter of Arai (PDF)*, 13 I&N Dec. 494, 496 (BIA 1970). See *Matter of Lam (PDF)*, 16 I&N Dec. 432 (BIA 1978).

[^ 48] See INA 245(a). See Volume 7, Adjustment of Status, Part B, 245(a) Adjustment, Chapter 2, Eligibility Requirements [7 USCIS-PM B.2].

[^ 49] See Chapter 6, Evidence [1 USCIS-PM E.6].

[^ 50] See 8 CFR 103.2(b)(1).

[^ 51] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 586-587 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990).

[^ 52] See *Matter of Arai (PDF)*, 13 I&N Dec. 494, 496 (BIA 1970). See *Matter of Lam (PDF)*, 16 I&N Dec. 432, 434 (BIA 1978). See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 584 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Morales (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996).

[^ 53] See *Matter of Arai (PDF)*, 13 I&N Dec. 494, 496 (BIA 1970). See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 584 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Morales (PDF)*, 21 I&N Dec. 296, 301-302 (BIA 1996) (". . . if the alien has relatives in the United States, the quality of their relationship must be considered in determining the weight to be awarded this equity.").

[^ 54] See *Matter of Arai (PDF)*, 13 I&N Dec. 494, 496 (BIA 1970). See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 585 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Morales (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996).

[^ 55] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 585 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990).

[^ 56] See *Matter of Arai (PDF)*, 13 I&N Dec. 494, 496 (BIA 1970). See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 584-85 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Morales (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996). Residence must be lawful to be considered a positive factor. See *Matter of Lee (PDF)*, 17 I&N Dec. 275, 278 (Comm. 1978).

[^ 57] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 585 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Morales (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996).

[^ 58] See *Matter of Lam (PDF)*, 16 I&N Dec. 432, 434 (BIA 1978). See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 585 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Morales (PDF)*, 21 I&N Dec. 296, 301-302 (BIA 1996) (". . . if the alien has a history of employment, it is important to consider the type of employment and its length and stability.").

[^ 59] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 585 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Morales (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996).

[^ 60] See *Matter of Mendez-Morales (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996).

[^ 61] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 585 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990).

[^ 62] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 585 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Morales (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996). However, reformation is not an absolute prerequisite to a favorable exercise of discretion. Rather, the discretionary analysis must be conducted on a case-by-case basis, with rehabilitation a factor to be considered in the exercise of discretion. See *Matter of Edwards (PDF)*, 20 I&N Dec.

191, 196 (BIA 1990) (considering rehabilitation a significant factor in view of the nature and extent of the respondent's criminal history, which spanned 10 years).

[^ 63] USCIS generally does not exercise discretion favorably to grant adjustment where the adjustment applicant has an unexecuted removal order. For information on the effect of an unexecuted removal order of an arriving alien on adjustment of status, see Volume 7, Adjustment of Status, Part A, Adjustment of Status Policies and Procedures, Chapter 10, Legal Analysis and Use of Discretion, Section B, Discretion, Subsection 2, Issues and Factors to Consider [7 USCIS-PM A.10(B)(2)].

[^ 64] See Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Deportable Aliens, PM-602-0187, issued February 28, 2025.

[^ 65] The officer should not go behind the record of conviction to reassess an alien's ultimate guilt or innocence, but rather inquire into the circumstances surrounding the commission of the crime in order to determine whether a favorable exercise of discretion is warranted. See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 197 (BIA 1990).

[^ 66] USCIS considers findings of juvenile delinquency on a case-by-case basis, based on the totality of the evidence, to determine whether a favorable exercise of discretion is warranted. Therefore, an adjustment applicant must disclose all arrests and charges. If any arrest or charge was disposed of as a matter of juvenile delinquency, the alien must include the court or other public record that establishes this disposition. See Volume 7, Adjustment of Status, Part A, Adjustment of Status Policies and Procedures, Chapter 4, Documentation, Section A, Initial Evidence, Subsection 7, Certified Copies of Arrest Records and Court Dispositions [7 USCIS-PM A.4(A)(7)]. For more information, see Volume 7, Adjustment of Status, Part B, 245(a) Adjustment [7 USCIS-PM B] and Part F, Special Immigrant-Based Adjustment, Chapter 7, Special Immigrant Juveniles, Section C, Eligibility Requirements, Subsection 4, Admissibility and Waiver Requirements [7 USCIS-PM F.7(C)(4)].

[^ 67] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 584 (BIA 1978). See *Matter of Lee (PDF)*, 17 I&N Dec. 275, 278 (Comm. 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Morales (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996). However, the BIA found that a record of immigration violations standing alone does not conclusively support a finding of lack of good moral character. Further, how recent the deportation was can only be considered when there is a finding of a poor moral character based on moral turpitude in the conduct and attitude of an alien which evinces a callous conscience. In such circumstances, there must be a measurable reformation of character over a period of time in order to properly assess an alien's ability to assimilate into society. In all other instances, when the cause for deportation has been removed and the alien now appears eligible for issuance of a visa, the time factor should not be considered. See *Matter of Lee (PDF)*, 17 I&N Dec. 275 (Comm. 1978).

[^ 68] USCIS uses the definitions at INA 313(a) when identifying and determining anti-American organizations, views, activities, and ideologies.

[^ 69] This includes compliance with any requirements announced by DHS for any parole program or process, including whether the alien had knowledge of any false or fraudulent information. For example, in certain circumstances, DHS required a financial sponsor to submit an approvable Declaration of Financial Support (Form I-134) or Online Request to Be a Supporter and Declaration of Financial Support (Form I-134A) as a condition of an alien being authorized parole. An officer adjudicating an alien's pending immigration benefit request involving discretion may determine that the alien's prior application for parole was not in accordance with the policies in place at the time if the Form I-134 or Form I-134A relied upon by DHS to authorize parole contained false information or was accompanied by supporting evidence that contained false or fraudulent information.

[^ 70] Insufficient vetting and screening information may involve insufficient identity documents or inability to rely on documentation or information provided by the specified countries for identity purposes or determining criminal history or ties to criminal or terrorist organizations. For more information, see Presidential Proclamation 10949, Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats, 90 FR 24497 (PDF) (June 4, 2025).

[^ 71] Although this factor could lead to a statutory denial under INA 204(c).

[^ 72] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 584 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Morales (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996).

[^ 73] See INA 212(f) ("Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate."). See 90 FR 24497 (PDF) (June 4, 2025).

[^ 74] For a list of exceptions, see Section 4(b)-(d) of Presidential Proclamation 10949, 90 FR 24497, 24503 (PDF) (June 4, 2025).

[^ 75] For additional reciprocity information by country, see U.S. Department of State's U.S. Visa: Reciprocity and Civil Documents by Country webpage.

[^ 76] USCIS acknowledges that the President has issued other proclamations exercising authority under INA 212(f), and that this Proclamation may also be amended or reissued. To the extent that this Proclamation is amended or reissued, or the President further exercises his authority under INA 212(f), USCIS will consider any country-specific facts and circumstances outlined therein when making discretionary determinations for immigration benefit requests.

[^ 77] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 585 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Morales*

*(PDF)*, 21 I&N Dec. 296, 301 (BIA 1996). For example, USCIS generally does not favorably exercise discretion in certain cases involving violent or dangerous crimes except in extraordinary circumstances. See 8 CFR 212.7(d). For more information, see Volume 9, Waivers and Other Forms of Relief, Part A, Waiver Policies and Procedures, Chapter 5, Discretion, Section C, Cases Involving Violent or Dangerous Crimes [9 USCIS-PM A.5(C)]. See Volume 7, Adjustment of Status, Part A, Adjustment of Status Policies and Procedures, Chapter 10, Legal Analysis and Use of Discretion, Section B, Discretion, Subsection 2, Issues and Factors to Consider [7 USCIS-PM A.10(B)(2)]. Another example relates to applicants seeking adjustment based on U nonimmigrant status: Depending on the nature of the adverse factors, applicants may be required to clearly demonstrate that denial of adjustment would result in exceptional and extremely unusual hardship. Even if the applicant makes such a showing, however, USCIS may still find favorable exercise of discretion is not warranted in certain cases. See 8 CFR 245.24(d)(11).

[^ 78] See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 200 (BIA 1990) (concurring opinion).

[^ 79] See *Matter of Pula (PDF)*, 19 I&N Dec. 467, 473-74 (BIA 1987).

[^ 80] See, for example, 8 CFR 212.7(d) (In adjudicating an application for a waiver of a criminal ground of inadmissibility involving a violent or dangerous crime, "depending on the gravity of the alien's underlying criminal offense, a showing of extraordinary circumstances might still be insufficient to warrant a favorable exercise of discretion . . . .") For more information on discretion in the context of waivers of inadmissibility, see Volume 9, Waivers and Other Forms of Relief, Part A, Waiver Policies and Procedures, Chapter 5, Discretion [9 USCIS-PM A.5].

[^ 81] See 8 CFR 103.3(a).

[^ 82] Supervisory review is required in certain situations. The law provides for outcomes that may be extraordinarily favorable for the applicant but uphold principles of fairness and equity. See *Munoz v. Ashcroft*, 339 F.3d 950 (9th Cir. 2003) (stating, "It is true that equitable tolling is available in INA cases, as there is a 'presumption, read into every federal statute of limitation, that filing deadlines are subject to equitable tolling [and that] the same rebuttable presumption of equitable tolling . . . applies in suits against private defendants and . . . in suits against the United States'", but concluding that the April 1, 1990 (asylum application deadline to qualify under the Nicaraguan Adjustment and Central American Relief Act, Title II of Pub. L. 105-100 (PDF), 111 Stat. 2160 (November 19, 1997)) is a statute of repose that cannot be subject to equitable tolling). See *Mohawk Power Corp. v. Federal Power Commission*, 379 F.2d 153, 160 (D.C. Cir. 1967) ("Conceptions of equity are not a special province of the courts but may properly be invoked by administrative agencies seeking to achieve 'the necessities of control in an increasingly complex society without sacrifice of fundamental principles of fairness and justice.'").

[^ 83] These analytical steps amplify guidance concerning denial notices, and do not replace them.

[^ 84] See 8 CFR 103.3(a). In some cases, the officer may not be able to fully reveal negative discretionary factors if they are classified. Additionally, an exception may be made for denial letters issued to applicants

for admissions as a refugee under the U.S. Refugee Admissions Program, which contain only summary reasons for denials and are not required to contain detailed analysis of the basis for negative decisions.

[^ 85] See 8 CFR 103.3(a). In some cases, the officer may not be able to fully reveal negative discretionary factors if they are classified. Additionally, an exception may be made for denial letters issued to applicants for admissions as a refugee under the U.S. Refugee Admissions Program, which contain only summary reasons for denials and are not required to contain detailed analysis of the basis for negative decisions.

## Chapter 9 - Rendering a Decision

### A. Approvals

If the requestor properly filed the benefit request and the officer determines that the requestor meets all eligibility requirements, then the officer may approve the request. Upon approval, the officer updates all relevant electronic systems to reflect the approval.

### B. Denials[1]

If, after evaluating all evidence submitted (including in response to a Request for Evidence (RFE) or Notice of Intent to Deny (NOID), if applicable), the officer determines the requestor is ineligible for the benefit sought, the officer denies the benefit request.[2] Upon denial of a request, the officer updates all relevant electronic systems and issues a written decision informing the requestor of the reason(s) for denial.[3]

If the denial notice is returned as undeliverable, USCIS verifies the mailing address and places the notice, including the original mailing envelope, in the appropriate file as evidence of service of the decision.[4]

Written decisions should use plain language that the requestor can understand. When applicable, the decision includes guidance on the procedures for filing appeals and motions, including instructions for where to find the appropriate forms.[5]

#### 1. Denials Based on Lack of Legal Basis

Generally, if a benefit request does not have a legal basis for approval, and the officer determines there is no possibility additional evidence could establish a legal basis for approval, the officer should issue a denial without first issuing an RFE or NOID.

This includes any filing in which the benefit requestor has no legal basis for the benefit sought or submits a request for an inactive or terminated program. For example, this includes family-based petitions filed for family members based on claimed relationships under categories not provided by statute (such as a grandparent filing a petition for a grandchild).

#### 2. Abandonment Denials[6]

CAR-000036

[^ 30] The analysis of the marriage should be the same as the analysis conducted when determining whether to remove conditions to permanent residence under INA 216.

[^ 31] See INA 204(l)(1).

[^ 32] See INA 204(l)(1).

[^ 33] See Section B, Effect on Adjustment Application, Subsection 1, Admissibility and Waivers [7 USCIS-PM A.9(B)(1)].

## Chapter 10 - Legal Analysis and Use of Discretion

### A. Burden of Proof and Standard of Proof

In matters involving immigration benefits, the applicant always has the burden of proving that he or she is eligible to receive the immigration benefit sought.[1]

The standard of proof applied in adjustment of status proceedings should not be confused with the burden of proof.[2] The standard of proof relates to the persuasiveness of the evidence necessary to meet the eligibility requirements for a particular benefit. If the applicant is unable to prove his or her eligibility for the immigration benefit by a preponderance of the evidence, the officer may request additional evidence or deny the application.[3]

In the adjustment of status context, the standard of proof is generally a preponderance of the evidence, proving a claimed fact is more likely than not to be true.[4] However, in cases in which admissibility is required, if the officer determines that the applicant may be inadmissible, the applicant must demonstrate that he or she is clearly and beyond doubt entitled to be admitted and is not inadmissible.[5]

Certain adjustment of status provisions are non-discretionary. That is, if the applicant satisfies all statutory and regulatory eligibility requirements, USCIS must approve the application without considering whether the applicant warrants a favorable exercise of discretion. The following table is a non-exhaustive list of non-discretionary adjustment provisions.

| Non-Discretionary Adjustment of Status Provisions |
| --- |
| Nicaraguan Adjustment and Central American Relief Act of 1997 (NACARA)[6] |
| Refugee adjustment[7] |
| Haitian Refugee Immigration Fairness Act of 1998 (HRIFA)[8] |
| Liberian Refugee Immigration Fairness (LRIF)[9] |

### B. Adjustment of Status Applications Involving Discretion

CAR-000037

Most adjustment of status applicants may only be granted lawful permanent resident (LPR) status in the discretion of USCIS.[10] That is, even if the applicant meets all of the other statutory and regulatory requirements, USCIS only approves the application if the applicant demonstrates that he or she warrants a favorable exercise of discretion. The following table is a non-exhaustive list of discretionary adjustment case types.

| Adjustment of Status Provisions Involving Discretion |
| --- |
| Family-based, employment-based, and diversity visa adjustment |
| Special immigrant-based adjustment (EB-4) |
| Trafficking victim-based adjustment[11] |
| Crime victim-based adjustment[12] |
| Asylee adjustment[13] |
| Cuban Adjustment Act[14] |
| Former Soviet Union, Indochinese, or Iranian parolees (Lautenberg parolees) |
| Diplomats or high-ranking officials unable to return home (Section 13 of the Act of September 11, 1957)[15] |

**1. Determining Whether Favorable Exercise of Discretion is Warranted**

The favorable exercise of discretion and the approval of a discretionary adjustment of status application is a matter of administrative grace, which means that the application is worthy of favorable consideration.[16]

An alien who meets the other eligibility requirements contained in the law is not automatically entitled to adjustment of status. The alien still has the burden of proving that he or she warrants a favorable exercise of discretion.[17] To determine whether adjustment is warranted, an alien should supply information that is relevant and material.[18]

An officer must first determine whether the alien otherwise meets the statutory and regulatory eligibility requirements. For example, in adjudicating an application for adjustment of status under INA 245(a), the officer first determines if the alien is barred from applying for adjustment, is eligible to receive an immigrant visa, is admissible to the United States, and if a visa number (if required) is immediately available. Even where an immigration violation does not result in a bar to adjustment, an officer may still consider the violation as a negative factor in the exercise of discretion.

If the officer finds that the alien otherwise meets the eligibility requirements, the officer then determines whether the application should be approved as a matter of discretion. Given the significant privileges, rights, and responsibilities granted to LPRs, an officer must consider and weigh all relevant evidence in the record, taking into account the totality of the circumstances to determine whether the alien is suitable for permanent residence and approval of an alien's adjustment of status application is in the best interest of the United States.[19]

If the officer finds that the alien's positive factors outweigh the negative factors such that the alien's adjustment is warranted and in the interest of the United States, the officer generally may exercise favorable discretion and approve the application.[20] If the officer finds that the alien's negative factors outweigh the positive factors, such that a favorable exercise of discretion is not warranted in the alien's case, the officer must deny the application.[21]

With certain exceptions, USCIS considers relevant country-specific facts and circumstances, such as insufficient vetting and screening information that limit USCIS' ability to assess the risks aliens from certain countries pose to the United States, as a significant negative factor in its discretionary analysis.[22]

USCIS also considers circumstances where an alien has endorsed, promoted, supported, or otherwise espoused the views of an anti-American or terrorist organization or group, including those who support or promote antisemitic terrorism, antisemitic terrorist organizations, and antisemitic ideologies, to be an overwhelmingly negative factor in any applicable case involving USCIS discretionary analysis. Accordingly, USCIS enforces all relevant immigration laws to the maximum degree, including the use of discretion, to deny the benefit request involving such cases.[23]

[Redaction - Start]

Officers should review the guidance in Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8], which addresses, in particular, discretionary analysis involving:

- Relevant country-specific facts and circumstances such as those outlined in Presidential Proclamation 10949, Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats, 90 FR 24497 (June 4, 2025), which fully or partially restricted the entry or admission of aliens from Afghanistan, Burma, Burundi, Chad, Republic of Congo, Cuba, Equatorial Guinea, Eritrea, Haiti, Iran, Laos, Libya, Sierra Leone, Somalia, Sudan, Togo, Turkmenistan, Venezuela, and Yemen, under the President's INA 212(f) authority; and
- An alien who has endorsed, promoted, supported, or otherwise espoused the views of an anti-American or terrorist organization or group (including in social media content by, or involving an alien). This includes organizations who support or promote anti-American ideologies and activities, as defined at INA 313. This also includes organizations who support or promote antisemitic terrorism, antisemitic terrorist organizations, and antisemitic ideologies. While engaging in this conduct at any time is an overwhelmingly negative discretionary factor in the exercise of discretion, the officer assigns particular focus to aliens who engaged in on-campus antisemitic activities that occurred on or after October 7, 2023.

[Redaction - End]

## 2. Issues and Factors to Consider in the Totality of the Circumstances

The following table provides a non-exhaustive list of factors or factual circumstances that officers generally should consider in exercising discretion with respect to an application for adjustment of status to that of LPR.

Non-Exhaustive List of Issues and Factors to Consider Related to the Exercise of Discretion in Adjustment Applications

| Issue | Positive Factors | Negative Factors |
|---|---|---|
| Eligibility Requirements | • Meeting the eligibility requirements for adjustment of status.[24] | • Not meeting the eligibility requirements may still be considered as part of a discretionary analysis.[25] |
| Family and Community Ties | • Family ties to the United States and the closeness of the underlying relationships.[26]<br>• Hardship to the applicant or close relatives if the adjustment application is denied.[27]<br>• Length of lawful residence in the United States, status held and conduct during that residence, particularly if the applicant began his or her residency at a young age.[28] | • Absence of close family, community, and residence ties.[29] |
| Immigration Status and History | • Compliance with immigration laws and the conditions of any immigration status held.<br>• Approved humanitarian-based immigrant or nonimmigrant petition, waiver of inadmissibility, or other form of relief and the underlying humanitarian, hardship, or other factors that resulted in the approval.[30] | • Violations of immigration laws and the conditions of any immigration status held.[31]<br>• Current or previous instances of fraud or false testimony in dealings with USCIS or any government agency.[32]<br>• Unexecuted exclusion, deportation, or removal orders.[33] |
| Business, Employment, and Skills | • Property, investment, or business ties in the United States.[34] | • History of unemployment or underemployment.[36] |

| Issue | Positive Factors | Negative Factors |
|---|---|---|
| | • Employment history, including type, length, and stability of the employment.[35]<br>• Education, specialized skills, and training obtained from an educational institution in the United States relevant to current or prospective employment and earning potential in the United States. | • Unauthorized employment in the United States.[37]<br>• Employment or income from illegal activity or sources, including, but not limited to, income gained illegally from drug sales, illegal gambling, prostitution, or alien smuggling.[38] |
| Community Standing and Moral Character | • Respect for law and order, and good moral character (in the United States and abroad) demonstrated by a lack of a criminal record and evidence of good standing in the community.<br>• Honorable service in the U.S. armed forces or other evidence of value and service to the community.[39]<br>• Compliance with tax laws.<br>• Current or past cooperation with law enforcement authorities.<br>• Demonstration of reformed or rehabilitated criminal conduct, where applicable.[40]<br>• Community service beyond any imposed by the courts. | • Moral depravity or criminal tendencies (in the United States and abroad) reflected by a single serious crime or an active or long criminal record, including the nature, seriousness, and recent occurrence of criminal violations.[41]<br>• Lack of reformation of character or rehabilitation.[42]<br>• Public safety or national security concerns.[43]<br>• Failure to meet tax obligations.<br>• Failure to pay child support.<br>• Failure to comply with any applicable civil court orders. |
| Other | • Absence of significant undesirable or negative factors and other indicators of good moral character in the United States and abroad.[44] | • Other indicators adversely reflecting the applicant's character and undesirability as an LPR of this country.[45] |

## 3. Proper Use of Discretion Relative to Adjustment of Status

CAR-000041

The exercise of discretion does not mean the decision can be arbitrary, inconsistent, or dependent on intangible or imagined circumstances. At the same time, the exercise of discretion does not involve a calculation or bright line test that is outcome determinative.[46]

The officer should review the entire record and give appropriate weight to the negative and positive factors relative to the privileges, rights, and responsibilities of LPR status. Once the officer has weighed each factor, the officer should consider all of the factors cumulatively to determine whether the positive factors outweigh the negative ones. If the officer determines that the positive factors outweigh the negative factors, the officer may find that the applicant warrants a favorable exercise of discretion. As negative factors grow more serious though, a favorable exercise of discretion may not be warranted without additional offsetting favorable factors, which in some cases may have to involve the existence of unusual or outstanding equities.[47]

Officers should discuss discretionary decisions that involve complex or unusual facts with their supervisors, as needed, particularly those involving criminality or national security issues, regardless of whether the outcome is favorable or unfavorable to the applicant.[48] As appropriate, supervisors may raise issues and consult USCIS counsel.

## C. Summary of Adjudication Involving Discretion

The following tables provide a general guideline for how eligibility requirements and discretion play a role in the decision on an adjustment application.[49]

Summary of Adjudication Involving Discretion

| Has Applicant Otherwise Met Eligibility Requirements? | Does Applicant Warrant a Favorable Exercise of Discretion? | Decision |
|---|---|---|
| Yes | Yes, the positive factors outweigh the negative factors. | **Approve** the application. Eligibility requirements are met, including that a favorable exercise of discretion is warranted. |
| Yes | No, the negative factors outweigh the positive factors. | **Deny** the application. Eligibility requirements are otherwise met but a favorable exercise of discretion is not warranted.<br><br>The officer should explain the reasons why USCIS is not exercising discretion in the applicant's favor. The officer should clearly set forth the positive and negative factors considered and why the negative factors outweigh the positive factors. |

| Has Applicant Otherwise Met Eligibility Requirements? | Does Applicant Warrant a Favorable Exercise of Discretion? | Decision |
|---|---|---|
| No | No, even if the positive factors outweigh the negative factors. | **Deny** the application. Eligibility requirements are not met. <br><br> The officer should explain the reasons why the applicant has not met the eligibility requirements. Even if the positive factors outweigh the negative factors, discretion cannot be used to approve an application if the applicant does not meet the other statutory or regulatory requirements. |
| No | No, the negative factors outweigh the positive factors. | **Deny** the application. Eligibility requirements are not met and a favorable exercise of discretion is not warranted. <br><br> It is generally preferable to describe both the statutory and discretionary reasons for the denial, but an officer is not required to discuss the discretionary grounds where the other statutory or regulatory that are the basis for the denial grounds are clear. <br><br> If the determination on other statutory or regulatory eligibility requirements might be overturned (for example, where there is an unsettled area of law), an officer should also explain the discretionary basis for denying the case. (Officers may consult with USCIS counsel for additional guidance in a specific case.) <br><br> The officer should explain the reasons why USCIS is not exercising discretion in favor of the applicant. The officer should clearly describe the positive and negative factors considered and why the negative factors outweigh the positive factors. |

CAR-000043

**Footnotes**

[^ 1] See INA 291. See *Matter of Arthur (PDF)*, 16 I&N Dec. 558 (BIA 1978). See *Matter of Rivero-Diaz (PDF)*, 12 I&N Dec. 475 (BIA 1967).

[^ 2] The person who bears the burden of proof must submit evidence to satisfy the applicable standard of proof.

[^ 3] See 8 CFR 103.2(b)(8)(ii). See 8 CFR 103.2(b)(8)(iii).

[^ 4] See *Matter of Chawathe (PDF)*, 25 I&N Dec. 369, 375 (AAO 2010).

[^ 5] See *Matter of Bett (PDF)*, 26 I&N Dec. 437, 440 (BIA 2014).

[^ 6] See Title II of Pub. L. 105-100 (PDF), 111 Stat. 2160, 2193 (November 19, 1997).

[^ 7] See INA 209(a)(2).

[^ 8] See Division A, Section 902 of Pub. L. 105-277 (PDF), 112 Stat. 2681, 2681-538 (October 21, 1998).

[^ 9] See Section 7611 of the National Defense Authorization Act for Fiscal Year 2020, Pub. L. 116-92 (PDF), 113 Stat. 1198, 2309 (December 20, 2019).

[^ 10] The exercise of discretion in individual cases is described as a balancing of negative factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations present on his or her behalf to determine whether relief appears in the best interest of this country. See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 584 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 300 (BIA 1996). For general guidance on discretion, see Volume 1, General Policies and Procedures, Part E, Adjudication, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8]. See INA 245(a).

[^ 11] See INA 245(l). See 8 CFR 245.23(e)(3).

[^ 12] See INA 245(m). See 8 CFR 245.24(d)(10)-(11).

[^ 13] See INA 209(b).

[^ 14] See Pub. L. 89-732 (PDF) (November 2, 1966).

[^ 15] See Pub. L. 85-316 (PDF) (September 11, 1957).

[^ 16] See *Von Pervieux v. INS*, 572 F.2d 114, 118 (3rd Cir. 1978). See *Ameeriar v. INS*, 438 F.2d 1028, 1030 (3rd Cir. 1971). See *Matter of Marques (PDF)*, 16 I&N Dec. 314 (BIA 1977).

[^ 17] See *Matter of Arai (PDF)*, 13 I&N Dec. 494 (BIA 1970). See *Matter of Ortiz-Prieto (PDF)*, 11 I&N Dec. 317 (BIA 1965).

[^ 18] See *Matter of Marques (PDF)*, 16 I&N Dec. 314 (BIA 1977). See *Matter of Mariani (PDF)*, 11 I&N Dec. 210 (BIA 1965). See *Matter of De Lucia (PDF)*, 11 I&N Dec. 565 (BIA 1966). See *Matter of Francois (PDF)*, 10 I&N Dec. 168 (BIA 1963). See *Matter of Pires Da Silva (PDF)*, 10 I&N Dec. 191 (BIA 1963).

[^ 19] See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 300 (BIA 1996). For general guidance on discretion, see Volume 1, General Policies and Procedures, Part E, Adjudication, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8].

[^ 20] See *Matter of Arai (PDF)*, 13 I&N Dec. 494 (BIA 1970). See *Matter of Lam (PDF)*, 16 I&N Dec. 432 (BIA 1978).

[^ 21] Before making a final decision, the officer may ask the alien directly why he or she warrants a favorable exercise of discretion. The officer documents the response, or lack thereof, in the record. See Volume 1, General Policies and Procedures, Part E, Adjudication, Chapter 8, Discretionary Analysis, Section D, Documenting Discretionary Determinations [1 USCIS-PM E.8(D)]. See Volume 7, Part A, Adjustment of Status Policies and Procedures, Chapter 11, Decision Procedures [7 USCIS-PM A.11].

[^ 22] For more information, see Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8].

[^ 23] See Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8]. For a list of factors that should be considered in the discretionary analysis, see Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis, Section C, Adjudicating Discretionary Benefits, Subsection 2, Identifying Discretionary Factors [1 USCIS-PM E.8(C)(2)].

[^ 24] In the process of determining whether the applicant has otherwise met the eligibility requirements for adjustment of status, the officer might find that certain facts related to eligibility may be relevant to a discretionary decision. See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996) (In the context of waivers of inadmissibility requiring a showing of extreme hardship: ". . . those found eligible for relief under section 212(h)(1)(B) will by definition have already established extreme hardship to qualified family members, which would be a factor favorable to the alien in exercising discretion.").

[^ 25] In cases where USCIS has determined that the applicant has not met the statutory or regulatory requirements for adjustment of status, officers may still add a discretionary analysis to a denial. See Volume 1, General Policies and Procedures, Part E, Adjudication, Chapter 8, Discretionary Analysis, Section C, Adjudicating Discretionary Benefits [1 USCIS-PM E.8(C)].

[^ 26] See *Matter of Arai (PDF)*, 13 I&N Dec. 494, 496 (BIA 1970). See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 584 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 301-302 (BIA 1996) (". . . if the

alien has relatives in the United States, the quality of their relationship must be considered in determining the weight to be awarded this equity.")

[^ 27] See *Matter of Arai (PDF)*, 13 I&N Dec. 494, 496 (BIA 1970). See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 585 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996).

[^ 28] See *Matter of Arai (PDF)*, 13 I&N Dec. 494, 496 (BIA 1970). See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 584-85 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996). Residence must be lawful to be considered a positive factor. See *Matter of Lee (PDF)*, 17 I&N Dec. 275, 278 (Comm. 1978).

[^ 29] Based on the totality of the circumstances, the absence of family, community, and residence ties, by itself, may not warrant an unfavorable exercise of discretion, but officers consider the lack of sufficient equities to offset other negative factors when making discretionary decisions that are in the best interest of the United States. See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 587 (BIA 1978).

[^ 30] See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996).

[^ 31] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 584 (BIA 1978). See *Matter of Lee (PDF)*, 17 I&N Dec. 275, 278 (Comm. 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996). However, the Board of Immigration Appeals (BIA) found that a record of immigration violations standing alone does not conclusively support a finding of lack of good moral character. Further, how recent the violation was can only be considered when there is a finding of a poor moral character based on moral turpitude in the conduct and attitude of a person which evinces a callous conscience. In such circumstances, there must be a measurable reformation of character over a period of time in order to properly assess an applicant's ability to assimilate into society. In all other instances, when the cause for deportation has been removed and the person now appears eligible for issuance of a visa, the time factor should not be considered. See *Matter of Lee (PDF)*, 17 I&N Dec. 275 (Comm. 1978).

[^ 32] Fraud or false testimony may be considered as a matter of discretion regardless of materiality.

[^ 33] In cases where a removal order does not impact eligibility or jurisdiction over adjustment of status, for example, where a removal order has been issued to an "arriving alien" but not executed, USCIS generally does not exercise favorable discretion. The USCIS officer may consult with the local U.S. Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) office concerning the merits and equities of the case and whether the removal order might be withdrawn. If ICE withdraws or rescinds the removal order or obtains a withdrawal or rescission of the removal order from the Executive Office for Immigration Review (EOIR), USCIS adjudicates the case as appropriate. If the removal order is not withdrawn or rescinded, the removal order should be considered a significant adverse factor and any denial of adjustment may include the grounds cited in the removal order.

CAR-000046

[^ 34] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 584-85 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Moralez* (PDF), 21 I&N Dec. 296, 301 (BIA 1996).

[^ 35] See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996).

[^ 36] In *Matter of Marin (PDF)*, 16 I&N Dec. 581, 585 (BIA 1978), the BIA considered that a history of stable employment is a positive factor used to determine whether discretion should be favorably exercised. Conversely, officers should consider a history of long unemployment or underemployment, absent any disabilities or age in relation to employability, as a factor to determine whether or not approving the adjustment of status application is in the best interest of the United States.

[^ 37] Even if an exemption applies to an applicant who would otherwise be barred from adjustment of status, the officer may consider unauthorized employment in the totality of the circumstances.

[^ 38] This includes employment that is illegal under federal law even when state laws have decriminalized such conduct, including employment in the marijuana industry. Illegal industries under federal law include, but are not limited to, possession, manufacture or production, or distribution or dispensing of marijuana. See 21 U.S.C. 841(a) ("unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."). See 21 U.S.C. 844 (simple possession). See 21 U.S.C. 802(15) (defining manufacture) and 8 U.S.C. 802(22) (defining production).

[^ 39] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 585 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996).

[^ 40] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 585 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 195 (BIA 1990). See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996). However, reformation is not an absolute prerequisite to a favorable exercise of discretion. Rather, the discretionary analysis must be conducted on a case-by-case basis, with rehabilitation a factor to be considered in the exercise of discretion. See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 196 (BIA 1990) (considering rehabilitation a significant factor in view of the nature and extent of the respondent's criminal history, which spanned 10 years).

[^ 41] The officer should not go behind the record of conviction to reassess an alien's ultimate guilt or innocence, but rather inquire into the circumstances surrounding the commission of the crime in order to determine whether a favorable exercise of discretion is warranted. See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 197 (BIA 1990).

[^ 42] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 585 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Edwards (PDF)*, 20 I&N Dec. 191, 196 (BIA 1990). See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996).

[^ 43] See Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Deportable Aliens, PM-602-0187, issued February 28, 2025.

[^ 44] See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996).

[^ 45] See *Matter of Marin (PDF)*, 16 I&N Dec. 581, 584 (BIA 1978). See *Matter of Buscemi (PDF)*, 19 I&N Dec. 628, 633 (BIA 1988). See *Matter of Mendez-Moralez (PDF)*, 21 I&N Dec. 296, 301 (BIA 1996).

[^ 46] For a full discussion on weighing discretionary factors, see Volume 1, General Policies and Procedures, Part E, Adjudication, Chapter 8, Discretionary Analysis, Section C, Adjudicating Discretionary Benefits, Subsection 3, Weighing Factors [1 USCIS-PM E.8(C)(3)].

[^ 47] See *Matter of Arai (PDF)*, 17 I&N Dec. 494, 496 (BIA 1970). See *Matter of Patel (PDF)*, 17 I&N Dec. 597, 601 (BIA 1980). For example, USCIS generally does not favorably exercise discretion in certain cases involving violent or dangerous crimes except in extraordinary circumstances. Another example relates to applicants seeking adjustment based on T or U nonimmigrant status: Depending on the nature of the adverse factors, applicants may be required to clearly demonstrate that denial of adjustment would result in exceptional and extremely unusual hardship. Even if the applicant makes such a showing, however, USCIS may still find favorable exercise of discretion is not warranted in certain cases. See 8 CFR 245.23(e)(3). See 8 CFR 245.24(d)(11).

[^ 48] For more information, see Volume 1, General Policies and Procedures, Part E, Adjudication, Chapter 8, Discretionary Analysis, Section C, Adjudicating Discretionary Benefits, Subsection 4, Supervisory Review [1 USCIS-PM E.8(C)(4)].

[^ 49] For a full discussion on writing discretionary decisions, see Volume 1, General Policies and Procedures, Part E, Adjudication, Chapter 8, Discretionary Analysis, Section D, Documenting Discretionary Determinations [1 USCIS-PM E.8(D)].

# Chapter 11 - Decision Procedures

## A. Approvals

If the adjustment application is properly filed, the applicant meets all eligibility requirements, a visa number is immediately available, and the applicant is admissible to the United States, then an officer may approve the application. [Redaction - Start] Immediately prior to approval, an officer should re-run the TECS checks to confirm that no criminal issues have arisen since the last check and that the applicant remains eligible for adjustment. [Redaction - End]

### 1. Effective Date of Permanent Residence

For the majority of adjustment cases, the effective date of permanent residence is the date the adjustment application is approved. Certain sections of law, however, allow for the date of admission to roll back to an earlier date.

[^ 7] See *Matter of J-F-D- (PDF),* 10 I&N Dec. 694 (Reg. Comm. 1963). See *Matter of Martinez-Torres (PDF),* 10 I&N Dec. 776 (Reg. Comm. 1964).

[^ 8] See 8 CFR 103.2(b).

## Chapter 5 - Discretion

If the applicant meets all other statutory and regulatory requirements of the waiver, the officer must determine whether to approve the waiver as a matter of discretion.[1] Meeting the other statutory and regulatory requirements alone does not entitle the applicant to relief.[2]

The discretionary determination is the final step in the adjudication of a waiver application. The applicant bears the burden of proving that he or she merits a favorable exercise of discretion.[3]

### A. Discretionary Factors

The officer must weigh the social and humanitarian considerations against the adverse factors present in the alien's case.[4] The approval of a waiver as a matter of discretion depends on whether the favorable factors in the alien's case outweigh the unfavorable ones.[5]

With certain exceptions, USCIS considers relevant country-specific facts and circumstances, such as insufficient vetting and screening information that limit USCIS' ability to assess the risks aliens from certain countries pose to the United States, as a significant negative factor in its discretionary analysis.[6]

USCIS also considers circumstances where an alien has endorsed, promoted, supported, or otherwise espoused the views of an anti-American or terrorist organization or group, including those who support or promote antisemitic terrorism, antisemitic terrorist organizations, and antisemitic ideologies, to be an overwhelmingly negative factor in any applicable case involving USCIS discretionary analysis. Accordingly, USCIS enforces all relevant immigration laws to the maximum degree, including the use of discretion, to deny the benefit request involving such cases.[7]

The following table provides some of the factors relevant to the waiver adjudication.

Non-Exhaustive List of Factors that May Be Relevant in the Discretionary Analysis

| Category | Favorable Factors | Unfavorable Factors |
|---|---|---|
| **Waiver Eligibility** | • Meeting certain other statutory requirements of the waiver, including a finding of extreme hardship to a qualifying family member, if applicable.[8] | Not applicable – Not meeting the statutory requirements of the waiver results in a waiver denial. A discretionary analysis is not necessary. |

| Category | Favorable Factors | Unfavorable Factors |
|---|---|---|
| | • Eligibility for waiver of other inadmissibility grounds. | |
| **Family and Community Ties** | • Family ties to the United States and the closeness of the underlying relationships.<br>• Hardship to the applicant or to non-qualifying lawful permanent residents (LPRs) or U.S. citizen relatives or employers.<br>• Length of lawful residence in the United States and status held during that residence, particularly where the applicant began residency at a young age.<br>• Significant health concerns that affect the qualifying relative.<br>• Difficulties the qualifying relative would be likely to face if the qualifying relative moves abroad with the applicant due to country conditions, inability to adapt, restrictions on residence, or other factors that may be claimed.<br>• Honorable service in the U.S. armed forces or other evidence of value and service to the community.<br>• Property or business ties in the United States. | • Absence of community ties. |
| **Criminal History, Moral Character (or both)** | • Respect for law and order, and good moral character, which may be evidenced by affidavits from family, friends, and responsible community representatives.<br>• Reformation of character and rehabilitation. | • Moral depravity or criminal tendencies reflected by an ongoing or continuing criminal record, particularly the nature, scope, seriousness, and recent occurrence of criminal activity.<br>• Repeated or serious violations of immigration laws, which evidence a |

CAR-000050

| Category | Favorable Factors | Unfavorable Factors |
|---|---|---|
| | • Community service beyond any imposed by the courts.<br>• Considerable passage of time since deportation or removal. | disregard for U.S. law.<br>• Lack of reformation of character or rehabilitation.<br>• Previous instances of fraud or false testimony in dealings with USCIS or any government agency.<br>• Marriage to a U.S. citizen or LPR for the primary purpose of circumventing immigration laws.<br>• Nature and underlying circumstances of the inadmissibility ground at issue, and the seriousness of the violation.<br>• Public safety or national security concerns |
| Other | • Absence of significant undesirable or negative factors. | • Other indicators of an applicant's bad character and undesirability as a permanent resident of this country. |

[Redaction - Start]

Officers should review the guidance in Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8], which addresses, in particular, discretionary analysis in circumstances involving:

- Relevant country-specific facts and circumstances such as those outlined in Presidential Proclamation 10949, Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats, 90 FR 24497 (June 4, 2025), which fully or partially restricted the entry or admission of aliens from Afghanistan, Burma, Burundi, Chad, Republic of Congo, Cuba, Equatorial Guinea, Eritrea, Haiti, Iran, Laos, Libya, Sierra Leone, Somalia, Sudan, Togo, Turkmenistan, Venezuela, and Yemen, under the President's INA 212(f) authority; and

- An alien who has endorsed, promoted, supported, or otherwise espoused the views of an anti-American or terrorist organization or group (including in social media content by, or involving an alien). This includes organizations who support or promote anti-American ideologies and activities, as defined at INA 313. This also includes organizations who support or promote antisemitic terrorism, antisemitic terrorist organizations, and antisemitic ideologies. USCIS considers such factors to be an overwhelmingly negative factor for the USCIS discretionary analysis, including in requests for adjustment of status, change of status, and reinstatement of F-1 nonimmigrant status. While engaging in this conduct at any time is an overwhelmingly negative discretionary factor in the exercise of

CAR-000051

discretion, the officer assigns particular focus to aliens who engaged in on-campus antisemitic activities that occurred on or after October 7, 2023.

[Redaction - End]

## B. Discretionary Determination

When making a discretionary determination, the officer should review the entire record and give the appropriate weight to each adverse and favorable factor. Once the officer has weighed each factor, the officer should consider all of the factors cumulatively to determine whether the favorable factors outweigh the unfavorable ones. If the officer determines that the positive factors outweigh the negative factors, then the applicant merits a favorable exercise of discretion.

*Example*

A lengthy and stable marriage is generally a favorable factor in the discretionary analysis. On the other hand, the weight given to any possible hardship to the spouse that may occur upon
separation may be diminished if the parties married after the commencement of removal proceedings with knowledge of an impending removal.[9]

*Example*

In general, when reviewing an applicant's employment history, an officer may consider the type, length, and stability of the employment.[10]

*Example*

In general, when reviewing an applicant's history of physical presence in the United States, the officer may favorably consider residence of long duration in this country, as well as residence in the United States while the applicant was of young age.[11]

*Example*

When looking at the applicant's presence in the United States, the officer should evaluate the nature of the presence. For example, a period of residency during which the applicant was imprisoned may diminish the significance of that period of residency.[12]

## C. Cases Involving Violent or Dangerous Crimes

If an alien is inadmissible on criminal grounds involving a violent or dangerous crime, an officer may not exercise favorable discretion unless the applicant has established, in addition to the other statutory and regulatory requirements of the waiver that:

- The case involves extraordinary circumstances; or

CAR-000052

- The denial would result in exceptional and extremely unusual hardship.[13]

Extraordinary circumstances involve considerations such as national security or foreign policy interests. Exceptional and extremely unusual hardship is substantially beyond the ordinary hardship that would be expected as a result of denial of admission, but it does not need to be so severe as to be considered unconscionable.[14] Depending on the gravity of the underlying criminal offense, a showing of extraordinary circumstances may still be insufficient to warrant a favorable exercise of discretion.[15]

## Footnotes

[^ 1] If the applicant does not meet another statutory requirement of the waiver, USCIS denies the waiver and a discretionary analysis is not necessary. However, an officer may still include a discretionary analysis if the applicant's conduct is so egregious that a discretionary denial would be warranted even if the applicant had met the other statutory and regulatory requirements. Adding a discretionary analysis to a denial is also useful if an appellate body on review disagrees with the officer's conclusion that the applicant failed to meet the statutory requisites for the waiver. For more information on exercising discretion generally, see Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8].

[^ 2] See *Reyes-Cornejo v. Holder,* 734 F.3d 636 (7th Cir. 2013). See *Matter of Cervantes-Gonzalez (PDF),* 22 I&N Dec. 560 (BIA 1999). See *Matter of Mendez-Moralez (PDF),* 21 I&N Dec. 296 (BIA 1996).

[^ 3] See *Matter of De Lucia (PDF),* 11 I&N Dec. 565 (BIA 1966). See *Matter of T-S-Y-,* 7 I&N Dec. 582 (BIA 1957).

[^ 4] See *Matter of Mendez-Moralez (PDF),* 21 I&N Dec. 296 (BIA 1996). Discretionary factors may also include emergencies and other unforeseen circumstances. See Volume 1, General Policies and Procedures, Part H, Emergencies or Unforeseen Circumstances, Chapter 2, Emergencies or Unforeseen Circumstances-Related Flexibilities [1 USCIS-PM H.2].

[^ 5] See *Matter of Mendez-Moralez (PDF),* 21 I&N Dec. 296 (BIA 1996) (relating to a criminal waiver under INA 212(h)(1)(B)). See *Matter of Marin (PDF),* 16 I&N Dec. 581 (BIA 1978) (relating to an INA 212(c) waiver). See *Matter of Tijam,* 22 I&N Dec. 408 (BIA 1998) (relating to a fraud or misrepresentation finding (INA 212(a)(6)(C)(i)) and the discretionary waiver under former INA 241(a)(1)(H) [renumbered as INA 237(a)(1)(H) by IIRIRA]).

[^ 6] For more information, see Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8].

[^ 7] See Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8]. For a list of factors that should be considered in the discretionary analysis, see Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis, Section C, Adjudicating Discretionary Benefits, Subsection 2, Identifying Discretionary Factors [1 USCIS-PM E.8(C)(2)].

CAR-000053

[^ 8] In particular, if a finding of extreme hardship is a statutory eligibility requirement, the finding of extreme hardship permits, but does not require, a favorable exercise of discretion. Once extreme hardship is found, extreme hardship becomes a factor that weighs in favor of granting relief as a matter of discretion.

[^ 9] See *Matter of Mendez-Moralez (PDF),* 21 I&N Dec. 296 (BIA 1996). See *Ghassan v. INS,* 972 F.2d 631 (5th Cir. 1992).

[^ 10] See *Matter of Mendez-Moralez (PDF),* 21 I&N Dec. 296 (BIA 1996).

[^ 11] See *Diaz-Resendez v. INS,* 960 F.2d 493 (5th Cir. 1992).

[^ 12] See *Douglas v. INS,* 28 F.3d 241 (2nd Cir. 1994).

[^ 13] See INA 212(h). See 8 CFR 212.7(d). See *Matter of Jean (PDF),* 23 I&N Dec. 373 (A.G. 2002) (relating to a waiver of inadmissibility granted in connection with INA 209(c), refugee or asylee adjustment of status).

[^ 14] See *Matter of Monreal,* 23 I&N Dec. 56 (BIA 2001).

[^ 15] See 8 CFR 212.7(d).

# Chapter 6 - Validity of an Approved Waiver

## A. Extent of Waiver Validity

In general, an approved waiver is only valid for the grounds of inadmissibility specified in the application. Furthermore, a waiver is only valid for those crimes, events, incidents, or conditions specified in the waiver application. If an alien is later found inadmissible for a separate crime, event, incident or condition not already included in the approved waiver application, the alien is required to file another waiver application.

## B. Length of Waiver Validity

A waiver's validity depends on the underlying immigration benefit connected to the approved waiver.

## 1. Certain Nonimmigrants[1]

An inadmissible applicant seeking to enter the United States as a nonimmigrant generally needs to obtain advance permission to enter the United States as a nonimmigrant.[2] Advance permission to enter as a nonimmigrant[3] despite inadmissibility is referred to as a nonimmigrant waiver. Customs and Border Protection (CBP) generally adjudicates this waiver, which is temporary if approved.[4] This temporary permission does not ordinarily carry over to other benefit categories, such as other nonimmigrant categories, immigrant categories, visas, or adjustment of status.

## 2. Temporary Protected Status Holders[5]

CAR-000054

[^ 89] See 8 CFR 274a.12(c)(22).

[^ 90] See Title XI of Pub. L. 106-553 (PDF) (December 21, 2000). See 8 CFR 274a.12(c)(24).

[^ 91] See 8 CFR 274a.12(c)(25).

[^ 92] See 8 CFR 274a.12(c)(26).

[^ 93] See INA 204(a)(1)(K). See INA 204(a)(1)(D)(i)(II). See INA 204(a)(1)(D)(i)(IV). See Title IV of the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322 (PDF), 108 Stat. 1796, 1902 (September 13, 1994) as amended by Title V of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386 (PDF), 114 Stat. 1464, 1518 (October 28, 2000) and Title VIII of the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. 109-162 (PDF), 119 Stat. 2960, 3053 (January 5, 2006) (providing self-petitioners eligibility for employment authorization).

[^ 94] See 8 CFR 274a.12(c)(34). See 8 CFR 212.19(h)(3).

[^ 95] See 8 CFR 274a.12(c)(35).

[^ 96] See 8 CFR 274a.12(c)(36).

# Chapter 3 - Documentation and Evidence [Reserved]

# Chapter 4 - Adjudication

## A. General

Once USCIS accepts the Application for Employment Authorization (Form I-765), USCIS reviews the application for completeness and submission of the required initial evidence.[1] In reviewing the Form I-765, USCIS ensures that the fee was paid, a fee waiver was granted, or a fee exemption applies. USCIS also reviews the application to determine the applicant's identity, current immigration status, and employment authorization eligibility category.

If an alien fails to specify the employment authorization eligibility category on the application, USCIS reviews the file to determine the proper category. If USCIS is unable to determine the category, USCIS may issue a Request for Evidence (RFE) to provide the applicant the opportunity to specify the proper category.

If the alien is eligible for employment authorization, which may include, if applicable, meriting a favorable exercise of discretion USCIS approves the application and issues an Employment Authorization Document (EAD) on Form I-766.

With certain exceptions, USCIS considers relevant country-specific facts and circumstances, such as insufficient vetting and screening information that limit USCIS' ability to assess the risks aliens from certain countries pose to the United States, as a significant negative factor in its discretionary analysis.[2]

[Redaction - Start]

Officers should consult with their supervisory chains of command before issuing a discretionary denial where country-specific factors would warrant a denial but the case falls under an excepted category.

[Redaction - End]

In applicable cases, USCIS also considers circumstances where an alien has endorsed, promoted, supported, or otherwise espoused the views of an anti-American or terrorist organization or group, including those who support or promote antisemitic terrorism, antisemitic terrorist organizations, and antisemitic ideologies, to be an overwhelmingly negative factor in any applicable case involving USCIS discretionary analysis. Accordingly, USCIS enforces all relevant immigration laws to the maximum degree, including the use of discretion, to deny the benefit request involving such cases.[3]

[Redaction - Start]

While engaging in conduct endorsing, promoting, supporting, or otherwise espousing the views of an anti-American or terrorist organization or group is at any time an overwhelmingly negative discretionary factor in the exercise of discretion, the officer should assign particular focus to aliens who engaged in on-campus antisemitic activities that occurred on or after October 7, 2023.

This includes, in particular, aliens who file the following benefit requests:

Application for Employment Authorization (Form I-765) for the following categories:

- (c)(3)(A), F-1 student, pre-completion Optional Practical Training
- (c)(3)(B), F-1 student, post-completion Optional Practical Training
- (c)(3)(C), F-1 student, 24-month extension for STEM students
- (c)(6), M-1 student, Practical Training
- (c)(26), Spouse of an H-1B nonimmigrant

[Redaction - End]

## B. Determining Identity and Eligibility

There are two elements common to all eligibility categories that USCIS must consider when adjudicating Form I-765: identity and eligibility verification. Additionally, applications filed under 8 CFR 274a.12(c), with limited exceptions, are considered in the exercise of discretion.[4]

### 1. Identity Verification

To grant employment authorization, and issue an EAD, or both, USCIS must verify the applicant's identity. USCIS may therefore require an applicant to appear at a USCIS Application Support Center to provide biometrics.[5]

## 2. Eligibility Verification

USCIS must verify that the applicant meets the requirements of one of the categories eligible for employment authorization, an EAD, or both and has submitted evidence establishing eligibility.[6] The specific type of evidence varies by eligibility category. In general, supporting evidence to establish eligibility includes, but is not limited to:

- Visa(s) issued to applicant;
- Arrival-Departure Record (Form I-94);[7]
- Documents to establish a qualifying relationship; and
- Documents that establish a qualifying pending or approved application, such as a Notice of Action (Form I-797).

Generally, USCIS issues written notices in the form of an RFE or Notice of Intent to Deny (NOID) to request missing initial[8] or additional evidence.[9]

## C. Decision

### 1. Approval

Once USCIS determines the applicant has established identity and eligibility for employment authorization including, if applicable, warranting a favorable exercise of discretion, USCIS approves Form I-765 and orders production of the EAD.[10]

The approval of Form I-765 does not grant the applicant an immigration status; it simply provides authorization to work and accompanying evidence of such authorization, or evidence of authorization to work where an alien is already authorized to work by virtue of the applicant's immigration status or circumstance.

*Validity Period*

Employment authorization and EAD validity periods are generally determined based on the eligibility category that is granted. USCIS determines validity periods as established by regulations, policy, or Federal Register Notices. When requests for employment authorization, an EAD, or both are based upon an underlying period of admission or status, the validity period generally coincides with that authorized period of admission or status. When USCIS calculates the validity dates based on a set number of years, USCIS issues the EAD with the length of time allowed, minus 1 day.

The below charts illustrate the maximum validity period that may be granted for requests for initial employment authorization, EAD, or both and requests to renew employment authorization, EAD, or both. For employment authorization incident to status, the validity period is assigned to the document issued evidencing an alien's authorization to work in the United States and does not limit the period of employment authorization while the alien maintains status.[11]

Employment Authorization Incident to Status

| Category 8 CFR 274a.12 | Purpose | Maximum Initial Validity Period | Maximum Renewal Validity Period |
|---|---|---|---|
| (a)(2) | Lawful temporary resident | 43 months[12] | 2 years |
| (a)(3) | Admitted as a refugee[13] | 5 years | 5 years |
| (a)(4) | Paroled as a refugee[14] | Duration of parole, not to exceed 5 years | Duration of parole, not to exceed 5 years |
| (a)(5) | Granted asylum[15] | 5 years | 5 years |
| (a)(6) | K-1 fiance(e) or K-2 child | Period of authorized stay[16] | Remainder of 90-day period of admission |
| (a)(7) | Parent and child of N-8 or N-9 nonimmigrant[17] | 1 year | 1 year |
| (a)(8) | Citizen of Micronesia, the Marshall Islands or Palau | 5 years | 5 years |
| (a)(9) | K-3 spouse or K-4 dependent | 2 years[18] | 2 years[19] |
| (a)(10) | Granted withholding of deportation or removal | 5 years | 5 years |
| (a)(11) | Deferred extended voluntary departure or deferred enforced departure | Variable[20] | Variable[21] |
| (a)(12) | Temporary protected status (TPS) [22] | Variable, length of TPS designation, or any TPS renewals and TPS extensions | Variable, length of TPS designation, or any TPS renewals and TPS extensions |
| (a)(13) | Granted voluntary departure under Family Unity Program of IMMACT 90[23] | 2 years[24] | 2 years[25] |
| (a)(14) | Legal Immigration Family Equity (LIFE) Act Family Unity grantee[26] | Variable, not to exceed 2 years[27] | Variable, not to exceed 2 years[28] |
| (a)(15) | V-1, V-2, or V-3 nonimmigrant | Duration of V-1, V-2, and V-3 status, not to exceed 2 years | Duration of V-1, V-2, and V-3 status, not to exceed 2 years[29] |

| Category<br><br>8 CFR 274a.12 | Purpose | Maximum Initial Validity Period | Maximum Renewal Validity Period |
|---|---|---|---|
| (a)(16) | Victims of human trafficking (T-1 nonimmigrant) | Duration of T-1 nonimmigrant status[30] | Duration of T-1 nonimmigrant status[31] |
| (a)(17) | Spouse of E1, E-2, and E-3 | Duration of E-1, E-2, and E-3 status | Duration of E-1, E-2, and E-3 status |
| (a)(18) | Spouse of L-1 nonimmigrant | Variable, up to end date of L-2 status, not to exceed principal's L-1 status | Variable, up to end date of L-2 status, not to exceed principal's L-1 status |
| (a)(19) | Victims of qualifying criminal activity (U-1 nonimmigrant) | Duration of U-1 nonimmigrant status[32] | Duration of U-1 nonimmigrant status[33] |
| (a)(20) | Family members of victims of qualifying criminal activity (U-2, U-3, U-4, or U-5 nonimmigrant) [34] | Duration of U-2, U-3, U-4, or U-5 nonimmigrant status | Duration of U-2, U-3, U-4, or U-5 nonimmigrant status[35] |

Aliens Who Must Apply for Employment Authorization

| Category<br><br>8 CFR 274a.12 | Purpose | Maximum Initial Validity Period | Maximum Renewal Validity Period |
|---|---|---|---|
| (c)(1) | Dependent of a diplomat or foreign government official (A-1 or A-2)[36] | 3 years or tour of duty end date on Form I-566, whichever is less | 3 years or tour of duty end date on Form I-566, whichever is less |
| (c)(2) | Dependent of Taipei Economic and Cultural Representative Office (TECRO) (E-1)[37] | 3 years or end of principal E-1 status, whichever is less | 3 years or end of principal E-1 status, whichever is less |
| (c)(3)(A) | Student pre-completion Optional Practical Training (OPT) | Variable, 12 months, date recommended by Designated School Official (DSO), or date | Renewal not authorized |

| Category 8 CFR 274a.12 | Purpose | Maximum Initial Validity Period | Maximum Renewal Validity Period |
|---|---|---|---|
| | | course of study ends, whichever is earlier | |
| (c)(3)(B) | Student post-completion OPT | Variable, up to 12 months | Renewal not authorized |
| (c)(3)(C) | Student STEM OPT | 24 months[38] | Renewal not authorized |
| (c)(3)(ii) | Off-campus employment – qualifying international organization | Variable, up to 12 months[39] | Variable, up to 12 months |
| (c)(3)(iii) | Off-campus employment – student severe economic hardship under 8 CFR 214.2(f)(9)(ii)(C) | Variable, up to 1 year[40] | Variable, up to 1 year[41] |
| (c)(3)(iii) | Off-campus employment – student severe economic hardship under 8 CFR 214.2(f)(9)(ii)(A) (special student relief) | Variable[42] | Variable[43] |
| (c)(4) | Spouse or unmarried child, son or daughter of an employee of an international organization (G-1, G-3, or G-4)[44] | 3 years or tour of duty end date on Form I-566, whichever is less | 3 years or tour of duty end date on Form I-566, whichever is less |
| (c)(5) | Dependent spouse or minor child of a J-1 exchange visitor | 2 years or end of principal J-1 status, whichever is less | 2 years or end of principal J-1 status, whichever is less |
| (c)(6) | Nonacademic or vocational student (M-1) post-completion OPT | 6 months, not to exceed recommendation on Certificate of Eligibility for Nonimmigrant Student Status (Form I-20) or 1 month for each 4 months of completed full-time studies, whichever is earlier[45] | Renewal not authorized |

CAR-000060

| Category 8 CFR 274a.12 | Purpose | Maximum Initial Validity Period | Maximum Renewal Validity Period |
|---|---|---|---|
| (c)(7) | Dependent of NATO-1 through NATO-7 employee | 3 years, not to exceed tour of duty listed on Form I-566 | 3 years, not to exceed tour of duty listed on Form I-566 |
| (c)(8) | Pending application for asylum or withholding of deportation or removal | 5 years | 5 years |
| (c)(9) | Pending application for adjustment of status under INA 245[46] | 5 years | 5 years |
| (c)(10) | Pending application for suspension of deportation, cancellation of removal, or relief under the Nicaraguan Adjustment and Central American Relief Act (NACARA)[47] | 5 years | 5 years |
| (c)(11) | Parole[48] | Variable, to end date of the parole period | Variable, to end date of the parole period |
| (c)(12) | Spouse of E-2 CNMI investor[49] | End of principal E-2 CNMI Investor status not to exceed 2 years | End of principal E-2 CNMI Investor status not to exceed 2 years |
| (c)(14) | Deferred action (non-Deferred Action for Childhood Arrivals (DACA)) | Variable, end date of deferred action period[50] | Variable, end date of deferred action period[51] |
| (c)(16) | Applicant for creation of record of lawful admission | 1 year | 1 year |
| (c)(17)(i) | Domestic employee of nonimmigrant employer[52] | 1 year or validity of B-1, whichever is less | 1 year or validity of B-1, whichever is less |
| (c)(17)(ii) | Domestic employee of U.S. citizen abroad[53] | 1 year or validity of B-1, whichever is less | 1 year or validity of B-1, whichever is |

CAR-000061

| Category 8 CFR 274a.12 | Purpose | Maximum Initial Validity Period | Maximum Renewal Validity Period |
|---|---|---|---|
| | | | less |
| (c)(17) (iii) | B-1 foreign airline employee[54] | 1 year or validity of B-1, whichever is less | 1 year or validity of B-1, whichever is less |
| (c)(18) | Final order of removal with order of supervision[55] | 1 year | 1 year |
| (c)(19) | Application for TPS pending[56] | Variable, length of TPS designation, or any TPS renewals and TPS extensions | Variable, length of TPS designation, or any TPS renewals and TPS extensions |
| (c)(20) | Pending application under INA 210 | 1 year | 1 year |
| (c)(21) | S nonimmigrant law enforcement witness or informant[57] | Variable, up to 3 years[58] | Variable, up to 3 years |
| (c)(22) | Pending application under INA 245A | 1 year | 1 year |
| (c)(24) | Pending application for LIFE Act Legalization[59] | 1 year | 1 year |
| (c)(25) | Family members of victims of human trafficking (T-2, T-3, T-4, T-5, or T-6 nonimmigrant) | Duration of T-2, T-3, T-4, T-5, or T-6 nonimmigrant status | Duration of T-2, T-3, T-4, T-5, or T-6 nonimmigrant status |
| (c)(26) | H-4 nonimmigrant spouse of a H-1B nonimmigrant | Variable, up to end date of H-4 status, not to exceed principal's H-1B status | Variable, up to end date of H-4 status, not to exceed principal's H-1B status |
| (c)(27) | Abused spouse of A nonimmigrant[60] | 2 years | 2 years |

Historical Version

CAR-000062

| Category<br><br>8 CFR<br>274a.12 | Purpose | Maximum Initial Validity Period | Maximum Renewal Validity Period |
|---|---|---|---|
| (c)(28) | Abused spouse of E nonimmigrant[61] | 2 years | 2 years |
| (c)(29) | Abused spouse of G nonimmigrant[62] | 2 years | 2 years |
| (c)(30) | Abused spouse of H nonimmigrant[63] | 2 years | 2 years |
| (c)(31) | Violence Against Women Act (VAWA) self-petitioner | 2 years | 2 years |
| (c)(33) | Granted DACA[64] | Variable, 2 years or end date of deferred action period, whichever is earlier | Variable, 2 years or end date of deferred action period, whichever is earlier |
| (c)(34) | Spouse of entrepreneur parolee under 8 CFR 212.19(h)(3) | Variable, up to end date of parole | Variable, up to end date of parole |
| (c)(35) | Form I-140 beneficiary with compelling circumstances | 1 year | 1 year |
| (c)(36) | Dependents of (c)(35) | 1 year | 1 year |
| (c)(37) | CNMI long-term residents | 5 years | 5 years |

USCIS considers various factors when establishing validity periods for EADs, including the validity period of the underlying immigration status or circumstance, anticipated adjudication timeframes for pending immigration benefits, and the periodic need to reevaluate eligibility for employment authorization, EAD, or both, and to ensure that such aliens continue to pose no known security risk to the United States.

The validity date of the initial EAD begins on the date of approval. Generally, the same applies to Form I-765 renewal requests.

*Validity Period for Replacements*

USCIS approves a replacement EAD for the same validity dates and category as the original EAD.

*Validity Period for Age Outs*

For certain categories[65] where the applicant is a dependent child and will reach the age of 21 during the established validity period, USCIS provides an EAD expiration date that is the day before the applicant's 21st birthday.

## 2. Denial

If USCIS cannot verify the applicant's identity, the applicant fails to establish eligibility (including, if applicable, failing to warrant a favorable exercise of discretion) or abandons the application, USCIS denies the application. When USCIS denies Form I-765, USCIS notifies the applicant in writing of the decision and the reasons for denial.[66] There is no appeal from a denial of a Form I-765. However, an applicant may submit a motion to reopen or reconsider.[67] Furthermore, denial of Form I-765 does not preclude the applicant from filing again if eligibility for employment authorization can be established.

[Redaction - Start]

*Security Checks*

An officer must ensure that all security checks are completed, valid, and resolved, in accordance with the USCIS National Background Identity and Security Checks Operating Procedures (NaBISCOP) Handbook prior to completing adjudication.

[Redaction - End]

## D. Early Filing

If an applicant files for a renewal EAD more than 180 days before the current EAD expires and USCIS approves such request, USCIS generally does not backdate or postdate the renewal EAD in relation to the current EAD's validity period.

## E. Automatic Termination and Revocation on Notice

Employment authorization automatically terminates if the applicant is no longer eligible due to certain circumstances outlined in the regulations.[68] No further action or notice by USCIS is necessary in the case of automatic termination.[69]

A notice of intent to revoke (NOIR)[70] is necessary upon a determination that:

- The statement of material facts contained in the application was not true and correct;
- The applicant violated the terms and conditions of the approved application;
- The basis for the EAD is no longer valid;[71] or
- USCIS approved the application in error.

A response with countervailing evidence may be submitted within 15 days from the date of service of the NOIR.

## F. Withdrawing Application

An applicant may withdraw Form I-765 at any time before USCIS makes a final decision on the application. [72] Any request to withdraw must be made in writing to the USCIS office listed on the receipt notice for Form I-765. The applicant or an authorized representative with a properly filed Notice of Entry of Appearance as Attorney or Accredited Representative (Form G-28) must sign the withdrawal request.

## G. Motion to Reopen or Reconsider

An applicant may submit a motion to reopen or a motion to reconsider by filing a Notice of Appeal or Motion (Form I-290B) within 30 days of the denial (33 days if denial notice was mailed to the applicant). Motions to reopen or reconsider are typically adjudicated by the same office that adjudicated Form I-765. USCIS issues a written decision on a motion to reopen or reconsider.

An officer denies a motion if the applicant does not meet the motion requirements or has not submitted evidence to overcome the denial grounds. The written denial explains why the motion did not overcome the denial grounds.

An officer approves a motion and reopens the Form I-765 if the applicant meets the motion requirements and has submitted evidence to overcome all reasons for the original denial.[73]

If USCIS reopens the case, an officer may approve the Form I-765 or issue a new denial. In all cases where USCIS denies the application for reasons not contained in the original decision, USCIS first issues a NOID to provide the applicant with an opportunity to review and rebut the additional denial grounds.[74]

When USCIS reopens the case but ultimately denies the Form I-765, the 30-day period during which the applicant may file a new motion restarts.

## H. Effect of Motion or Appeal on Underlying Application or Petition

The applicant is eligible to apply for employment authorization in cases where the applicant's eligibility for employment authorization is based on an underlying application so long as that application remains pending. Generally, in cases where USCIS denies the underlying application, the applicant remains eligible for employment authorization if the applicant timely appeals or submits a motion to reopen the decision, and the appeal or motion remains pending. If USCIS grants a motion to reopen or an appeal on the underlying application, the applicant is eligible for employment authorization if all other requirements are met.

If an applicant appeals an unfavorable decision from an application for relief from removal from the immigration judge (IJ) to the Board of Immigration Appeals (BIA), the application for relief from removal is considered pending. If the BIA sustains the IJ's decision, however, the denial becomes administratively final, and the application may no longer serve as a basis for employment authorization.

# I. Automatic Extensions of Employment Authorization Documents

Aliens in certain employment eligibility categories who file Form I-765, to renew their EADs, may receive automatic extensions of their expiring EAD.[75]

## Footnotes

[^ 1] For a list of required initial evidence, see Instructions for Form I-765 and the Checklist of Required Initial Evidence for Form I-765 webpage.

[^ 2] For more information, see Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8].

[^ 3] See Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8]. For a list of factors that should be considered in the discretionary analysis, See Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis, Section C, Adjudicating Discretionary Benefits, Subsection 2, Identifying Discretionary Factors [1 USCIS-PM E.8(C)(2)].

[^ 4] See 8 CFR 274a.13(a)(1). See Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8]. For a list of factors that should be considered in the discretionary analysis, See Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis, Section C, Adjudicating Discretionary Benefits, Subsection 2, Identifying Discretionary Factors [1 USCIS-PM E.8(C)(2)].

[^ 5] See 8 CFR 103.2(b)(9). For further guidance on biometrics, see Volume 1, General Policies and Procedures, Part C, Biometrics Collection and Security Checks [1 USCIS-PM C].

[^ 6] See 8 CFR 103.2(b)(1).

[^ 7] CBP implemented an electronic, automated I-94 process whereby CBP issues an electronic Form I-94. See Arrival/Departure Forms: I-94 and I-94W webpage for more information.

[^ 8] See 8 CFR 103.2(b)(1).

[^ 9] For further guidance on evidence, see Volume 1, General Policies and Procedures, Part E, Adjudications, Chapter 6, Evidence [1 USCIS-PM E.6].

[^ 10] With limited exceptions, applications under 8 CFR 274a.12(c) are granted in the discretion of USCIS. See 8 CFR 274a.13(a)(1). In such cases, USCIS also determines whether the application should be granted in the exercise of discretion.

[^ 11] See 8 CFR 274a.12(a).

[^ 12] Initial EAD validity period starts the day of adjudication of Application for Status as a Temporary Resident Under Section 245A of the Immigration and Nationality Act (Form I-687).

[^ 13] See INA 207.

[^ 14] See INA 207.

[^ 15] See INA 208.

[^ 16] See INA 101(a)(15)(K)(i).

[^ 17] See INA 101(a)(27)(I).

[^ 18] Validity period for EADs within this category is to expiration date of Arrival-Departure Record (Form I-94) or to the end of Application to Extend/Change Nonimmigrant Status (Form I-539) validity period not to exceed 2 years.

[^ 19] Extension of stay is granted in 2-year intervals awaiting approval of Petition for Alien Relative (Form I-130).

[^ 20] Based on Presidential declaration.

[^ 21] Based on Presidential declaration.

[^ 22] See INA 244A(b).

[^ 23] Initial EAD is automatically issued upon approval of Application for Family Unity Benefits (Form I-817). Applicants filing under this category should only file Form I-765 if seeking a replacement EAD that was lost, stolen, mutilated, or destroyed, or that contain an error. For more information on how to request a replacement, see Volume 11, Travel and Identity Documents, Part A, Secure Identity Documents Policies and Procedures, Chapter 3, Reissuance of Secure Identity Documents [11 USCIS-PM A.3].

[^ 24] All Form I-817 validity period.

[^ 25] All Form I-817 validity period.

[^ 26] Initial and renewal EADs are automatically issued upon approval of Application for Family Unity Benefits (Form I-817). Applicants filing under this category should only file Form I-765 if seeking a replacement EAD that was lost, stolen, mutilated, or destroyed, or that contain an error. For more information on how to request a replacement, see Volume 11, Travel and Identity Documents, Part A, Secure Identity Documents Policies and Procedures, Chapter 3, Reissuance of Secure Identity Documents [11 USCIS-PM A.3].

[^ 27] See Section 1504 of the LIFE Act Amendments of 2000, Pub. L. 106-554 (PDF), 114 Stat. 2763, 2763A-325 (December 21, 2000). See 8 CFR 245a.34(c).

[^ 28] See Section 1504 of the LIFE Act Amendments of 2000, Pub. L. 106-554 (PDF), 114 Stat. 2763, 2763A-325 (December 21, 2000). See 8 CFR 245a.34(c).

[^ 29] If visa is extended.

[^ 30] Initial EAD is automatically issued upon approval of the Application for T Nonimmigrant Status (Form I-914). Applicants filing under this category should only file Form I-765 if seeking a replacement EAD that was lost, stolen, mutilated, or destroyed, or that contain an error. For more information on how to request a replacement, see Volume 11, Travel and Identity Documents, Part A, Secure Identity Documents Policies and Procedures, Chapter 3, Reissuance of Secure Identity Documents [11 USCIS-PM A.3].

[^ 31] Renewal EAD issuance is based on an approved Application to Extend/Change Nonimmigrant Status (Form I-539) extending T-1 nonimmigrant status.

[^ 32] If the alien is in the United States, the initial EAD is automatically issued upon approval of the Petition for U Nonimmigrant Status (Form I-918). Applicants filing under this category should only file Form I-765 if Form I-918 was approved while the applicant was residing outside of the United States, has been lawfully admitted to the United States as a U-1 nonimmigrant, and now seeks to obtain an EAD as evidence of employment authorization. U-1 nonimmigrants may also file Form I-765 if seeking a replacement EAD that was lost, stolen, mutilated, or destroyed, or that contain an error. For more information on how to request a replacement, see Volume 11, Travel and Identity Documents, Part A, Secure Identity Documents Policies and Procedures, Chapter 3, Reissuance of Secure Identity Documents [11 USCIS-PM A.3].

[^ 33] Renewal EAD issuance is based on an approved Application to Extend/Change Nonimmigrant Status (Form I-539) extending U nonimmigrant status.

[^ 34] Derivative U nonimmigrants are employment authorized incident to status, however an EAD is not automatically issued. If a derivative U nonimmigrant seeks to obtain an EAD as evidence of employment authorization, the derivative may file Form I-765.

[^ 35] Renewal EAD issuance is based on an approved Application to Extend/Change Nonimmigrant Status (Form I-539) extending U nonimmigrant status.

[^ 36] See 8 CFR 214.2(a)(2).

[^ 37] See 8 CFR 214.2(e).

[^ 38] No more than two lifetime OPT extensions may be authorized.

[^ 39] Validity period may not exceed program end date.

[^ 40] See 8 CFR 214.2(f)(9)(ii)(D). Employment authorization is not to exceed the recommendation from the designated school official (DSO) or the student's program end date. However, USCIS may grant special

student relief (SSR) applicants employment authorization for periods longer than 1 year, dependent on the validity period of the Federal Register notice.

[^ 41] See 8 CFR 214.2(f)(9)(ii)(D). Renewal of the employment authorization is not to exceed the recommendation from the DSO or the F-1 student's program end date.

[^ 42] By notice in the Federal Register, USCIS may grant SSR applicants employment authorization for the duration of the Federal Register notice, although this period of authorization is not to exceed the F-1 student's academic program end date. For more information on SSR, see Volume 2, Nonimmigrants, Part F, Students (F, M), Chapter 6, Employment, Section C, Severe Economic Hardship Due to Emergent Circumstances [2 USCIS-PM F.6(C)].

[^ 43] By notice in the Federal Register, USCIS may grant SSR applicants employment authorization for the duration of the Federal Register notice, not to exceed the F-1 student's academic program end date. For more information on SSR, see Volume 2, Nonimmigrants, Part F, Students (F, M), Chapter 6, Employment, Section C, Severe Economic Hardship Due to Emergent Circumstances [2 USCIS-PM F.6(C)].

[^ 44] See 8 CFR 214.2(g), and who presents an endorsement from an authorized representative from DOS.

[^ 45] The alien may be employed only in an occupation or vocation directly related to the alien's course of study as recommended by the endorsement of the designated school official on Form I-20.

[^ 46] Certain other types of adjustment applicants may also apply for employment authorization under the (c)(9) category, such as applicants seeking to adjust under the Cuban Adjustment Act, Pub. L. 89-732 (PDF) (November 2, 1966), as amended, and applicants seeking to adjust status under other public laws. For more information, see the Form I-765 instructions and USCIS.gov.

[^ 47] Includes two types of applicants who may be eligible for employment authorization: an applicant who filed an Application for Suspension of Deportation or Special Rule Cancellation of Removal (Pursuant to Section 203 of Public Law 105-100 (NACARA) (Form I-881) and the application remains pending with the asylum office or with Executive Office for Immigration Review (EOIR), and an applicant who filed an Application for Suspension of Deportation (Form EOIR-40), or Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents (Form EOIR-42B) directly with EOIR.

[^ 48] See INA 212(d)(5)(A). See 8 CFR 212.5. However, DHS has decided as a matter of policy to provide the benefit of employment authorization incident to parole akin to what is normally accorded to refugees (as well as a no-fee initial and replacement of an initial Employment Authorization Document) to certain Afghan parolees and certain Ukrainian parolees so that they receive similar treatment as refugees, which aligns with the spirit of legislation that states that certain Afghan parolees and certain Ukrainian parolees "shall be eligible for . . . other benefits available to refugees . . . ." See Section 2502(b) of the Extending Government Funding and Delivering Emergency Assistance Act, Pub. L. 117-43 (PDF), 135 Stat. 344, 377 (September 30, 2021), amended by Section 1501 of Division M of the Consolidated Appropriations Act of 2023, Pub. L. 117-328 (PDF), 136 Stat. 4459, 5189 (December 29, 2022), and Section 401(b) of the Additional Ukraine

Supplemental Appropriations Act, Pub. L. 117-128 (PDF), 136 Stat. 1211, 1218 (May 21, 2022). Consequently, individuals covered by these circumstances are employment authorized incident to parole. For more information on employment eligibility for aliens, see Chapter 2, Eligibility Requirements [10 USCIS-PM A.2].

[^ 49] CNMI refers to the Commonwealth of the Northern Mariana Islands. This category includes a spouse of a long-term investor in the CNMI other than an E-2 CNMI investor who obtained such status based on a foreign retiree investment certificate. See 8 CFR 214.2(e)(23).

[^ 50] Generally, the alien must establish an economic necessity for employment, see 8 CFR 274a.12(c)(14). However, principal petitioners for U nonimmigrant status and their qualifying family members living in the United States do not need to submit proof of economic necessity to receive a bona fide determination EAD under category (c)(14) as there is a presumption of economic necessity. See U Nonimmigrant Status Bona Fide Determination Process FAQs.

[^ 51] Generally, the alien must establish an economic necessity for employment, see 8 CFR 274a.12(c)(14). However, principal petitioners for U nonimmigrant status and their qualifying family members living in the United States do not need to submit proof of economic necessity to receive a bona fide determination EAD under category (c)(14) as there is a presumption of economic necessity. See U Nonimmigrant Status Bona Fide Determination Process FAQs.

[^ 52] Includes a nonimmigrant visitor for business (B-1) who is a personal or domestic employee of an alien admitted as a nonimmigrant. See 8 CFR 214.2(b), (e), (f), (h), (i), (j), (l), (m), (o), (p), (q), (r) or under INA 214(e).

[^ 53] Includes a B-1 nonimmigrant who is the domestic employee of a U.S. citizen who has a permanent foreign home or is stationed in a foreign country, and who is temporarily visiting the United States.

[^ 54] Includes a B-1 nonimmigrant who is an employee of a foreign airline engaged in international transport.

[^ 55] Includes an alien with a final order of deportation or removal, and who is released on an order of supervision. See INA 241(a)(3).

[^ 56] See INA 244.

[^ 57] Includes a principal nonimmigrant witness or informant in S classification and qualified dependent family members.

[^ 58] Evidentiary requirements and validity time frame is determined by law enforcement agency (LEA) need.

[^ 59] See Section 1104 of the LIFE Act Amendments, Pub. L. 106-554 (PDF), 114 Stat. 2763, 2763A-325 (December 21, 2000).

[^ 60] Initial and renewal requests for employment authorization under this category are adjudicated on Application for Employment Authorization for Abused Nonimmigrant Spouse (Form I-765V).

[^ 61] Initial and renewal requests for employment authorization under this category are adjudicated on Form I-765V.

[^ 62] Initial and renewal requests for employment authorization under this category are adjudicated on Form I-765V.

[^ 63] Initial and renewal requests for employment authorization under this category are adjudicated on Form I-765V.

[^ 64] This covers the eligibility category for employment authorization based on a grant of deferred action. See 8 CFR 274a.12(c)(14). The (c)(33) code is used to distinguish DACA from other forms of deferred action.

[^ 65] See 8 CFR 274a.12(c)(5) and 8 CFR 274a.12(c)(35).

[^ 66] See 8 CFR 103.3.

[^ 67] See Section G, Motion to Reopen or Reconsider [10 USCIS-PM A.4(G)]. See Notice of Appeal or Motion (Form I-290B). See 8 CFR 103.5.

[^ 68] See 8 CFR 274a.14.

[^ 69] See 8 CFR 274a.14(a)(2).

[^ 70] See 8 CFR 274a.14(b).

[^ 71] For example, for a Form I-765 filed on the basis of an Application to Register Permanent Residence or Adjust Status (Form I-485), and USCIS denied the Form I-485.

[^ 72] See 8 CFR 103.2(b)(6).

[^ 73] See 8 CFR 103.5.

[^ 74] See 8 CFR 103.2(b)(16). Generally, USCIS issues a statutory denial without prior issuance of a Request for Evidence (RFE) or a NOID on any application, petition, or request that does not have any basis upon which the applicant may be approved.

[^ 75] For more information on automatic EAD extension requirements, see 5.0 Automatic Extensions of Employment Authorization and/or Employment Authorization Documents (EADs) in Certain Circumstances in the USCIS Handbook for Employers M-274. For eligible automatic extension EAD categories, see the Automatic Employment Authorization (EAD) Extension webpage.

## Chapter 5 - Reserved



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Director*
Camp Springs, MD 20588-0009

November 27, 2025                                                          PA-2025-26

# Policy Alert

SUBJECT:    Impact of INA 212(f) on USCIS' Adjudication of Discretionary Benefits

**Purpose**

U.S. Citizenship and Immigration Services (USCIS) is issuing policy guidance in the USCIS Policy Manual addressing the President's recent exercise of his authority under section 212(f) of the Immigration and Nationality Act (INA) through Presidential Proclamation 10949, "Restricting the Entry of Foreign Nationals To Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats"[1] (PP 10949) and its impact on USCIS adjudications.

**Background**

INA 212(f) authorizes the President to, by proclamation, suspend the entry of all aliens or any class of aliens, or impose on the entry of aliens any restrictions he may deem appropriate. On June 4, 2025, the President issued PP 10949 to exercise his INA 212(f) authority and suspend the entry or admission of aliens from nineteen countries.[2] With certain exceptions,[3] PP 10949 applies to aliens who are outside of the United States on or after June 9, 2025 and who do not have a valid visa on or after June 9, 2025.

Effective immediately, USCIS will consider relevant country-specific facts and circumstances such as those outlined in PP 10949 as part of its adjudication of discretionary benefit requests. Discretionary benefit requests that USCIS adjudicates include, but are not limited to, certain adjustment of status applications, extension of nonimmigrant stay, and change of nonimmigrant status. USCIS is now updating its guidance to explain how INA 212(f) and PP 10949 impact USCIS' exercise of discretion.

This guidance, contained in Volume 1 of the Policy Manual, applies to requests pending or filed on or after the publication date. The guidance contained in the Policy Manual is controlling and supersedes any related prior guidance.

**Policy Highlights**

---

[1] See 90 FR 24497 (June 4, 2025).
[2] See 90 FR 24497 (June 4, 2025) (imposing a partial or full suspension of and limitation on entry on aliens from the following countries, based on a finding that such entry would be detrimental to the interests of the United States for country-specific reasons: Afghanistan, Burma, Burundi, Chad, Republic of Congo, Cuba, Equatorial Guinea, Eritrea, Haiti, Iran, Laos, Libya, Sierra Leone, Somalia, Sudan, Togo, Turkmenistan, Venezuela, and Yemen).
[3] The Proclamation also includes certain exceptions to the suspension of and limitation on entry (for example, lawful permanent residents and certain immigrant and nonimmigrant categories are excepted). See Section 4(b)-(d) of PP 10949, 90 FR 24497, 24503 (June 4, 2025).

www.uscis.gov

PA-2025-26: Impact of INA 212(f) on USCIS' Adjudication of Discretionary Benefits
Page: 2

- Provides that, with certain exceptions, USCIS considers any relevant country-specific factors such as those specified in PP 10949 as significant negative factors in the adjudication of discretionary benefit requests.

- Provides country-specific factors that include but are not limited to insufficient vetting and screening information that limits USCIS' ability to assess the risks posed by aliens from the countries identified in PP 10949.

**Summary of Changes**

Affected Section: Volume 1 > Part E > Chapter 8, Discretionary Analysis

- Revises table in Section A (Applicability).

- In Section C (Adjudicating Discretionary Benefits), revises Subsection 2 (Identifying Discretionary Factors) throughout.

Affected Section: Volume 7 > Part A > Chapter 10 > Section B, Adjustment of Status Applications Involving Discretion

- Revises fifth paragraph and adds new paragraph six in Subsection 1 (Determining Whether Favorable Exercise of Discretion is Warranted).

Affected Section: Volume 9 > Part A > Chapter 5 > Section A, Discretionary Factors

- Revises first paragraph and adds new second and third paragraphs.

Affected Section: Volume 10 > Part A > Chapter 4 > Section A, General

- Adds new fourth paragraph.

USCIS may also make other minor technical, stylistic, and conforming changes consistent with this update.

**Citation**

Volume 1: General Policies and Procedures, Part E, Adjudications, Chapter 8, Discretionary Analysis [1 USCIS-PM E.8].

Volume 7: Adjustment of Status, Part A, Adjustment of Status Policies and Procedures, Chapter 10, Legal Analysis and Use of Discretion [7 USCIS-PM A.10].

Volume 9: Waivers and Other Forms of Relief, Part A, Waiver Policies and Procedures, Chapter 5, Discretion [9 USCIS-PM A.5].

Volume 10: Employment Authorization, Part A, Employment Authorization Policies and Procedures, Chapter 4, Adjudication [10 USCIS-PM A.4].

CAR-000073