# Exhibit A

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| DORCAS INTERNATIONAL INSTITUTE OF RHODE ISLAND, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al., <br><br> *Defendants.* | Case No. 1:26-cv-00132-JJM-PAS |

**DECLARATION OF MILAGRO SIQUE IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

1.     I, Milagro Sique, make the following statement on behalf of Dorcas International Institute of Rhode Island ("Dorcas International"). I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. §1746.

2.     I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

## I.     Background and Qualifications

3.     I am the Chief Executive Officer of Dorcas International Institute of Rhode Island. I have dedicated myself to this organization for more than a decade. I joined Dorcas International in 2014 as a Site Director overseeing community partners, and subsequently served in positions of increasing responsibility as HR

1

Manager/Executive Assistant, HR Director, and Chief Operating Officer. In August 2025, I began serving as Dorcas International's Interim CEO, and I was formally appointed as CEO on January 1, 2026.

4.      In my capacity as CEO, I am responsible for the overall management and strategic direction of Dorcas International, including oversight of all programs and staff. I have direct knowledge of Dorcas International's operations, staffing, budget, and the impact of the Challenged Policies on our programs and the populations we serve.

## II.    Dorcas International Institute of Rhode Island

5.      Dorcas International Institute of Rhode Island is a 501(c)(3) non-profit organization headquartered in Providence, Rhode Island, that has been serving immigrants, refugees, and low-income Rhode Islanders for more than 100 years. Dorcas International was created in 2013 from the union of two established organizations: the International Institute of Rhode Island, founded in 1921, and the Dorcas Place Adult and Family Literacy Center, which had been serving low-income adults through literacy, collaboration, advocacy, and community involvement since 1981.

6.      Dorcas International's mission is to cultivate an inclusive community for immigrants and those seeking refuge by providing integrated services, fostering cross-cultural understanding, and nurturing strong partnerships. We meet our clients where they are by providing innovative wraparound services to help those seeking to overcome educational, cultural, economic, legal, and language barriers.

2

7.      Dorcas International has a total staff of approximately 73 persons and an annual budget of approximately $9.4 million, of which approximately 87 percent is allocated to program services. Dorcas International's core programs include citizenship and immigration legal services, adult education, refugee resettlement, employment services and workforce training, interpretation and translation services through its Pinpoint Translation Services division, a Walk-In Center providing case management and referrals, and a Clothing Collaborative that provides professional attire and basic necessities.

8.      Dorcas International's Citizenship & Immigration Services ("CIS") program is the largest of Dorcas International's programs by client volume, historically serving approximately 5,000 clients annually. The CIS program has a staff of approximately 17 employees, including three attorneys, three paralegals, five caseworkers, and six representatives accredited by the U.S. Department of Justice. Dorcas International is one of only four programs in Rhode Island that is recognized by the DOJ and has DOJ-accredited staff who can represent clients before USCIS.

9.      Dorcas International's CIS staff provide consultations to thousands of individuals annually and assist an average of more than 1,500 clients each year with applications and legal representation. The CIS program handles a wide array of immigration matters, including naturalization, permanent residence applications, family petitions, temporary protected status, deferred action, unlawful presence waivers, asylum applications, work authorization applications, deportation defense, and legal services for victims of crime. Dorcas International's attorneys represent

3

clients in removal proceedings before the Boston and Chelmsford Immigration Courts, and the team is trained in trauma-informed lawyering, particularly in juvenile immigration cases, and cases involving immigrant victims.

10.    In fiscal year 2025, Dorcas International's CIS program assisted 5,514 clients and filed 2,449 cases, including 572 naturalization applications, 627 employment authorization applications, 406 adjustments of status applications, 183 applications and petitions on behalf of victims of crime, 99 special immigrant juvenile cases, and 126 applications on behalf of Afghan evacuees resettled in Rhode Island.

11.    Dorcas International recently expanded its CIS team to assist with asylum and removal defense cases at reduced rates that would otherwise be unaffordable to low-income and indigent immigrants, and to provide free legal services to unaccompanied youth with pathways to citizenship.

12.    The CIS program also provides outreach to the community and local agencies throughout Rhode Island on basic immigration law, pathways to citizenship, changing immigration policies, and know your rights presentations.

13.    Dorcas International's Adult Education program enrolled 1,159 students in fiscal year 2025. The program achieved a 59.66 percent measurable skills gain, well above the state target of 40 percent. At program exit, 336 students retained employment, five students became U.S. citizens, eleven transitioned to post-secondary education, and two entered workforce development training. Dorcas International's Family Literacy Program integrates adult education, early childhood

4

learning, and parent engagement to strengthen the academic and economic success of entire families.

14.    Dorcas International's Employment Services and Job Training program worked alongside 1,029 individuals in fiscal year 2025, providing comprehensive employment preparation, training, and job placement services. Through this support, 457 clients successfully secured employment. Dorcas International's Clothing Collaborative provided 1,200 client visits and served 690 clients with professional attire suited to their industries.

15.    Dorcas International's Refugee Resettlement program resettled 249 individuals from 17 countries in fiscal year 2025, a 35 percent decrease from the prior year resulting from shifting federal policies. These 249 individuals came from Afghanistan, Burundi, Cambodia, Colombia, the Democratic Republic of the Congo, Eritrea, Guatemala, Honduras, Iraq, Nicaragua, the Republic of the Congo, Somalia, Sudan, Syria, Trinidad and Tobago, and Venezuela. Dorcas International also served 113 unaccompanied minors from 12 countries. All resettled individuals, including unaccompanied youth, received mental health screenings, and Dorcas International provided in-house mental health services to 180 individuals.

16.    Dorcas International's Walk-In Center serves as a lifeline for individuals and families navigating complex challenges. In fiscal year 2025, the Walk-In Center served 776 clients. Staff and volunteers logged 428 hours directly supporting clients, a 54 percent increase from the prior year. The Walk-In Center provides critical case management services, offering immediate support to those

5

seeking help with mental health resources, basic essentials, adult education opportunities, and guidance in accessing health care.

### III. Dorcas International's Client Population

17.     Dorcas International serves a diverse client population that includes refugees, asylees, immigrants, and low-income Rhode Islanders from countries around the world. A significant portion of Dorcas International's clients, approximately 20% in 2024 and 2025, are nationals of one or more of the 39 countries subject to the Challenged Policies. In particular, Dorcas International's Refugee Resettlement program resettled individuals from multiple Entry Ban countries in the most recent fiscal year, including Afghanistan, Burundi, the Democratic Republic of the Congo, Eritrea, the Republic of the Congo, Somalia, Sudan, Syria, and Venezuela.

### IV. The Challenged Policies and Their Harm to Dorcas International

18.     As discussed in detail below, the Challenged Policies recently adopted by USCIS directly interfere with Dorcas International's core programs and activities, have frustrated Dorcas International's mission, and have forced Dorcas International to divert its limited staff time and organizational resources away from the services it was established to provide. The four Challenged Policies are: (1) the Global Asylum Hold; (2) the Benefits Hold; (3) the Comprehensive Re-Review; and (4) the Country-Specific Factors Policy.

A.  Global Asylum Hold Policy

19.     The Global Asylum Hold directly interferes with Dorcas International's work, as representing clients in asylum proceedings is one of Dorcas International's

6

critical functions in its CIS program. Two of Dorcas International's CIS attorneys assist asylum seekers throughout the application process, prepare clients for interviews and hearings, and represent clients in proceedings before USCIS and immigration courts. Asylum proceedings are particularly challenging, and Dorcas International's lawyers have developed significant expertise in handling complex cases for clients fleeing persecution.

20.    The Global Asylum Hold has stalled Dorcas International's affirmative asylum function. USCIS has required its adjudicators to stop issuing final decisions on all pending asylum applications, regardless of the applicant's country of nationality or date of entry, directing that cases be processed only "up to final adjudication" without any approval, denial, or dismissal. This policy directly undermines Dorcas International's core mission of providing impactful immigration legal services to immigrants, including those seeking asylum.

21.    Dorcas International currently has 27 pending affirmative asylum applications that are now indefinitely frozen under this policy. Dorcas International's attorneys continue to invest time and resources preparing and monitoring ongoing cases, but the hold ensures that no case can reach a final decision. This creates an unsustainable and ever-growing backlog of pending cases that Dorcas International must continue to service at its low-cost fee structure, without any prospect of resolution. Of those pending affirmative asylum applications, Dorcas International currently has two affirmative applications pending for individuals from the Entry Ban countries.

7

B. Benefits Hold Policy

22.    The Benefits Hold also directly interferes with Dorcas International's core work. USCIS has placed a hold on all pending benefit requests for nationals of the 39 countries listed in the Entry Ban. Because Dorcas International's CIS program has historically served significant numbers of clients from these countries, the Benefits Hold affects a large share of the population Dorcas International was established to serve.

23.    Dorcas International currently has hundreds of pending immigration benefits applications involving nationals of the 39 Entry Ban countries whose applications are now subject to the indefinite hold: approximately 414 cases filed since January 1, 2024. These include applications for naturalization, adjustment of status, employment authorization, travel documents, family-based petitions, victim-based petitions, and other benefits. All of these applications are indefinitely stalled, with no indication from USCIS of when adjudications will resume.

24.    For example, Dorcas International has several Cuban clients who are eligible to adjust their status to lawful permanent resident status under the Cuban Adjustment Act. These clients have adjustment of status applications pending, and work authorization applications pending incident to those adjustment applications. They have been living and working legally in the United States, their parole-based work permits have expired, and, due to the Benefits Hold, their pending requests for renewal of their work permits cannot be adjudicated. At least three of these clients have already lost their jobs due to not having a valid work permit.

8

25. Dorcas International also has several Deferred Action for Childhood Arrivals (DACA) clients from Entry Ban countries whose work permit renewal applications are currently paused due to the Benefits Hold. They have lived in the U.S. since they were children, have held DACA status for up to 13 years, and have worked in the U.S. with the permits authorized under DACA. These clients currently face loss of work authorization and consequently, loss of employment because of the Benefits Hold.

26. Many of Dorcas International's clients have studied for and passed their civics and English reading and writing tests, and completed their naturalization interviews, only to have a decision on their applications and oath ceremony date scheduled paused indefinitely because of the Benefits Hold. One Haitian client, who became a lawful permanent resident through his spouse and has a family in the U.S., put a significant amount of time and energy into preparing for his naturalization interview. He participated in Dorcas International's citizenship preparation classes and excelled as a student; he passed his testing and completed his interview with flying colors, and the USCIS officer recommended his application for approval, yet he cannot be scheduled for an oath ceremony to obtain naturalization due to the Benefits Hold.

27. The Benefits Hold is creating a challenging situation for Dorcas International's CIS program. If Dorcas International continues to file applications for immigration benefits for nationals of the 39 Entry Ban countries, the program will accumulate an ever-increasing number of pending cases with no final adjudications.

9

Dorcas International is committed to servicing these clients at its low fee structure while maintaining an ever-larger pending caseload, straining Dorcas International's budget, staff capacity, and ability to take on new clients. CIS staff continue to receive phone calls from clients with already-filed applications checking on case status and asking when the pause will be lifted, and staff who must respond to those calls cannot perform their other core work.

28. The Benefits Hold causes concrete and severe harm to Dorcas International's clients. Clients with pending employment authorization applications face the expiration of their current work permits with no prospect of timely renewal, leading to job loss and financial hardship. Clients with pending family-based petitions cannot travel abroad without an interim travel document. Since the request for the travel document cannot be adjudicated, many people are facing prolonged separation from family members abroad. These harms directly undermine Dorcas International's ability to fulfill its mission of helping immigrants and refugees achieve self-sufficiency and stability.

29. The Benefits Hold has also significantly impaired Dorcas International's employment services program. Dorcas International placed 457 clients in jobs in fiscal year 2025. Approximately 100 of these clients depend on valid work authorization to obtain or maintain employment, as many of them are from Entry Ban countries. The Benefits Hold has undermined the effectiveness of Dorcas International's employment placement and job training programs for clients from

10

Entry Ban countries, because clients who cannot secure or renew work permits cannot be placed in or retain jobs.

30.     As a direct result of the Benefits Hold, Dorcas International's CIS staff, including one DOJ-accredited staff member who has worked with Dorcas International for 20 years, have shared with me that they do not have answers for clients concerning the new Challenged Policies. For the first time in my experience at Dorcas International, staff have expressed concern about whether they will be able to continue helping a subset of immigrants and refugees in a meaningful way.

C.  Comprehensive Re-Review Policy

31.     The Comprehensive Re-Review directly interferes with Dorcas International's core business activities. Dorcas International obtained citizenship, green cards, asylum, TPS and other immigration benefits on behalf of approximately 365 clients who entered the U.S. during the Biden Administration and are nationals of the 39 Entry Ban countries. These clients obtained their benefits through lawful processes, have built their lives in Rhode Island in reliance on those benefits, and have been working, raising families, paying taxes, and contributing to their communities.

32.     Under the Comprehensive Re-Review, USCIS has directed its personnel to re-open and review the approved benefit requests of nationals of the 39 Entry Ban countries who entered the United States on or after January 20, 2021. This means that even individuals whose applications were approved years ago, after rigorous

11

vetting and adjudication, now face the prospect of having their benefits revoked, terminated, or rescinded.

33.    The Comprehensive Re-Review has caused enormous fear, anxiety, and re-traumatization among Dorcas International's client population. Many of Dorcas International's clients are refugees, evacuees, and asylum seekers who have already survived war, persecution, and the trauma of displacement. The prospect of being subjected to re-examination and re-interviews about their citizenship, lawful permanent resident status, refugee or asylum status, though their applications or petitions were approved years ago, inflicts additional psychological harm on individuals who have already endured extraordinary suffering.

34.    The Comprehensive Re-Review Policy will directly impact Dorcas' ability to provide core legal services. It will require Dorcas' CIS staff to re-open closed client files and dedicate significant staff resources to assist clients through the re-review process.

35.    The Comprehensive Re-Review Policy also undermines Dorcas International's fundamental mission of fostering self-sufficiency. Dorcas International's programs, including adult education, employment services, and refugee resettlement, are designed to help clients build stable, productive lives. The threat that previously granted benefits could be revoked, rescinded, or terminated at any time makes it significantly harder for Dorcas International to help clients plan for their futures, pursue employment, and invest in education. Clients who fear they

12

may lose their legal status are less likely to make the long-term commitments to jobs, housing, and education that Dorcas International's programs are designed to support.

D.  Country-Specific Factors Policy

36.    Finally, the Country-Specific Factors Policy further directly harms Dorcas International and interferes with its core work. Under the Country-Specific Factors Policy, USCIS adjudicators are required to treat "country-specific risk factors" identified in the Entry Ban as "significant negative factors" in the adjudication of all discretionary benefit requests, including adjustment of status applications, extensions of nonimmigrant stay, and changes of nonimmigrant status. Because a significant portion of Dorcas International's CIS clients are nationals of countries subject to the Entry Ban, the Country-Specific Factors Policy erects a barrier to their ability to obtain discretionary immigration benefits.

37.    In fiscal year 2025 alone, Dorcas International filed more than 1,000 applications for discretionary benefits, including 627 employment authorization applications, 406 applications for adjustment of status, and 126 applications on behalf of Afghan evacuees, that would be subject to the country-of-origin negative factor imposed by the Country-Specific Factors Policy. For each of these applications involving a national of an Entry Ban country, USCIS adjudicators are now required to treat the applicant's country of origin as a significant negative factor, regardless of the individual's personal circumstances or merits.

38.    The Country-Specific Factors Policy is particularly harmful to Dorcas International's work with unaccompanied youth. In fiscal year 2025, Dorcas

13

International served 113 unaccompanied minors from 12 countries, many of which are subject to the Entry Ban, including Haiti, Venezuela, and Cuba. Dorcas International's attorneys are trained in trauma-informed lawyering and work to ensure that the legal process does not further harm these children. Under the Country-Specific Factors Policy, when these minors apply for Special Immigrant Juvenile Status or other discretionary relief, their country of birth, a circumstance entirely beyond their control, will be weighed against them as a significant negative factor.

39.    Critically, the Country-Specific Factors Policy would harm Dorcas International and its clients even if the Global Asylum Hold and the Benefits Hold are lifted. The Country-Specific Factors Policy creates a structural impediment: USCIS officers will be required to weigh clients' countries of origin against them in every discretionary adjudication, regardless of the individual applicant's circumstances, ties to the community, employment history, or any other factor that would ordinarily weigh in their favor.

40.    Dorcas International exists to help immigrants and refugees navigate the immigration system, obtain legal status, and achieve self-sufficiency. The Country-Specific Factors Policy will make each of these goals substantially harder to achieve for the population Dorcas International serves. By imposing a country-of-origin penalty on discretionary adjudications, the Country-Specific Factors Policy undermines Dorcas International's ability to guide clients toward successful

14

outcomes in the immigration process, an activity that lies at the heart of Dorcas International's organizational mission.

41.    The Country-Specific Factors Policy has also required Dorcas International to divert resources to educating clients about the new adjudicatory framework, managing their expectations about the likelihood of obtaining discretionary benefits, and counseling clients who are discouraged from applying for benefits to which they would otherwise be entitled. Dorcas International's CIS staff must now spend time explaining to clients that their country of origin will be weighed against them, a conversation that is deeply demoralizing for clients who have followed every rule and invested years in building their lives in the United States.

## V.    Cumulative Harm to Dorcas International's Staff and Operations

42.    Taken together, the four Challenged Policies have had a devastating cumulative impact on Dorcas International directly and on the communities we serve. The Policies collectively ensure that Dorcas International's clients from Entry Ban countries cannot obtain new immigration benefits (because of the Benefits Hold), cannot have their asylum applications adjudicated (because of the Global Asylum Hold), face the prospect of losing benefits they already have (because of the Comprehensive Re-Review), and—even if the holds are someday lifted—will face a presumptive barrier to receiving any discretionary benefit in the future (because of the Country-Specific Factors Policy).

15

43.    The Challenged Policies have not only harmed Dorcas International's clients and frustrated our mission to serve them, they have directly harmed Dorcas International's staff and impaired its organizational capacity.

44.    For the first time in my experience at Dorcas International, staff have shared with me that they are worried whether they will be able to continue helping a subset of immigrants and refugees in a meaningful way. The inability to obtain results for clients, despite investing significant time and expertise in their cases, has taken a serious toll on staff morale.

45.    Dorcas International's CIS program, which represents the single largest share of Dorcas International's client services and a critical component of its organizational identity, is finding it increasingly difficult to perform its core function for clients from Entry Ban countries and for clients who are otherwise affected by these Policies: obtaining favorable immigration outcomes for the individuals it serves.

46.    In addition to the CIS program, Dorcas International's Employment Services cannot effectively place clients in jobs when those clients cannot obtain or renew work authorization. Dorcas International's Adult Education program, which enrolled 1,159 students and helped 457 retain employment in the most recent fiscal year, is undermined when clients' legal status and ability to work are in jeopardy. Dorcas International's Refugee Resettlement program, which already experienced a 35 percent decrease in arrivals, faces the additional burden of supporting previously resettled clients whose status is now subject to re-review.

16

47.    These challenged USCIS policies have also required Dorcas International to revise its community education and outreach materials to account for the changed adjudicatory framework, diverting staff time from direct legal services.

48.    Dorcas International has served immigrants, refugees, and vulnerable Rhode Islanders for more than a century. Its organizational model is built on the premise that individuals who are in the United States and are eligible for relief and benefits will have access to a functioning immigration system through which they can obtain the legal status and work authorization they need to build stable, productive lives. The Challenged Policies have dismantled that premise for a significant portion of the population Dorcas International serves, undermining the very foundation on which Dorcas International's programs are built.

49.    The harms caused by the Challenged Policies come at a time when Dorcas International is already facing severe fiscal pressure. Federal funding cuts have reduced Dorcas International's budget by approximately $1.9 million, and its staff has been reduced from 105 to approximately 73 employees. The Challenged Policies compound these cuts by making it harder for Dorcas International to serve clients effectively with the reduced resources it has, increasing demand for services while simultaneously making those services less likely to produce results.

50.    These injuries to Dorcas International and the communities we serve would be substantially redressed by a favorable decision in this case. If the Court enjoins the Global Asylum Hold, USCIS would resume adjudicating asylum

17

applications, and Dorcas International's clients with pending asylum cases would be able to move forward in the process. If the Court enjoins the Benefits Hold, USCIS would resume adjudicating applications for work permits, green cards, and other benefits for nationals of Entry Ban countries, and Dorcas International's CIS program and employment services would be able to function effectively for these clients. If the Court enjoins the Comprehensive Re-Review, Dorcas International's clients who were previously granted immigration benefits would no longer face the threat of revocation, restoring the stability and certainty on which Dorcas International's programs depend. And if the Court enjoins the Country-Specific Factors Policy, Dorcas International's clients would no longer face a presumptive negative factor based solely on their countries of origin when applying for discretionary benefits.

51.     Without this Court's intervention, the Challenged Policies will continue to deprive Dorcas International's clients of the ability to achieve legal stability and self-sufficiency, and will continue to impede Dorcas International's ability to carry out its century-old mission of serving immigrants and refugees in Rhode Island.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2nd day of April, 2026.

_Milagro Sique_

Milagro Sique
Chief Executive Officer, Dorcas International Institute of Rhode Island

18