# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| DORCAS INTERNATIONAL INSTITUTE OF RHODE ISLAND, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,<br><br>*Defendants.* | Case No. 1:26-cv-00132-JJM-PAS |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR STAY PENDING APPEAL

## TABLE OF CONTENTS

Introduction ................................................................................................................ 1

Legal Standard ......................................................................................................... 4

Argument .................................................................................................................. 4

I.      The government is not likely to prevail on the merits. .................................... 4

      A.      The Court correctly concluded that 8 U.S.C. § 1252(a)(2)(B) does
           not bar jurisdiction. .................................................................................. 4

      B.      The Court correctly concluded that the Challenged Policies are
           reviewable under the APA. ..................................................................... 10

      C.      The Court correctly concluded that the Challenged Policies
           violate the APA. ...................................................................................... 15

      D.      The Court correctly vacated the Challenged Policies. ......................... 23

II.     The balance of the equities and the public interest counsel against a
      stay pending appeal. ...................................................................................... 25

      A.      The government is not irreparably injured by an order requiring
           it to follow the law. ................................................................................. 25

      B.      A stay pending appeal would result in serious harms to
           Plaintiffs and the public. ....................................................................... 30

Conclusion ............................................................................................................... 31

**INTRODUCTION**

Late last year, the United States Citizenship and Immigration Services (USCIS) unlawfully shut down the legal immigration system for people from thirty-nine countries. For over six months, noncitizens from these countries were barred from obtaining immigration benefits including citizenship, green cards, and work permits. Many lost their jobs. Others lost legal status. Some were separated from their families. This Court's order vacating the hold on adjudications and related policies provided meaningful relief to the affected immigrant communities. A stay pending appeal would needlessly prolong their suffering.

The government has not shown that it is entitled to a stay under the four-part test set forth in *Nken v. Holder*, 556 U.S. 418 (2009). First, the government has not demonstrated likelihood of success on the merits. The government mainly contends that jurisdiction is barred by 8 U.S.C. § 1252(a)(2)(B). But Supreme Court precedent teaches that the jurisdictional bars in the Immigration and Nationality Act (INA) should ordinarily not be read to foreclose judicial review of generally applicable immigration policies. *E.g.*, *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991); *see also Mullin v. Doe*, 609 U.S. __ , No. 25-1083, 2026 WL 1825840, at *8 (June 25, 2026) (explaining that *McNary* allowed judicial review of "broad claims about the procedures used in implementing" a statutory program). Applying that precedent, courts have consistently held that Section 1252(a)(2)(B) bars review only of denials of relief in individual cases. *E.g.*, *Doe v. Trump*, No. 1:25-cv-13946, 2026 WL 1170971 (D. Mass. Apr. 30, 2026). Although this Court explained at length why caselaw forecloses the government's jurisdictional arguments, the government offers no

1

response to the Court's reasoning. Nor does it offer any other persuasive reason to conclude that jurisdiction is wanting.

The government's motion also recycles other arguments from its summary judgment briefing. But there's nothing new. The Court has already considered the government's various arguments and concluded that the policies challenged here violate the Administrative Procedure Act (APA). That holding is correct. And nothing in the government's motion provides any reason to believe that holding is vulnerable to reversal on appeal.

The government also fails to show irreparable injury. It argues that the Court's vacatur order will force it to adjudicate benefits requests without sufficient time to properly screen and vet the applicants, but this is wrong three times over. First, an agency cannot claim irreparable injury merely because it is being required to follow the law. Second, the Court already considered the government's assertion that restricting access to immigration benefits is necessary to safeguard national security while new screening and vetting measures are implemented. It correctly rejected that view as foreclosed by the record. Third, the government has a wide variety of existing statutory tools that allow it to withhold, deny, or reconsider benefits adjudications when an individual applicant poses a national-security risk. The Court's order does not prevent the government from using these existing tools when warranted.

The government's new declaration, which purports to provide evidence that the policies at issue serve important governmental interests, adds nothing to the government's claim of irreparable harm. To the contrary, the declaration

2

demonstrates an astounding misunderstanding of the policies challenged in this litigation. The declaration, submitted by the Deputy Director of USCIS, provides examples of how the "countries impacted by the vacated hold policies" supposedly do not provide information necessary for screening and vetting. ECF No. 46-1 ¶ 7. But of the ten countries that the declaration highlights, three—Ethiopia, Liberia, and Pakistan—are not even among the thirty-nine countries covered by the hold on adjudications. That the Deputy Director of USCIS does not know (and cannot be bothered to confirm) which countries are covered by the hold simply proves that the government's assertion of irreparable injury is not credible.

And the Deputy Director's confusion is telling: There is nothing unique about the countries covered by the hold. USCIS has always been required to screen and vet benefits applicants regardless of where they come from. And the agency has long adjudicated benefits requests submitted by people from countries all around the world, including countries with known security vulnerabilities. It has the tools to do this work in a manner that protects national security and public safety. And vacating policies that unlawfully shut down this work will not inflict any irreparable injury.

On the other side of the ledger, these restrictions have upended the lives of immigrants around the country and disrupted the work of the organizations that serve them. The resultant harms to Plaintiffs, their clients, their members, and the public at large are well documented in the Court's decision and largely uncontested in the government's motion. The remaining *Nken* factors therefore favor Plaintiffs.

A stay pending appeal should be denied.

3

**LEGAL STANDARD**

"'A stay pending appeal is an 'intrusion into the ordinary processes of administration and judicial review,' so this 'extraordinary relief' is never 'granted as a matter of right.'" *R.I. State Council of Churches v. Rollins*, 158 F.4th 304, 311 (1st Cir. 2025) (quoting *Rhode Island v. Trump*, 155 F.4th 35, 41 (1st Cir. 2025)). The "party seeking a stay pending appeal . . . bears the burden of justifying the extraordinary relief it requests." *Id.* (quoting *Am. Pub. Health Ass'n v. NIH*, 145 F.4th 39, 47 (1st Cir. 2025)). To do so, the movant "must make: (1) a strong showing that [it] is likely to succeed on the merits; (2) a showing that it will be irreparably injured absent a stay; (3) a showing that the issuance of the stay will [not] substantially injure the other parties interested in the proceeding; and (4) a showing that the public interest lies with [it], not the plaintiffs." *Id.* (quoting *Am. Pub. Health*, 145 F.4th at 47) (alterations in original).

**ARGUMENT**

**I.    The government is not likely to prevail on the merits.**

**A.    The Court correctly concluded that 8 U.S.C. § 1252(a)(2)(B) does not bar jurisdiction.**

The Court has already considered and rejected the government's principal contention that jurisdiction is barred by 8 U.S.C. § 1252(a)(2)(B). Mem. & Order, ECF No. 28 ("Op.") at 26–39. And the Court was right to do so. Section 1252(a)(2)(B) strips courts of jurisdiction over individual decisions denying certain forms of immigration relief. It does not render courts impotent when USCIS institutes unlawful policies and procedures.

4

The text of Section 1252(a)(2)(B) bars review of a "judgment," "decision," or "action." For example, Section 1252(a)(2)(B)(i) applies to "any judgment regarding the granting of relief under" 8 U.S.C. § 1255, which in turn governs the adjustment of status of "an alien," 8 U.S.C. § 1255(a). And Section 1252(a)(2)(B)(ii) applies to "any other decision or action" that "is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security." The language in both provisions references individual decisions. There is no mention of policies or procedures in Section 1252(a)(2)(B), nor any other textual indication that Congress intended the provision to be interpreted to bar programmatic challenges to immigration policies. Had Congress intended to bar programmatic policy challenges, it knew how to do so. *E.g.*, 8 U.S.C. § 1252(a)(2)(A)(iv) (barring jurisdiction over certain "policies and procedures adopted by the Attorney General"). But it did not do so here.

As the Court noted in its decision, Op. at 28, this reading of Section 1252(a)(2)(B) finds support in nearly four decades of Supreme Court precedent. When assessing the scope of statutory language barring review of immigration decisions, the Supreme Court has long distinguished between "direct review of individual denials" and "general collateral challenges" to the legality of the "practices and policies used by the agency." *McNary*, 498 U.S. at 492. And the Court has repeatedly recognized that statutory language barring review of "decisions" or "actions" should not be read to foreclose review of policies or procedures. *See DHS v. Regents of the Univ. of California*, 591 U.S. 1, 19–20 (2020) (differentiating challenges to "action[s]," "decisions," or "proceedings" from a challenge to an agency "program"); *Reno v. Cath.*

*Soc. Servs., Inc.*, 509 U.S. 43, 56 (1993) (differentiating challenges to "the denial of any individual application" from challenges to the "legality of a regulation").

Consistent with that precedent, the Court's reading of Section 1252(a)(2)(B) in this case was appropriately guided by "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Kucana v. Holder*, 558 U.S. 233, 251 (2010). It "takes 'clear and convincing evidence' to dislodge [the] presumption." *Id.* at 252 (quoting *Catholic Soc. Servs.*, 509 U.S. at 64). The government cites no clear and convincing evidence in Section 1252(a)(2)(B) or elsewhere that Congress intended to bar courts from reviewing generally applicable policies and procedures. Absent clear and convincing evidence to the contrary, Section 1252(a)(2)(B) must be read as barring review only of individual benefits determinations. *See id.* at 251 ("When a statute is 'reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'" (quoting *Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 434 (1995))).

Other courts have likewise consistently held that Section 1252(a)(2)(B) bars review only of individual decisions denying immigration relief in individual cases. *E.g.*, *Nakka v. USCIS*, 111 F.4th 995, 1002–03 (9th Cir. 2024) (holding that Section 1252(a)(2)(B) does not preclude review of "general collateral challenges to agency policies" which do not "refer[] to or rely[] on the denial of any individual application") (citation omitted)*; Texas v. Biden*, 20 F.4th 928, 977 (5th Cir. 2021), *rev'd and remanded on other grounds*, 597 U.S. 785 (2022) (explaining that while Section

1252(a)(2)(B) might bar review of a "discretionary decision to return one specific person to Mexico," it does not foreclose review of the "decision to terminate an *entire program*") (emphasis in original); *Roe v. Mayorkas*, No. 22-cv-10808, 2023 WL 3466327, at *7–8 (D. Mass. May 12, 2023) (holding that while Section 1252(a)(2)(B) "bars review of . . . individual parole determination[s]" it does not bar review of "changes in policy"); *Doe v. Trump*, 2026 WL 1170971, at *8 (holding that while Section 1252(a)(2)(B)'s "sweep is broad, its text and context demonstrate that it does not extend to collateral attacks on agency policies and procedures").

And in the context of Section 1252(a)(2)(B)(ii) specifically, the distinction between individual denials of immigration relief and challenges to the legality of policies and procedures is especially important. That is because Section 1252(a)(2)(B)(ii) bars review of certain individual benefits decisions that are left to the "discretion" of the agency. But in this case, Plaintiffs asked the Court to decide the extent of USCIS's legal authority to enact the Challenged Policies, and "the extent of that authority is not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Succar v. Ashcroft*, 394 F.3d 8, 19 (1st Cir. 2005) ("[The plaintiff] challenges the Attorney General's regulation as being contrary to the statute; that is a classic issue for the court to decide. The issue presented is a purely legal question and as such is not within the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B).").

The government's stay motion never addresses the voluminous caselaw holding that Section 1252(a)(2)(B) applies only to individual denials of immigration relief. Instead, it simply rehashes various unpersuasive arguments from its summary

judgment briefing. For example, the government again invokes *Patel v. Garland,* 596 U.S. 328 (2022), to suggest Section 1252(a)(2)(B) should be read broadly. Defs.' Mot. for Stay Pending Appeal, ECF No. 46 ("Mot.") at 5–7. But *Patel* is inapposite. In that case, the Supreme Court held that Section 1252(a)(2)(B)(i) "precludes judicial review of factual findings that underlie a denial of relief." *Patel*, 596 U.S. at 331. *Patel* does not involve a challenge to the legality of agency policies and procedures and does not provide any guidance as to whether such a challenge is reviewable. *See Doe*, 2026 WL 1170971, at *7 ("This argument overreads *Patel. Patel* did not address whether Section 1252(a)(2)(B)(i) bars . . . claims challenging agency policies of general applicability.").

The same is true of the Supreme Court's recent decision in *Mullin v. Doe*, 2026 WL 1825840. There, the Court interpreted another jurisdictional bar in the INA, 8 U.S.C. § 1254a(b)(5)(A), which bars review of "any determination of the Attorney General with respect to the designation, or termination or extension of a designation" under the Temporary Protected Status statute. Consistent with *Patel*, the Court held Section 1254a(b)(5)(A)'s reference to "any determination" also bars review of the agency's "discrete decision[s]" that are "subsidiary" to its final determination. *Id.* at *7, *10 ("If the final agency action is unreviewable, then so too are subsidiary determinations."). Notably, the Court's decision in *Mullin* does not disturb *McNary*, which did not bear on the reviewability of discrete, subsidiary determinations. *Id.* at *8. In *McNary*, the Court held that a jurisdictional bar referencing "a determination respecting an application for adjustment of status under" the Special Agricultural

8

Farmworker program described "a single act," rather than "broad claims about procedures used in implementing" that program. *Id.* (quoting *McNary*, 498 U.S. at 492). That principle remains good law and is dispositive here.

The government also cites *Gupta v. Jaddou*, 118 F.4th 475 (1st Cir. 2024) and other cases considering the legality of USCIS's "visa retrogression" policy, under which USCIS deferred adjudication of adjustment of status applications unless and until an immigration visa became available. Mot. at 8, 20–21. But as Plaintiffs have already explained (and the Court has acknowledged), *Gupta* does not address the scope of Section 1252(a)(2)(B). ECF No. 23 at 19; Op. at 37 n.19. In *Gupta*, the First Circuit expressly declined to rule on jurisdictional grounds and instead resolved the case on the merits. 118 F.4th at 482.

The other visa retrogression cases are no more helpful for the government. Those cases turned on the fact that Section 1255(a) expressly confers the Attorney General with discretion to promulgate regulations governing the adjustment of status process, *see* 8 U.S.C. § 1255(a) (allowing Attorney General to adjust status "in his discretion and under such regulations as he may prescribe"). The cases hold that this express statutory conferral of policymaking discretion and rulemaking authority renders the agency visa retrogression policy unreviewable under Section 1252(a)(2)(B)(ii). *E.g.*, *Kale v. Alfonso-Royals*, 139 F.4th 329, 335 (4th Cir. 2025) ("Here, USCIS is not only granted discretion with respect to the ultimate decision on whether to grant adjustment of status. USCIS also has the discretion to 'prescribe' the regulations that guide its exercise of the discretionary authority.").

The visa retrogression cases are inapplicable for two reasons. First, they involve individual adjudications, not programmatic policy challenges. Because those cases arose in the context of individual adjudications,  each sought review of a specific "decision or action" of the agency, 8 U.S.C. § 1252(a)(2)(B). *E.g.*, *Kale*, 139 F.4th at 335 (holding that Section 1252(a)(2)(B)(ii) does not bar review of "high-level . . . policy choices" only individual "decisions").

Second, Plaintiffs here do not challenge regulations promulgated pursuant to an express statutory conferral of policymaking discretion and rulemaking authority. Unlike in the visa retrogression cases, the government has failed to point to any statute conferring it with unreviewable discretion to enact the Challenged Policies. And, even if USCIS had enacted the Challenged Policies pursuant to an express statutory conferral of discretion (which it did not), that would still not prevent the Court from reviewing the Challenged Policies to ensure that they do not exceed the agency's statutory authority, which "is a purely legal question and as such is not within the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B)." *Succar*, 394 F.3d at 19. Accordingly, the visa retrogression cases are not on point, and the Court correctly distinguished them. Op. at 37–38.

### B.     The Court correctly concluded that the Challenged Policies are reviewable under the APA.

In various places throughout its motion, intermingled (and at times blurred) with its discussion of Section 1252(a)(2)(B), the government suggests that the Challenged Policies are not reviewable under the APA. *E.g.*, Mot. at 5, 7. But these scattered and undeveloped references to the APA hardly establish a likelihood of

success on appeal. The Court has already considered and rejected the government's reviewability arguments, correctly concluding that the Challenged Policies (1) are final agency action, Op. at 51–61, and (2) are not committed to agency discretion by law, *id.* at 44–51.

### 1.    The Challenged Policies are final agency action.

The Challenged Policies are final agency action. In order to be final, an agency action must satisfy two conditions: First, it "must mark the 'consummation' of the agency's decision-making process," *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quoting *Chi. & Southern Air Lines, Inc. v. Waterman S.S. Corp.,* 333 U.S. 103, 113 (1948)). Second, it "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow." *Id.* (quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71 (1970)). The Court applied this test and correctly held that each of the Challenged Policies satisfies both prongs of the test. Op. at 52–61.

The government insists, as it did in its summary judgment briefing, that the first prong of the *Bennett* test is not satisfied because the Challenged Policies operate within "an expressly ongoing decision-making framework established by Presidential Proclamation." Mot. at 16; ECF No. 21 at 25. But the language the government cites "requires ongoing and iterative decision-making only with respect to the *Travel Ban*." Op. at 53 (citing ECF No. 23 at 23) (emphasis in the original). It says nothing about the Challenged Policies and certainly does not require them to be reassessed or reviewed at regular intervals. *Id.* Likewise, the government also briefly states that USCIS has "implemented additional guidance and modified operations," and

11

contends that this indicates the policies are "neither fixed nor final." Mot. at 17. Yet revision is "a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal." *U.S. Army Corps of Eng'rs v. Hawkes Co.,* 578 U.S. 590, 598 (2016). Accordingly, as the Court has already explained at length: "That USCIS subsequently revised its policies as to a limited number of adjudications does not make these otherwise definitive decisions nonfinal." Op. at 56.

The second prong of the *Bennett* test is also satisfied. The Challenged Policies cannot be fairly characterized as a mere "midstream pause in an ongoing administrative process." Mot. at 17. That is because there is no doubt that the policies have "significant practical and legal consequences." Op. at 61. And there is ample authority holding that a nominally temporary policy may still constitute final agency action where it has practical and legal consequences. *E.g., Massachusetts v. Trump*, 790 F. Supp. 3d 8, 26 (D. Mass. 2025) ("[A] number of cases support the proposition that significant pauses and blanket moratoria are final agency actions that cannot be exempted from judicial review merely by being characterized as intermediate.").

### 2. The Challenged Policies are not committed to agency discretion.

The government also renews its argument that the Challenged Policies are unreviewable because they have been "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), but it, again, has little new to say on the issue, *e.g.*, Mot. at 5, 7. The Supreme Court has instructed lower courts to "'read the exception in § 701(a)(2) quite narrowly.'" *Regents*, 591 U.S. at 17 (quotation omitted). The exception applies only to "those rare 'administrative decision[s]'" that are "traditionally left to agency

discretion," *id.* (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)) (alteration in original), or where the "statutes are drawn in such broad terms that … there is no law to apply," *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (citation omitted).

Applying this framework, the Court correctly concluded that the Challenged Policies are not left to agency discretion. Op. at 42–51. Immigration benefits adjudications are governed by a "detailed statutory and regulatory scheme." *Id.* at 45. Even a cursory review of the government's own motion, which is replete with citations to applicable statutes and regulations, confirms this to be the case. *E.g.*, Mot. at 4–5 (citing 8 U.S.C. §§ 1255, 1324a, 1421(c), 1447(b)). This is a domain in which there are plainly "judicially manageable standards," *Am. Pub. Health Ass'n v. NIH*, 145 F.4th 39, 53 (1st Cir. 2025) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)), and the Court did not err in concluding that there is "more than enough law" to apply. Op. at 46, 48, 51 (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 206 (1st Cir. 2003)).

The government's main argument appears to be that because Congress has given USCIS discretion to "grant or deny" benefits in individual cases, it follows that any policies or procedures pertaining to benefits determinations must also be left to the agency's unreviewable discretion. *E.g.*, Mot. at 11. This argument again ignores the distinction between discretion to adjudicate a particular benefits application (which Congress has conferred in some cases) and discretion to adopt any generally applicable policy of the agency's choosing (which Congress has not conferred). *See Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 19 (1st Cir. 2020) ("Nor does

13

the fact that the statute leaves a great deal of discretion to the agency . . . make actions taken pursuant to it unreviewable."). Courts routinely distinguish between agency decisions in individual cases (which are frequently committed to agency discretion) and the enactment of generally applicable policies (which generally are not). *E.g.*, *Casa de Maryland v. DHS*, 924 F.3d 684, 699–701 (4th Cir. 2019) (holding that "[m]ajor agency policy decisions" are reviewable unlike an "individual enforcement decision"); *OSG Bulk Ships, Inc. v. United States*, 132 F.3d 808, 812 (D.C. Cir. 1998) (holding that a "*general enforcement policy*" is reviewable unlike a "*single-shot* non-enforcement decision" (quoting *Crowley Caribbean Transp., Inc. v. Pena*, 37 F.3d 671, 676–77 (D.C. Cir. 1994) (emphasis in original)). As to the latter, the INA supplies ample law for a court to apply in determining whether USCIS's policies conform to the law.

### 3.    Plaintiffs' claims are justiciable.

Finally, courts routinely review the legality of the Executive Branch's administration of immigration laws. *See, e.g.*, *Biden v. Texas*, 597 U.S. 785 (2022) (reviewing challenge to rescission of Migrant Protection Protocols on the merits); *DHS v. Regents of the Univ. of California*, 591 U.S. 1 (2020) (reviewing challenge to rescission of Deferred Action for Childhood Arrivals program on the merits). That is true even though immigration policy sometimes touches on national security. As the Court observed, "simply because the Executive Branch invokes the talisman of national security with respect to its policies does not render those policies unreviewable." Op. at 24.

14

Accordingly, to the extent that the government is reprising its argument that executive action is unreviewable whenever national security is implicated, *see* Mot. at 14–16, that argument is foreclosed by overwhelming precedent and "runs contrary to the fundamental structure of our constitutional democracy." *Washington v. Trump*, 847 F.3d 1151, 1161 (9th Cir. 2017); *see also Ziglar v. Abbasi*, 582 U.S. 120, 143 (2017) ("[N]ational-security concerns must not become a talisman used to ward off inconvenient claims—a 'label' used to 'cover a multitude of sins.'" (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 523 (1985))).

### C.    The Court correctly concluded that the Challenged Policies violate the APA.

#### 1.    The Challenged Policies are unauthorized by statute and are contrary to law.

The Court correctly held that nothing in the INA authorizes USCIS to withhold immigration benefits adjudications indefinitely, to deny immigration benefits on the basis of country of origin, or to institute a blanket, indefinite hold on benefits adjudications. *See* Op. at 86–112. "It is no exaggeration to say that 'an agency literally has no power to act . . . unless and until Congress confers power upon it.'" *City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020) (quoting *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)). Here, none of the Challenged Policies is authorized by the INA (or any other statute), and nothing in the government's motion for a stay pending appeal provides any reason to think that the government is likely to succeed in reversing the Court's decision to grant Plaintiffs summary judgment on their statutory authority claim.

15

*The Comprehensive Re-Review Policy is not authorized by the INA and contravenes many of its provisions.* The Court concluded that "nothing in the statutes that Congress passed authorize[s] or even contemplate[s] USCIS's large-scale re-review of all noncitizens from certain countries who have already been approved for immigration benefits." Op. at 105. The government argues that the Court erred and points to two out-of-circuit cases holding that agencies have some authority to reconsider past decisions. Mot. at 22 (citing *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (Kavanaugh, J.) and *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1019 (9th Cir. 2025)). But—as the Court already explained, Op. at 102–05—both of these cases recognized that an agency does not have any inherent authority to reconsider past decisions where Congress has already specified the appropriate process for reconsideration. *See Ivy Sports Med.*, 767 F.3d at 86 (explaining that "any inherent reconsideration authority does not apply in cases where Congress has spoken"); *Nat'l TPS All.*, 150 F.4th at 1020 (explaining that agencies cannot revisit past decisions "where Congress has spoken as to the proper procedure for reversing a decision.") And Congress has specified in exacting detail when and how USCIS may reconsider past benefits determinations. *E.g.*, 8 U.S.C. § 1451(a) (citizenship); *id.* § 1256 (lawful permanent residence); *see also* Op. at 103–04. Accordingly, USCIS must comply with the various statutory provisions that govern benefits revocations and rescissions.

The Court thus correctly held that if USCIS wishes to revoke previously granted benefits "it must proceed on an individualized level" and "follow the

16

procedures prescribed by Congress." Op. at 105. While the government insists that "nothing in the Comprehensive Re-Review policy indicates that the agency will not undertake an individualized assessment of the applications it re-reviews," Mot. at 23, it is not enough for an agency to provide someone a modicum of individualized consideration before stripping them of citizenship, permanent residence, or other legal statuses. The point is that the agency must follow the specific procedures specified by Congress. USCIS cannot implement a sweeping program to reconsider and revoke or rescind past benefits determinations by executive fiat. The government has not cited any authority suggesting otherwise.

*The Country-Specific Factors Policy is not authorized by the INA and contravenes many of its provisions.* The government is also unlikely to prevail on the merits with respect to the Country-Specific Factors Policy. An agency has no power to act unless Congress authorizes it to do so, *City of Providence*, 954 F.3d at 31, and as Plaintiffs have shown, no statute authorizes USCIS to penalize benefits applicants on the basis of their country of origin. ECF No. 20-1 at 32–37. In promulgating the Country-Specific Factors Policy, the agency cited only 8 U.S.C. § 1182(f). ECF No. 16-3 at 76 (CAR-70). But as the Court has explained, Section 1182(f) "enables the President to impose certain entry restrictions on noncitizens, but it does not give the Executive license to enact restrictions on the ability of noncitizens to obtain immigration benefits—especially those who have already entered the country." Op. at 89; *see also President & Fellows of Harvard Coll. v. DHS*, 788 F. Supp. 3d 182, 196 (D. Mass. 2025) (explaining that the purpose of Section 1182(f) "is to regulate and

17

influence conduct abroad, rather than at home"). Neither in its summary judgment briefing nor in its motion for a stay pending appeal has the government pointed to any other statute authorizing a policy mandating country-of-origin discrimination in the adjudication of immigration benefits. And even if the government had pointed to such a statute, that would not matter, because a policy can only be upheld on "the grounds invoked by the agency." *Calcutt v. FDIC*, 143 S. Ct. 1317, 1318 (2023) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

Rather than identify any source of authority to enact the Country-Specific Factors Policy, the government focuses on whether the policy affirmatively violates Section 1152(a)(1)(A), a provision of the INA that bans discrimination on the basis of "nationality, place of birth, or place of residence." 8 U.S.C. § 1152(a)(1)(A). While the government protests that this provision applies only "to the issuance of an immigrant visa," Mot. at 26, certain immigration benefits, as the Court recognized, Op. at 109, are directly relevant to the issuance of immigrant visas, including adjustment of status, which is the process by which immigrant visas are issued to people in the United States, *see* 8 U.S.C. § 1255(a) (requiring that a noncitizen "is eligible to receive an immigrant visa" and "an immigrant visa is immediately available" before status is adjusted).

In any event, Section 1152(a)(1)(A) is among many provisions in the INA that prescribe in exacting detail how USCIS should go about conducting benefits adjudications, e.g., ECF No. 20-1 at 5–6. Against this backdrop, there is little doubt that had Congress intended for USCIS to have the authority to impose blanket rules

18

mandating country-of-origin discrimination, it would have spoken clearly. Given the absence of any "clear congressional authorization" for the Country-Specific Factors Policy, the Court did not err in holding that policy is unauthorized by statute.[1] *West Virginia v. EPA*, 597 U.S. 697, 723 (2022) (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)).

*The Benefits Hold is not authorized by the INA and contravenes many of its provisions.*[2] The Court concluded that the Benefits Hold, which has indefinitely paused benefits adjudications for people from countries subject to entry restrictions, "is 'fundamentally inconsistent' with the commands of Congress and with USCIS's own regulations." Op. at 98 (quoting *Doe*, 2026 WL 1170971, at *15). The government contends that the Court failed to adequately account for the fact that USCIS must sometimes investigate an applicant to determine their admissibility and attend to

---

[1] The government also suggests that the Court ran afoul of the party-presentation principle by holding that the Country-Specific Factors Policy is unauthorized by statute for reasons that differ from those offered by Plaintiffs. *See* Mot. at 25 – 26. To the contrary, Plaintiffs argued that the Challenged Policies, including the Country-Specific Factors Policy, "contravene numerous provisions in the INA that specify how USCIS should conduct specific benefit adjudications." ECF No. 20-1 at 36. And Plaintiffs cited Section 1152(a)(1)(A) as an example of the myriad ways in which Congress has prescribed how USCIS should conduct benefits adjudications. ECF No. 1 ¶ 28. Regardless, the "party presentation principle is supple, not ironclad," *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020), and "the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).

[2] The government's motion does not appear to challenge the Court's holding that the Global Asylum Hold is contrary to law, Op. at 91–94. Regardless, the Global Asylum Hold is contrary to law for the same reason as the Benefits Hold.

any national-security concerns before granting immigration benefits to that applicant, Mot. at 27–28, but that argument lacks merit.

For one thing, USCIS's authority to deny immigration benefits on security-related grounds in any given case does not imply that the agency has authority to indefinitely and categorically restrict access to immigration benefits merely by invoking national security. And it especially does not imply that the agency has the authority to restrict access to benefits for people who pose no security threat and for whom there is no reason to suspect are inadmissible. The Court recognized this when it held that USCIS does not have the blanket authority to withhold adjudications indefinitely. Op. at 98–100. Indeed, numerous provisions in the INA and its implementing regulations affirmatively obligate the agency to complete adjudications in a timely fashion. *E.g.*, 8 U.S.C. § 1571(b); *see also* Op. at 95 ("The relevant statutes and regulations speak in mandatory terms.").

The government recycles its arguments that some of the timeframes prescribed by the INA are not privately enforceable. *See* Mot. at 28–29. But, again, the government altogether declines to engage with the reasoning and authorities relied on by the Court. Even if some of the statutory and regulatory provisions cited by the Court are not privately enforceable, those provisions nonetheless reflect "the sense of Congress that the adjudication work of USCIS should at least proceed—not be brought entirely to a standstill by the agency." Op. at 97.

## 2.    The Challenged Policies are arbitrary and capricious.

The Court correctly held that the Challenged Policies are arbitrary and capricious for several reasons, including that "(1) USCIS did not offer a reasoned

20

explanation for its policies; (2) USCIS did not consider the reliance interests of the noncitizens who rely on the agency to adjudicate immigration benefits; and (3) to the extent USCIS did provide any explanation for the Challenged Policies, its reasoning was pretextual." *Id.* at 112–13. Nothing in the government's stay motion suggests it is likely to prevail on appeal from that holding.

To begin, the agency did not offer a reasoned explanation for any of the Challenged Policies. Op. at 115. Contrary to the government, the Court's application of the arbitrary-and-capricious standard was no mere "policy disagreement." Mot. at 30. Arbitrary and capricious review "is not a rubber stamp." *Ass'n of Am. Univs. v. DOD*, 792 F. Supp. 3d 143, 169–70 (D. Mass. 2025) (quoting *Penobscot Air Servs., Ltd. v. FAA*, 164 F.3d 713, 720 (1st Cir. 1999)). The Court was required to "undertake 'a thorough, probing, in-depth review' and a 'searching and careful' inquiry into the record." *Penobscot*, 164 F.3d at 720 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415–16 (1971)). That is exactly what the Court did.

Next, the agency did not consider important reliance interests. Op. at 116–120. Insisting that the agency "plainly *did* consider the reliance interests at stake," Mot. at 30, the government cites a brief, conclusory statement that "USCIS has considered that this direction may result in delay to the adjudication of some pending applications" but nonetheless determined that those delays are "necessary and appropriate" in light of "the agency's obligation to protect and preserve our national security." ECF 16-3 at CAR-43. As the Court explained, however, that statement "is 'merely conclusory' and 'provides no explanation as to how USCIS weighed the

21

competing factors and determined that the consequences of delays imposed by the [Challenged Policies] were necessary.'" Op. at 118–20 (quoting *Behdin v. Edlow*, No. 26-cv-00566, 2026 WL 1031079, at *21 (N.D. Cal. Apr. 16, 2026)). The Court's reasoning is correct: Where there are "serious reliance interests at stake . . . conclusory statements do not suffice." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016); *see also Massachusetts v. NIH*, 770 F. Supp. 3d 277, 310 (D. Mass. 2025), *aff'd*, 164 F.4th 1 (1st Cir. 2026) (rejecting agency's "conclusory" consideration of "substantial and long-standing reliance interests"). The government's motion does not wrestle with this reasoning or provide any basis to believe it is likely to be reversed on appeal.

Finally, the Court correctly found that USCIS's reasoning for the Challenged Policies is pretextual. *Trump v. Hawaii*, 585 U.S. 667 (2018), does not support the government's contrary argument. In *Trump v. Hawaii*, the Supreme Court considered a First Amendment Establishment Clause claim, not an APA arbitrary-and-capricious claim. Where the Supreme Court did consider an APA arbitrary-and-capricious claim, it made clear that a policy cannot survive arbitrary-and-capricious review if there is "a significant mismatch" between the agency's stated reasoning and its actual motives. *Dep't of Com. v. New York*, 588 U.S. 752, 755 (2019). The government does not even attempt to grapple with *Department of Commerce* or any of the other authorities holding that an agency cannot support its decision-making with pretextual reasoning, *e.g.*, *Afr. Cmtys. Togeth*er v. *Noem*, 820 F. Supp. 3d 48, 66

22

(D. Mass. 2026). The government has therefore not shown that the Court's pretext holding is likely to be reversed on appeal.

### D.    The Court correctly vacated the Challenged Policies.

Vacatur of the Challenged Policies was the appropriate remedy. The APA expressly requires a reviewing court to "hold unlawful" and "set aside" agency action that, as here, exceeds statutory authority or is contrary to law or arbitrary and capricious. 5 U.S.C. § 706(2). The government complains the Court's order amounts to a "nationwide, programmatic vacatur" that "governs the agency's conduct toward non-parties," Mot. at 34, but the government never raised any argument about the scope of APA vacatur in its summary judgment briefs. ECF No. 21 at 57–61 (arguing that the scope of "any permanent injunction must be limited" but never suggesting that vacatur must be similarly tailored); ECF No. 25 at 1–18 (same). Accordingly, this argument has been waived and is thus an unlikely basis for success on appeal. *E.g.*, *Washington v. HUD*, 171 F.4th 473, 488–89 (1st Cir. 2026) ("And as we have held many times, a party seeking to overturn a district court's order cannot do so based on arguments that it debuts for the first time on appeal.").

In any event, the government is wrong to suggest that *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), which generally requires injunctive relief to be limited to the parties, also applies to APA vacatur. As Plaintiffs previously explained, ECF No. 23 at 56–57, *CASA* explicitly carves out vacatur and other APA remedies, 606 U.S. at 847 n.10. And the government's "procrustean effort to stretch *CASA*'s plaintiff-specific remedial framework onto the APA defies 'countless' precedents to the contrary." *Make the Rd. N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313, at *36 (D.C.

23

Cir. Nov. 22, 2025) (quoting *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 830 (2024) (Kavanaugh, J. concurring)).

Perhaps aware that *CASA* does not apply to APA remedies, the government also intimates that Article III somehow requires tailoring the vacatur order to the parties. Mot. at 34. But the only case the government cites on this point, Mot. at 33, *Murthy v. Missouri*, 603 U.S. 43, 61 (2024), discusses when a party has standing to seek injunctive relief. *Murthy* says nothing about the proper scope of an injunction, much less the proper scope of APA vacatur. In any event, even if the government were correct that vacatur "must be tailored to the injury established by the parties," Mot. at 33, that would not warrant a narrower remedy here. Throughout summary judgment briefing, the government has repeatedly, and correctly, conceded that nationwide relief is necessary to remedy Plaintiffs' injuries. ECF No. 21 at 39, 61 n.32; *see also* ECF No. 23 at 58. Any argument that narrower relief would be sufficient to redress Plaintiffs' injuries has been waived. *Washington*, 171 F.4th at 488–89. And it would be wrong because Plaintiffs are a national coalition that represent millions of individuals. The only way to meaningfully remediate their injuries is through nationwide relief.

Finally, the government argues that remand without vacatur would have been a sufficient remedy at least on Plaintiffs' arbitrary-and-capricious claims. Mot. at 34–35. But the government never sought remand without vacatur in its summary judgment briefing. Indeed, in their opening brief, Plaintiffs affirmatively explained why remand without vacatur is not an appropriate remedy, and the government

24

never argued otherwise. ECF No. 20-1 at 56. The argument is thus waived. It is also wrong. Remand without vacatur is not a proper remedy on Plaintiffs' arbitrary-and-capricious claims, given "the severity of the errors" committed by the agency and the low likelihood "that they can be mended without altering the order." *Cent. Me. Power Co. v. FERC*, 252 F.3d 34, 48 (1st Cir. 2001); *see also Victim Rts. L. Ctr. v. Cardona*, No. 20-cv-11104, 2021 WL 3516475, at *1 (D. Mass. Aug. 10, 2021) (rejecting remand without vacatur as remedy for arbitrary-and-capricious claim). And even if it were a proper remedy on the arbitrary-and-capricious claim, it would not matter because the government does not contest, nor could it, that vacatur is an appropriate remedy on Plaintiffs' excess-of-statutory-authority claim. ECF No. 20-1 at 56.

## II.    The balance of the equities and the public interest counsel against a stay pending appeal.

The remaining *Nken* factors all counsel against a stay pending appeal. The government has not demonstrated that it will suffer irreparable injury absent a stay, and a stay would result in serious harms to Plaintiffs and the public.

### A.    The government is not irreparably injured by an order requiring it to follow the law.

The government asserts that absent a stay it will suffer irreparable injury because the Court's vacatur order "effectively compels the agency to make discretionary immigration decisions under circumstances that the agency has determined may be inadequate to protect national security and public-safety interests." Mot. at 36. In support, the government submits a new declaration from the Deputy Director of USCIS that purports to provide additional evidence that the Challenged Policies serve important governmental interests. ECF No. 46-1. But the

25

new declaration is not a part of the administrative record and cannot be used to rehabilitate the deficiencies in the reasoning the agency offered for the Challenged Policies at the time of their enactment. *See Regents*, 591 U.S. at 24 ("An agency must defend its actions based on the reasons it gave when it acted."); *see Am. Hosp. Ass'n v. Kennedy*, 164 F.4th 28, 34 (1st Cir. 2026) (rejecting an agency's "post hoc rationalization submitted to fill the yawning void in the administrative record").

To the extent the Court considers the new declaration, it falls far short of establishing irreparable injury. To begin, the declaration purports to justify the Benefits Hold by citing security vulnerabilities in countries that are not covered by the Travel Ban and therefore are not even subject to the Benefits Hold at all. The declaration states that "countries impacted by the vacated hold policies generally possess little to no credible identity management infrastructure," claiming that "[t]his makes it very difficult, if not impossible, for USCIS to rely on civil and identity documents presented to perform identity verification, conduct screening and vetting, or evaluate eligibility for immigration benefits." ECF No. 46-1 ¶ 7. Then the declaration cites ten examples of countries "impacted by the vacated hold policies" and explains the purported security vulnerabilities that supposedly warrant each country being covered by the hold. But there is a glaring problem. The list of examples includes three countries that are not among the thirty-nine countries covered by the Benefits Hold: Ethiopia, Liberia, and Pakistan. *Id.* ¶¶ 7(e), (g), (h); *see also* Op. at 9–10 nn. 5–6 (listing the covered countries).

26

This error severely undercuts the government's claim to irreparable injury. For one, the Deputy Director's misapprehension of the most basic facts about the policies (and failure to confirm those facts before submitting sworn testimony) undermines the credibility of her declaration and of the agency. More than that, the error proves the absence of any irreparable injury. According to the Deputy Director's sworn declaration, Ethiopia, Liberia, and Pakistan each pose significant security vulnerabilities. But these countries are not covered by the Challenged Policies and are not subject to the Benefits Hold. That USCIS can and does adjudicate benefits applications for people from these countries despite the alleged screening and vetting deficiencies belies any suggestion of irreparable harm.

The government's other arguments on irreparable injury do not hold up. As an initial matter, because the government has not shown that it is likely to succeed on the merits, it is not entitled to a stay regardless of whether it shows irreparable harm. *See R.I. State Council of Churches*, 158 F.4th at 312 ("If the government fails to make a strong showing that it is likely to succeed on the merits, 'the remaining elements are of little consequence.'" (quoting *Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 92 (1st Cir. 2020))); *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) ("The *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."). Similarly, because the government has not shown a likelihood of success on the merits—and therefore has not shown that the Court's vacatur order is preventing it from undertaking any

27

lawful conduct—the government cannot show irreparable injury: "an agency is not harmed by an order prohibiting it from violating the law." *Woonasquatucket River Watershed Council v. USDA*, 778 F. Supp. 3d 440, 477 (D.R.I. 2025).

Further, the Court has already rejected the government's premise that the Challenged Policies are necessary to address "significant national-security, public safety, and terrorism-related concerns." Mot. at 35. For one, there is no evidence in the record showing that the nationals of the thirty-nine countries subject to the Travel Ban pose unique national-security risks. In promulgating the policies, the agency cited two crimes allegedly committed by Afghan nationals, and the Court rightly observed that "[e]xtrapolating the criminal conduct of two noncitizens to thousands of other noncitizens, from dozens of countries around the world, does not rank as reasoned decisionmaking." Op. at 114 (quoting *Doe*, 2026 WL 1170971, at *17). Nor is it a proper basis to find irreparable injury.

Similarly, while the government relies heavily on the factual findings in the two Presidential Proclamations announcing the Travel Ban, those proclamations "focus solely on restricting the *entry* of noncitizens from thirty-nine countries whose vetting and screening practices were deemed to be deficient." Op. at 114. But the Court has already correctly rejected the view that the purported screening and vetting deficiencies identified in those proclamations somehow support restricting access to immigration benefits for people who are already in the country—many of whom have been here for years. *Id.* (citing *Varniab v. Edlow*, No. 25-cv-10602-SVK, 2026 WL 485490, at *19 (N.D. Cal. Feb. 20, 2026)); *see also* ECF No. 20-1 at 46–49;

28

ECF No. 23 at 30–32. Other courts have rejected that argument as well. *See also Hong Wang v. Chertoff*, 550 F. Supp. 2d 1253, 1260 (W.D. Wash. 2008) (explaining that if an immigrant "presents a threat to national security and public safety," the government "does not ameliorate that threat by delaying a decision" on a pending benefit application).

Finally, even assuming there are circumstances when the government needs to withhold or delay immigration benefits for security reasons, that still would not suffice to show irreparable injury here because the agency has a suite of existing tools it can use to withhold or revoke immigration benefits on a case-by-case basis. USCIS has the statutory authority to take into account individual factors pertaining to an applicant's suitability to receive immigration benefits, including the authority to exercise discretion against unsuitable applicants for certain benefits, *e.g.*, USCIS Policy Manual, vol. 1, pt. E, ch. 8,   https://perma.cc/GX8V-FMV8, and other authorities that allow it to deny non-discretionary benefits on suitability and related grounds, *e.g.*, 8 U.S.C. § 1427(a) (requiring a finding of "good moral character" before granting naturalization). The agency can also withhold adjudications when there is a pending security investigation. 8 C.F.R. § 103.2(b)(18); *see also* Op. at 99 n.34. And it can review and revoke or rescind benefits in a variety of circumstances. 8 U.S.C. §§ 1451, 1158(c)(2), 1256(a); *see also* Op. at 103–05. The government never explains why these tools are insufficient to prevent its purported injuries.

**B.    A stay pending appeal would result in serious harms to Plaintiffs and the public.**

In contrast, Plaintiffs and the public would be severely and irreparably harmed if the Court granted a stay. The Court has already identified and documented the extensive harms inflicted on Plaintiffs, their members, and their clients. Op. at 64–84; 116–20. Many of Plaintiffs' members "have lost jobs, lost income, and lost the ability to care for their families." *Id.* at 77. Some "have been separated from their family members for prolonged periods of time." *Id.* at 78. Others "have fallen out of legal status" and "have expressed fear of being arrested and detained by ICE and being removed from the United States." *Id.* These harms are undoubtedly "severe." *Id.* at 117.

And the severe harms caused by the Challenged Policies are not limited to Plaintiffs and their members. To the contrary, the consequences of the Challenged Policies have been felt in every corner of the country by immigrants, their families, their employers, and their communities. The breadth of the harms is evidenced by the volume of related litigation. Numerous other courts have had occasion to recognize the extraordinary suffering inflicted by these policies. *E.g.*, *Saghafi v. Edlow*, No. 26-cv-100, 2026 WL 1127468, at *10 (D. Md. Apr. 24, 2026) (finding plaintiffs suffered numerous irreparable injuries including loss of employment, family separation, and emotional and financial instability); *see also* Op. at 55 (citing related cases). In many of these cases, the plaintiffs have made demonstrable, significant contributions to the public good. *E.g.*, *id.* at *11 (plaintiffs were post-doctoral researchers who lost opportunities to pursue studies in artificial intelligence,

30

medicine, and other fields). It is clear from these cases, as well as from the extensive evidence submitted by Plaintiffs, that the public interest does not support a stay pending appeal.

The government's motion says little about the public interest. It argues that "given the lengthy processing times that frequently accompany complex-benefit adjudications," the difference in adjudication times under the Challenged Policies is "likely to be marginal for many applicants." Mot. at 38. But adjudications have already been paused for seven months, and the government's stay motion seeks to continue the pause indefinitely. And, as the Court has already explained, "even short delays in adjudications can have serious consequences." Op. at 78 (quoting *Bowser v. Noem*, No. 26-cv-10382-AK, 2026 WL 555624, at *6 (D. Mass. Feb. 27, 2026)).

The government also claims that the Court's order intrudes into "matters entrusted principally to the Executive Branch." Mot. at 39. But the Executive Branch's authority over immigration matters is not unlimited, and, as this Court found, the Challenged Policies contravene statutory limits on executive authority in this domain. The Court's order merely requires USCIS to follow the law, and there is "no public interest in the perpetuation of unlawful agency action." *Somerville Pub. Schs. v. Trump*, 139 F.4th 63, 76 (1st Cir. 2025) (quoting *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

## CONCLUSION

A stay pending appeal should be denied.

Dated: July 6, 2026                    Respectfully submitted,

/s/ Amy R. Romero
Amy R. Romero (RI Bar No. 8262)
Kevin Love Hubbard (MA Bar No. 704772)*
DeLuca, Weizenbaum, Barry & Revens, Ltd.
199 North Main Street
Providence, RI 02903
(401) 453-1500
amy@dwbrlaw.com
kevin@dwbrlaw.com
Cooperating Counsel, Lawyers' Committee for
    Rhode Island

/s/ Ryan Cooper
Ryan Cooper (DC Bar No. 1645301)*
Anashua Dutta (DC Bar No. 90007329)*
Catherine M.A. Carroll (DC Bar No. 497890)*
Robin F. Thurston (DC Bar No. 1531399)*
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
rcooper@democracyforward.org
adutta@democracyforward.org
ccarroll@democracyforward.org
rthurston@democracyforward.org

/s/ Kristy Blumeyer-Martinez
Kristy Blumeyer-Martinez (TX Bar No.
    24087177)*
Mona Iman (CA Bar No. 309525)*
Refugee and Immigrant Center for
  Education and Legal Services
131 Interpark Boulevard
San Antonio, TX 78216
(210) 222-0964
mona.iman@raicestexas.org
kristy.blumeyermartinez@raicestexas.org

/s/ Melissa Keaney
Melissa Keaney* (CA Bar No. 265306)*
Abbey Koenning-Rutherford* (CO Bar No.
    59636)*
Reem Subei (NC Bar No. 60219)*
Muslim Advocates

32

1032 15th Street NW No. 362
Washington, DC 20005
(202) 655-2969
melissa@muslimadvocates.org
abbey@muslimadvocates.org
reem@muslimadvocates.org

*/s/* Kalpana V. Peddibhotla
Kalpana V. Peddibhotla (Cal. Bar No. 200330)*
Anisa Rahim (NJ Bar No. 007802007)*
South Asian American Justice Collaborative
333 West San Carlos Street Suite 600
San Jose, CA 95110
(408) 550-9240
kalpana@saajco.org
anisa.rahim@saajco.org

*Counsel for Plaintiffs*
*Admitted pro hac vice

33

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing opposition to be filed electronically

with the Court and served on all counsel of record using the CM/ECF system.

Dated: July 6, 2026

/s/ Ryan Cooper
Ryan Cooper
*Counsel for Plaintiffs*