UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DORCAS INTERNATIONAL INSTITUTE OF RHODE ISLAND; | ) | |
| REFUGEE DREAM CENTER; | ) | |
| SERVICE EMPLOYEES INTERNATIONAL UNION; | ) | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA; | ) | |
| AFRICAN COMMUNITIES TOGETHER; | ) | |
| VENEZUELAN ASSOCIATION OF MASSACHUSETTS; | ) | |
| PARTNERSHIP FOR THE ADVANCEMENT OF NEW AMERICANS; and | ) | |
| AMERICAN GATEWAYS, | ) | No. 26-cv-132-JJM-PAS |
| Plaintiffs, | ) | |
| v. | ) | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; | ) | |
| JOSEPH EDLOW, *in his official capacity as Director of the United States Citizenship and Immigration Services*; | ) | |
| DEPARTMENT OF HOMELAND SECURITY; and | ) | |
| MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security*, | ) | |
| Defendants. | ) | |

ORDER

This case stands for the quite unremarkable proposition that the United States Citizenship and Immigration Services ("USCIS") cannot arbitrarily shut down the legal immigration system for individuals from thirty-nine African, Asian, Latin American, and Middle Eastern countries.  USCIS nevertheless strived to do just that, adopting a series of policies (the "Challenged Policies"[1]) that, among other things, categorically barred individuals from these thirty-nine countries from obtaining final decisions on their asylum, work permit, green card, and citizenship applications.

A coalition of nonprofit organizations and labor unions (collectively, the "Plaintiffs") representing immigrants impacted by these policies sued and argued that USCIS's actions violated the Administrative Procedure Act ("APA") because they were contrary to law and arbitrary and capricious.  The Court agreed with Plaintiffs and issued an Order, vacating the Challenged Policies in their entirety.  ECF No. 28. The Government appealed that decision over a month ago but now argues that it is entitled to the "extraordinary relief" of a stay pending appeal.   ECF No. 46; *see Nken v. Holder*, 556 U.S. 418, 433–34 (2009).  The Court is unconvinced.

---

[1] The Challenged Policies include: (1) the "Benefits Hold Policy," which placed a hold on the adjudication of immigrant benefit requests for individuals from thirty-nine so-called "Travel Ban Countries"; (2) the "Global Asylum Hold Policy," which placed a hold on the adjudication of all applications for asylum and withholding of removal, regardless of the individual's country of origin; (3) the "Comprehensive Re-Review Policy," which directed USCIS officials to re-review already approved immigration benefit requests for individuals from Travel Ban Countries who entered the United States on or after January 20, 2021; and (4) the "Country-Specific Factors Policy," which required USCIS officials to consider country-specific facts and circumstances as significant negative factors when deciding whether to grant benefit requests to those from Travel Ban Countries.  *See* ECF No. 28 at 19–21.

There are four factors that guide the Court's stay analysis, *see Nken*, 556 U.S. at 434, and none of those factors weigh in the Government's favor. First, the Government has not made a strong showing that it is likely to succeed on the merits of its appeal. It largely recycles jurisdictional and merits-based arguments from its Cross-Motion for Summary Judgment that the Court has already considered and rejected. In its Order, the Court recognized that, in implementing the Challenged Policies,

> USCIS: claims statutory and regulatory authority that it does not possess; makes decisions without the reasoned explanations that it must provide; acts without regard for the reliance interests of applicants that it must consider; and justifies its actions with pretextual concerns of "national security" that mask anti-immigrant sentiments that it is forbidden from letting influence its decision-making. In legal terms that means USCIS's actions are contrary to law and arbitrary and capricious.

ECF No. 28 at 3–4. The Government, for its part, does not offer a persuasive reason to disturb this ruling.

Second, the Government fails to demonstrate that it will be irreparably injured absent a stay. The Government waited two weeks to file its "emergency" stay motion, but it presents no evidence that any harm occurred within those two weeks. Nor does it point to any harm that has occurred in the last month since USCIS implemented the Court's Order and resumed adjudicating benefit requests for individuals from the covered countries.

In its search for an irreparable injury, the Government offers up a new declaration from the Deputy Director of USCIS, who laments that "[t]he main harm" of the Court's Order is that USCIS will have to adjudicate cases for individuals from "identified" "high-risk countries" that purportedly "possess little to no credible

identity management infrastructure." ECF No. 46-1 at 2, 6. Of the ten examples of "identified" "high-risk countries" that the Deputy Director highlights, three— Ethiopia, Liberia, and Pakistan—are not even among the thirty-nine countries covered by USCIS's hold on adjudications. *Id.* at 3–4. The Court therefore has a hard time crediting the Government's assertions of irreparable injury.

Finally, Plaintiffs' interests and the public interest weigh heavily against granting the Government's request for a stay. During the more than six months that the Challenged Policies were in effect, countless immigrants living in the United States—solely by virtue of their nationalities and not because of anything they did wrong—lost jobs, lost legal status, and lost the ability to meaningfully plan for their futures. There is overwhelming evidence of harm suffered by these individuals in the record, and there is no doubt that further injury would result if a stay were to be granted. Quite tellingly, the Government has little to say about these harms and provides no evidence to the contrary.

As explained in more detail below, the Government fails to meet the burden that a stay pending appeal requires. The Court therefore DENIES the Government's Motion.

## I.    BACKGROUND

On June 5, 2026, the Court issued an Order (the "June 5th Order" or "Order") that granted partial summary judgment to Plaintiffs who, along with their members and clients, were impacted by the Challenged Policies. ECF No. 28. As part of that Order, the Court vacated the Challenged Policies after concluding that they were

contrary to law and arbitrary and capricious in violation of the APA.[2]  *Id.*  The Government then asked the Court to enter partial final judgment for Plaintiffs under Fed. R. Civ. P. 54(b).  ECF No. 31.  Finding there to be no just reason for delay, the Court granted that request on June 11, 2026.  ECF No. 36.

The next day, the Government filed a Notice of Appeal, *see* ECF No. 39, and that appeal has been docketed with the United States Court of Appeals for the First Circuit. *See Dorcas Int'l Inst. of R.I. v. U.S. Citizenship & Immigr. Servs.* ("*Dorcas*"), No. 26-cv-132-JJM-PAS, --- F. Supp. 3d ----, 2026 WL 1622708 (D.R.I. June 5, 2026), *appeal docketed*, No. 26-1703 (1st Cir. June 12, 2026).  In the meantime, USCIS has implemented the Court's Order and posted notice of compliance on its website.[3]

On June 19, 2026, two weeks after the Court issued its initial Order, the Government filed the present Motion for a Stay Pending Appeal.  ECF No. 46. Plaintiffs filed their Response In Opposition to the Government's Motion two weeks later, ECF No. 47, and the Government waived its opportunity to file a Reply.  ECF No. 48.  The Court heard oral arguments on the Government's Motion on July 15, 2026.

---

[2] Plaintiffs also raised constitutional claims in their Complaint, *see* ECF No. 1 at 65–68, but they elected not to press them on summary judgment.  *See* ECF No. 20 at 1 n.2.

[3] *See* U.S. Dep't of Homeland Sec., USCIS, Court Order on Hold Policies, https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies [https://perma.cc/4QTQ-X7CG] (last updated June 12, 2026) ("With entry of final judgment this order is effective immediately, and pursuant to the court-ordered vacatur, applies agency-wide.  Thus, the vacatur applies to PM 602-0192, PM 602-0194, and PA 2025-26, which should be treated as if they are not in effect.").

## II.    LEGAL STANDARD

"'A stay is not a matter of right'" but rather "'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.'" *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672–73 (1926)).  "As the party seeking a stay pending appeal, the [Government] bears the burden of justifying the extraordinary relief it requests." *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 145 F.4th 39, 47 (1st Cir. 2025) (citing *Nken*, 556 U.S. at 433–34).

"To meet its burden for a stay," the Government must make: "'(1) a strong showing that [it] is likely to succeed on the merits; (2) a showing that it will be irreparably injured absent a stay; (3) a showing that the issuance of the stay will [not] substantially injure the other parties interested in the proceeding; and (4) a showing that the public interest lies with [it], not the plaintiffs.'" *R.I. State Council of Churches v. Rollins*, 158 F.4th 304, 311 (1st Cir. 2025) (alterations in original) (quoting *Nat'l Insts. of Health*, 145 F.4th at 47).  "The first two factors . . . are the most critical." *Nken*, 556 U.S. at 434.  And the final two factors "merge when the Government" is a party. *Id.* at 435.

## III.    DISCUSSION

In its Motion, the Government largely focuses on the first two factors of the stay analysis.  But, as discussed below, the Court is unconvinced that the Government is likely to succeed on the merits of its appeal or that it will be irreparably injured absent a stay.  The Court also finds that the issuance of a stay is

6

likely to substantially injure Plaintiffs, as well as their members and clients, and that the public interest does not lie with the Government.

### A. The Government Fails to Make a Strong Showing That It Is Likely to Succeed on the Merits of Its Appeal

In the First Circuit, "'[t]he most important' of the stay factors is the 'likelihood of success on the merits.'" *R.I. State Council of Churches*, 158 F.4th at 311 (quoting *Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 92 (1st Cir. 2020)). "If the government fails to make a strong showing that it is likely to succeed on the merits, 'the remaining elements are of little consequence.'" *Id.* (quoting *Akebia Therapeutics*, 976 F.3d at 92).

Here, the Government argues that it is "likely to succeed on appeal for at least three independent reasons": (1) because "Congress deprived this Court of jurisdiction to review the [Challenged Policies]"; (2) because the Challenged Policies "are consistent with the broad discretion conferred upon [USCIS] by the INA ["Immigration and Nationality Act"], were not developed arbitrability or capriciously, and do not violate the APA"; and (3) because "substantial questions exist concerning the scope of the Court's remedy and its decision to vacate the [Challenged Policies] in their entirety." ECF No. 46 at 3–4. The Court briefly addresses each argument but ultimately finds none of them to be especially convincing.

#### 1. The Court Did Not Lack Jurisdiction to Review the Challenged Policies

The Government repackages many of the same jurisdictional challenges that it previously raised in its Cross-Motion for Summary Judgment. Specifically, the Government reiterates that: (1) federal courts are "preclude[d] or substantially

limit[ed] . . . from reviewing non-constitutional disputes arising from matters of foreign policy and national security and in the context of immigration"; (2) certain provisions of the INA strip the Court of jurisdiction over Plaintiffs' claims; (3) USCIS's actions were "committed to agency discretion by law"; and (4) USCIS's actions did not constitute "final agency action." ECF No. 46 at 4–21.

However, the Court already considered—and rejected—all four of these arguments in its June 5th Order. *See Dorcas*, 2026 WL 1622708, at *10–26. The Government expresses mere disagreement with the Court's decision, but that alone is not enough to show a strong likelihood of success on the merits. *See, e.g., Afr. Cmtys. Together v. Noem*, No. 25-cv-13939-PBS, 2026 WL 961900, at *1 (D. Mass. Apr. 9, 2026) (denying motion for stay pending appeal where the Government largely "repeat[ed] the arguments they already raised in opposing Plaintiffs' motion"); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 588 F. Supp. 3d 191, 203–04 (D.P.R. 2022) (same).

The only intervening authority that has come out since the Court handed down its Order, which Plaintiffs themselves point out, *see* ECF No. 47 at 1, 8–9, is the Supreme Court's decision in *Mullin v. Doe*, 609 U.S. ----, --- S. Ct. ----, 2026 WL 1825840 (June 25, 2026).[4] This decision touches on a separate jurisdiction-stripping provision of the INA, 8 U.S.C. § 1254a(b)(5)(A), and the Supreme Court concluded

---

[4] The Government declined the opportunity to file a Reply in which it could have addressed Plaintiffs' invocation of the *Mullin* decision. ECF No. 48 at 1 ("The [Government] hereby waive[s] reply to Plaintiffs' response to [the Government's] emergency motion for a stay pending appeal."). The attorney for the Government only briefly mentioned *Mullin* at oral argument to preserve the issue for appeal.

that this provision barred judicial review over "all non-constitutional claims" brought by Haitian and Syrian nationals challenging the Secretary of Homeland Security's termination of their countries' Temporary Protected Status ("TPS") designation. *Mullin*, 2026 WL 1825840, at *2, *10.

Nothing in *Mullin* disturbs the Court's own jurisdictional findings in *Dorcas*. If anything, that decision reaffirms the Supreme Court's decades-long distinction, first drawn in *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991), "between the 'direct review of individual denials' of applications and 'general collateral challenges to [unlawful] practices and policies used by the agency in processing applications.'" *Dorcas*, 2026 WL 1622708, at *12 (quoting *McNary*, 498 U.S. at 492). The Supreme Court reiterated that, because the jurisdiction-stripping provision at issue in *McNary* "referred to 'a single act,' *i.e.*, a ruling on an individual application," a noncitizen's "broad claims about the procedures used in implementing the [Special Agricultural Farmworker amnesty] program could proceed." *Mullin*, 2026 WL 1825840, at *8 (quoting *McNary*, 498 U.S. at 492). *McNary*, the Supreme Court emphasized, "turned on the specific wording of the provision at issue." *Id.*

So too here. The Government devotes a substantial portion of its Motion to arguing that this Court was wrong in concluding that Plaintiffs' claims did not fall under 8 U.S.C. § 1252(a)(2)(B)'s jurisdictional bar. ECF No. 46 at 6–11, 13–14, 19. To be sure, this case involves a separate INA jurisdiction-stripping provision from the one in *McNary*. But, just like that case, the Government's jurisdiction-stripping argument ultimately "turn[s] on the specific wording of the provision at issue."

9

*Mullin*, 2026 WL 1825840, at *8.  And, as this Court previously observed, "[t]he most natural reading of Section 1252(a)(2)(B)(i) is that it bars review only over 'a single act of granting or denying an individual application for relief,' but that it does not preclude 'collateral actions challenging general policies and procedures.'"  *Dorcas*, 2026 WL 1622708, at *12 (quoting *Nakka v. U.S. Citizenship & Immigr. Servs.*, 111 F.4th 995, 1004, 1009 (9th Cir. 2024)).[5]

In case it bears repeating, Plaintiffs here did *not* challenge "'a single act'" or "a ruling on an[y] individual application," *Mullin*, 2026 WL 1825840, at *8 (quoting *McNary*, 498 U.S. at 492), so their claims are not barred by Section 1252(a)(2)(B). Instead, Plaintiffs lodged "general collateral challenges to [unlawful] practices and policies used by [USCIS] in processing applications," which fits neatly into the category of claim that the Supreme Court has concluded can proceed in federal court. *See McNary*, 498 U.S. at 492; *Mullin*, 2026 WL 1825840, at *8.

Given these considerations, the Court sees no reason to disturb its prior jurisdictional findings.

### 2.  The Court Did Not Err in Finding That the Challenged Policies Violate the APA

With respect to the merits of Plaintiffs' APA claims, the Government again regurgitates many of the same arguments that it did in its Cross-Motion for Summary Judgment.  In particular, the Government asserts that the Challenged Policies are

---

[5] The Court said the same of Section 1252(a)(2)(B)(ii).  *See Dorcas*, 2026 WL 1622708, at *13 ("Section 1252(a)(2)(B)(ii)—much like Section 1252(a)(2)(B)(i)—bars judicial review of orders denying discretionary benefits in *individual cases*, but the statute does not foreclose *categorical* challenges to agency policies and procedures concerning the adjudication of those benefits." (emphasis in original)).

not contrary to law and are not arbitrary and capricious.  ECF No. 46 at 22–35.  As explained in its June 5th Order, the Court found otherwise.  *Dorcas*, 2026 WL 1622708, at *1, 36–54 (finding the Challenged Policies to be contrary to law and arbitrary and capricious because USCIS: (1) "claim[ed] statutory and regulatory authority that it [did] not possess"; (2) "[made] decisions without the reasoned explanations that it must provide"; (3) "act[ed] without regard for the reliance interests of applicants that it must consider"; and (4) "justifie[d] its actions with pretextual concerns of 'national security' that mask anti-immigrant sentiments that it is forbidden from letting influence its decision-making").  A few new points raised in the Government's stay motion nevertheless warrant brief attention.

### a.    The Government's "Party-Presentation" Argument

First, with respect to the Court's finding that USCIS's Country-Specific Factors Policy is contrary to law, the Government contends that "[t]he Court erred in addressing arguments not advanced by Plaintiffs, and that were not raised or briefed by the parties in the case before it."  ECF No. 46 at 25–26.  According to the Government, the Court concluded that the Country-Specific Factors Policy "discriminated against applicants from [Travel Ban Countries] in violation of 8 U.S.C. § 1152(a)(1)(A)—despite the fact that Plaintiffs never asserted such an argument."  *Id.* at 25.

But the Government is mistaken.  Throughout this litigation, Plaintiffs have argued that the Challenged Policies, including the Country-Specific Factors Policy, "contravene numerous provisions in the INA that specify how USCIS should conduct

specific benefit adjudications." ECF No. 20-1 at 36. And in their Complaint, in discussing the many ways Congress has directed USCIS to adjudicate benefit applications, Plaintiffs specifically pointed to Section 1152(a)(1)(A) as an example of criteria that Congress has prohibited USCIS from considering. ECF No. 1 at 11–12 (citing 8 U.S.C. § 1152(a)(1)(A)).

As the Court previously recognized, this limitation on USCIS's authority directly relates to the policy at issue here. Section 1152(a)(1)(A) provides that, with limited exceptions, "no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, *nationality*, place of birth, or place of residence." 8 U.S.C § 1152(a)(1)(A) (emphasis added). "'[T]his statute bears on [Plaintiffs'] applications for adjustment of status and work authorization, because those applications depend on visa availability, but does not apply to applications for naturalization or asylum.'" *Dorcas*, 2026 WL 1622708, at *45 (quoting *Doe v. Trump*, No. 1:25-cv-13946-JEK, 2026 WL 1170971, at *16 (D. Mass. Apr. 30, 2026)). The Court thereafter found that the Country-Specific Factors Policy, which discriminated against individuals on the basis of their nationality, "plainly contravene[d] the requirements of Section 1152(a)(1)(A)," "at least as applied to the processing of adjustment of status and employment authorization applications." *Id.* at 46, 47.

As relevant here, the "party-presentation principle" provides that federal courts are to "rely on the parties to frame the issues for decision" and that "points not argued will not be considered." *Margolin v. Nat'l Ass'n of Immigr. Judges*, 608 U.S. -

---, 146 S. Ct. 1285, 1288 (2026) (internal citations and quotation marks omitted). The Government seems to suggest that the Court violated this principle, but there is no dispute that Plaintiffs raised Section 1152(a)(1)(A) as an issue, albeit briefly. The Government can try to split hairs over whether the issue was *sufficiently* raised, but the Court will remind it that "[t]he party presentation principle is supple, not ironclad." *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020).

### b.    The Government's "Pretext" Argument

The Government next suggests that the Court erred in finding USCIS's actions to be pretextual, in violation of the APA, because "in *Trump v. Hawaii*, the Supreme Court rejected the same extra-record, allegations-of-animus that the Court relied on here." ECF No. 46 at 31 (citing *Trump v. Hawaii*, 585 U.S. 667, 685–707 (2018)). *Hawaii*, according to the Government, set forth a "rational basis" standard of review that the Court should have applied in its analysis such "that the animus claim could only succeed if it is 'impossible to discern a relationship to legitimate state interest[s],' or that the policy is 'inexplicable by anything but animus.'" *Id.* at 32 (quoting *Hawaii*, 585 U.S. at 706). The Government therefore argues that the Challenged Policies should have been allowed to stand since it "'cannot be said that it is impossible to discern a relationship to legitimate state interests or that the polic[ies] [are] inexplicable by anything but animus'" and because they "'plausibly related to the Government's stated objective to protect the country and improve vetting processes.'" *Id.* (quoting *Hawaii*, 585 U.S. at 704–05, 706). Yet there are several flaws with the Government's argument.

13

First, *Trump v. Hawaii* is clearly distinguishable from this case. *Hawaii* dealt with a Presidential Proclamation that barred nationals from six predominantly Muslim countries from entering the United States. 585 U.S. at 676. The Supreme Court considered "whether the President had authority under the [INA] to issue the Proclamation, and whether the entry policy violate[d] the Establishment Clause of the First Amendment." *Id.* at 675–76. Notably, the Supreme Court did *not* consider an arbitrary-and-capricious claim under the APA like this Court did in *Dorcas.* It is hard to see how the Government's rational-basis standard can be extrapolated from *Hawaii* and applied here where the Court did not even address Plaintiffs' constitutional claims. *See Dorcas,* 2026 WL 1622708, at *56 ("[I]t is not necessary to rule on Plaintiffs' constitutional claims at this time.").

Second, even if the Government's rational-basis test were the correct standard to apply, this is news to the Court, given that the Government never argued that such a test be applied to Plaintiffs' APA claims in its Cross-Motion for Summary Judgment or in its Reply brief. The Government did reference the test with respect to Plaintiffs' *constitutional* claims, *see* ECF No. 20-1 at 56, but again the Court did not address those claims. The Government also contended that USCIS's "decision[s] need only be 'rational' to 'pass muster under the APA's "arbitrary and capricious test."'" *Id.* at 49 (quoting *Nat'l Lab. Rels. Bd. v. Beverly Enters.-Mass., Inc.,* 174 F.3d 13, 24 (1st Cir. 1999)). Of course, the Government said nothing at the time with respect to the pretext claim being able to succeed "only . . . if it is 'impossible to discern a

14

relationship to legitimate state interest[s],' or that the policy is 'inexplicable by anything but animus.'" ECF No. 46 at 32.

Nor does the First Circuit decision on which the Government relied in its Cross-Motion for Summary Judgment say anything of the sort. That case provides that "[i]n order for an agency decision to pass muster under the APA's 'arbitrary and capricious' test, the reviewing court must determine that the decision is 'rational,' . . . that it 'make[s] . . . sense.'" *Beverly Enters.-Mass.*, 174 F.3d at 24 (first quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 290 (1st Cir. 1995); then quoting *P.R. Sun Oil Co. v. U.S. Env't Prot. Agency*, 8 F.3d 73, 77 (1st Cir. 1993)). "Only by 'carefully reviewing the record and satisfying [itself] that the agency has made a reasoned decision' can the court 'ensure that agency decisions are founded on a reasoned evaluation of the relevant factors.'" *Id.* (quoting *Marsh v. Or. Nat'l Res. Council,* 490 U.S. 360, 378 (1989)).

Indeed, this Court did conduct a careful review of the record before it and ultimately found itself unsatisfied that USCIS had made a reasoned decision with respect to the Challenged Policies. Chief among the reasons for that finding was the "'significant mismatch between the decision [USCIS] made and the rationale [it] provided.'" *Dorcas*, 2026 WL 1622708, at *53 (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 783 (2019)). The Court based this conclusion on the Supreme Court's *Department of Commerce* decision, which did in fact deal with an arbitrary-and-capricious claim under the APA. *See* 588 U.S. at 773 ("At the heart of this suit is respondents' claim that the Secretary abused his discretion in deciding to reinstate a

15

citizenship question. We review the Secretary's exercise of discretion under the deferential 'arbitrary and capricious' standard."). Glaringly missing from the Government's stay motion is any attempt to grapple with that decision. *See Agatha v. Trump*, 151 F.4th 9, 12 (1st Cir. 2025) (declining the Government's request for a stay pending appeal where it failed to grapple with the district court's reasoning as to the plaintiff's animus claim and merely devoted two sentences to disputing the district court's ruling on that particular claim).

### c.   The Government's "Timeframe" Argument

Finally, one last point of contention is that, according to the Government, "the Court reasoned, based on various statutory and regulatory provisions, that adjudication [of immigration benefit requests] was required within a certain timeframe." ECF No. 46 at 28. But this argument merely attacks a straw man. The Court never concluded that Plaintiffs were entitled to have their benefit requests be adjudicated within any particular timeframe.

Rather, the Court recognized that the relevant statutes and regulations governing USCIS's processing of applications for asylum, withholding of removal, adjustment of status, employment authorization, and naturalization each contained mandatory language, such as "shall," that imposed a "nondiscretionary duty" on USCIS to adjudicate those applications. *Dorcas*, 2026 WL 1622708, at \*38–41; *see, e.g., Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."); *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 362 (2018) ("The word 'shall'

16

generally imposes a nondiscretionary duty."); *Murphy v. Smith*, 583 U.S. 220, 223 (2018) ("[T]he word 'shall' usually creates a mandate, not a liberty[.]").

Sometimes, the relevant statute or regulation does provide that an application "shall" be adjudicated within a certain time period. *See* 8 U.S.C. § 1158(d)(5)(A)(iii) (providing that final adjudications of asylum claims "shall be completed within 180 days after the date an application is filed," absent "exceptional circumstances"); 8 C.F.R. § 335.3(a) ("A decision to grant or deny the [naturalization] application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the application for naturalization."). But, again, the Court did not state that USCIS must adjudicate *any* application within those time periods, and the Government's argument otherwise misses the forest for the trees. Instead, the Court held that the Global Asylum Hold Policy and the Benefits Hold Policy were contrary to law because USCIS has a nondiscretionary duty to adjudicate Plaintiffs' applications, and the agency simply stopped adjudicating those applications altogether. *Dorcas*, 2026 WL 1622708, at *38–41.

***

Having considered the Government's merits-based arguments, the Court also sees no reason to disturb its ruling that the Challenged Policies are contrary to law and arbitrary and capricious.

### 3.    Vacatur Remains a Proper Remedy in This Case

Finally, the Government contends that it is likely to prevail on appeal because the Court's vacatur of the Challenged Policies "is not necessary to redress the injuries

17

asserted" and is "in direct conflict with" the Supreme Court's recent decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025).  ECF No. 46 at 34.

Notably, the Government did not argue in its Cross-Motion for Summary Judgment (or in its Reply brief, for that matter) that vacatur itself, as a remedy, contravened the Supreme Court's holding in *CASA*.  The Government instead challenged the Court's ability to grant a permanent injunction to those other than the very Plaintiffs that were before the Court.  *See* ECF No. 21 at 60 ("[T]o comply with Article III and the mandate of *CASA*, any permanent injunction must be limited to specifically identified individuals who have been shown to have standing and who were members of an organizational Plaintiff at the time suit was filed."); *see also* ECF No. 25 at 9 ("Defendants reiterate their request that, to comply with Article III and *CASA*, any permanent injunction this Court is inclined to grant be limited to specifically identified individuals who have been shown to have standing and who were members of an organizational Plaintiff at the time suit was filed.").  Indeed, the Court expressly declined to grant Plaintiffs any such injunction.  *Dorcas*, 2026 WL 1622708, at \*55 ("[T]he Court concludes that a permanent injunction is not necessary under the present circumstances.").

The Government's newfound vacatur argument is therefore waived at this stage in the litigation.  *Cf. Acevedo-García v. Vera-Monroig*, 296 F.3d 13, 18 (1st Cir. 2002) (declining to consider arguments raised for first time in support of motion for stay pending appeal of preliminary injunction); *New Jersey v. Trump*, 131 F.4th 27, 41–42, 43 (1st Cir. 2025) (same).

18

This waiver issue aside, as this Court has noted before, nothing in *CASA* forecloses the ability of a court to vacate an agency policy under the APA. *See Dorcas*, 2026 WL 1622708, at *31 ("*CASA* explicitly left in place the Court's authority to vacate unlawful agency action."); *see also Rhode Island v. Trump*, 810 F. Supp. 3d 283, 311 (D.R.I. 2025); *California v. U.S. Dep't of Transp.*, 808 F. Supp. 3d 291, 312 (D.R.I. 2025). The Supreme Court itself stated in that decision: "Nothing we say today resolves the distinct question whether the [APA] authorizes federal courts to vacate federal agency action." *CASA*, 606 U.S. at 847 n.10 (citing 5 U.S.C. § 706(2)); *see also id.* at 873 (Kavanaugh, J., concurring) (recognizing that *CASA* did not alter a district court's ability to "set[ ] aside . . . an agency rule under the APA").

The Government complains that the Court's "nationwide, programmatic vacatur governs the agency's conduct toward non-parties," ECF No. 46 at 34, but this argument fundamentally misunderstands vacatur as a remedy. Vacatur "applies to the unlawful action itself, rather than merely to its application to the individual challengers." *California*, 808 F. Supp. 3d at 312 (citing *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)); *see also Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."). To borrow the words of Chief Justice Roberts, it would be "fairly radical and inconsistent with" the longstanding practices of federal courts to provide party-

19

specific relief under the APA.  Transcript of Oral Argument at 35, *United States v. Texas*, 599 U.S. 670 (2023) (No. 22-58) (Roberts, C.J.)).[6]

The Court therefore discerns no error in granting Plaintiffs' request to vacate the Challenged Policies.

## B.    The Government Fails to Show That It Will Be Irreparably Injured Absent a Stay

The second factor in the stay analysis asks whether the Government "will be irreparably injured absent a stay."  *Nken*, 556 U.S. at 434.  The First Circuit has recognized that "speculative and conclusory statement[s]" of future harm do not suffice.  *New York v. Trump*, 133 F.4th 51, 72 (1st Cir. 2025); *see also R.I. State Council of Churches*, 158 F.4th at 316.

The Government argues that it will suffer "immediate and irreparable harm" because the Court's Order "effectively compels [USCIS] to make discretionary immigration decisions under circumstances that the agency has determined may be inadequate to protect national-security and public-safety interests."  ECF No. 46 at 35, 36.  According to the Government, "[t]he risk that immigration benefits may be granted before relevant, potentially significant, security concerns are identified and resolved constitutes irreparable harm to [it] and the public."  *Id.*  The Government

---

[6] The Government does not even try to explain how an agency policy could possibly be vacated only as to certain plaintiffs.  Judge Randolph D. Moss of the U.S. District Court for the District of Columbia has pointed out the "logistical gymnastics" associated with the Government's position.  *See O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019) ("As a practical matter, . . . how could [a] [c]ourt vacate [a challenged policy] with respect to the . . . plaintiffs in [a] case without vacating the [policy] writ large?  What would it mean to 'vacate' a [policy] as to some but not other members of the public?").

has also submitted a declaration from Angelica Alfonso-Royals, the Deputy Director of USCIS, which purports to show why "the remaining factors required to evaluate the need for a stay likewise favor it." *Id.* at 3 (citing ECF No. 46-1). The Court is unpersuaded.

First, the Government fails to demonstrate that it "*will* be irreparably injured absent a stay." *R.I. State Council of Churches*, 158 F.4th at 316 (emphasis in original). Any harm here seems "speculative" at best, which is plainly insufficient to satisfy the second factor of the stay analysis. *New York*, 133 F.4th at 72. Consider the Government's own words. Following the Court's Order, USCIS has had "to make discretionary immigration decisions under circumstances that the agency has determined *may* be inadequate to protect national-security and public-safety interests." ECF No. 46 at 36 (emphasis added). And, as a result of the Order, "immigration benefits *may* be granted before relevant, *potentially* significant, security concerns are identified and resolved." *Id.* (emphasis added). These statements hardly exude certitude or definiteness of irreparable harm to the Government. *See R.I. State Council of Churches*, 158 F.4th at 316–17 (holding that "speculative predictions" as to "*potential* monetary harm to the government" were insufficient to show irreparable harm).

Second, it is difficult to take seriously the Government's position that it will suffer "immediate" harm, given that it waited *two weeks* after the Court issued its decision to file the present "emergency" motion for a stay. The Government offers no evidence to show that any irreparable harm occurred within those two weeks. Nor

21

has it shown that any irreparable harm has occurred in the last month since the Challenged Policies were vacated and USCIS lifted its hold on adjudications. The Court struggles to see the "immediate" nature of the harm here.

Third, and most significant, is that Ms. Alfonso-Royals' new declaration severely undercuts any argument in favor of finding irreparable harm for the Government. It is unclear why this declaration was not part of the administrative record and why the Government felt the need to file it at this stage in the litigation, considering that "[t]he basic rule" is that "[a]n agency must defend its actions based on the reasons it gave when it acted." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020); *see also In re Fin. Oversight & Mgmt. Bd. for P.R.*, 37 F.4th 746, 761 (1st Cir. 2022) ("[A]n agency must stand by the reasons it provided at the time of its decision and cannot rely on post-hoc rationalizations developed and presented during litigation.").

In any event, to the extent that the Court does consider the declaration, it does not aid the Government's cause. Ms. Alfonso-Royals claims that the "[t]he main harm" of the Court's Order is that USCIS will have to adjudicate cases for individuals from "identified" "high-risk countries" that purportedly "possess little to no credible identity management infrastructure." ECF No. 46-1 at 2, 6. This, she contends, "makes it very difficult, if not impossible, for USCIS to rely on civil and identity documents presented to perform identity verification, conduct screening and vetting, or evaluate eligibility for immigration benefits." ECF No. 46-1 at 2. Ms. Alfonso-Royals then proceeds to cite ten examples of "countries impacted by the vacated hold

22

policies" and explains the purported security "risks posed by each country." *Id.* at 2–4.

But, as Plaintiffs point out, there is a glaring problem with this declaration. ECF No. 47 at 3, 26. Of the ten "high-risk countries" that the declaration highlights, three—Ethiopia, Liberia, and Pakistan—are not even among the thirty-nine countries that are subject to the Benefits Hold Policy, the Comprehensive Re-Review Policy, or the Country-Specific Factors Policy. ECF No. 46-1 at 3 ("With Pakistan, corruption and frivolous document issuance are major concerns."); *id.* at 4 ("[A]ny documentation derived from a Liberian birth certificate, to include a national ID or passport, is not reliable."); *id.* ("[E]ven in instances where an Ethiopian document was issued by the proper authority, credibility is limited.").

Are general concerns over the reliability and credibility of documents issued by Ethiopia, Liberia, and Pakistan—countries that were never even subject to the aforementioned policies, let alone the administration's Travel Ban—supposed to constitute irreparable harm to the Government? The Court struggles to see how these concerns are at all relevant, given that the Government has never previously expressed them to the Court. *See Am. Hosp. Ass'n v. Kennedy*, 164 F.4th 28, 34 (1st Cir. 2026) ("Although agencies may later 'elaborate' on the reasons initially provided to justify agency action, they may not provide altogether new reasons after-the-fact.").[7] As Plaintiffs aptly observe, that USCIS can and does adjudicate applications

---

[7] Once again, the Court notes that the Government declined the opportunity to file a Reply brief to explain, among other things, why Ms. Alfonso-Royals' declaration references these countries in the first place. ECF No. 48.

23

for individuals from Ethiopia, Liberia, and Pakistan, despite the alleged screening and vetting deficiencies, "belies any suggestion of irreparable harm." ECF No. 47 at 27.

In conclusion, the Court finds that the Government has failed to establish that it will suffer irreparable harm absent a stay. The Court's June 5th Order simply told the Government that it must follow the law in processing immigration benefit requests, and "an agency is not harmed by an order prohibiting it from violating the law." *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440, 477 (D.R.I. 2025).

### C.    Plaintiffs' Interests and the Public Interest Weigh Against Granting a Stay

As for the last two factors of the stay analysis, which again "merge" when the Government is a party, *see Nken*, 556 U.S. at 435, it is undeniable that issuance of a stay would result in substantial injury to Plaintiffs and to the public.

The Court has already identified the considerable harm that Plaintiffs, their members, and their clients faced during the more than six months that the Challenged Policies were in effect. Many of these individuals "lost jobs, lost income, and lost the ability to care for their families." *Dorcas*, 2026 WL 1622708, at *33. Some "have been separated from their family members for prolonged periods of time[.]" *Id.* And others, "who either lack legal status or have fallen out of legal status, have expressed fear of being arrested and detained by ICE ["Immigration and Customs Enforcement"] and being removed from the United States[.]" *Id.*

24

In addition, as Plaintiffs point out, "the Challenged Policies are not limited to Plaintiffs and their members," and "the consequences of the Challenged Policies have been felt in every corner of the country by immigrants, their families, their employers, and their communities." ECF No. 47 at 30. Indeed, since the Court issued its Order, courts across the country addressing similar lawsuits have had occasion to recognize the extensive harms inflicted by the Challenged Policies and have sided with the challengers, either granting them preliminary injunctive relief or temporary restraining orders ("TROs"). *See, e.g.*, *Varniab v. Edlow*, No. 25-cv-10602-SVK, 2026 WL 1708505, at *1–2 (N.D. Cal. June 12, 2026) (granting in part TRO motion brought by Iranian plaintiffs seeking to have their work permits delivered to them); *Karami v. Edlow*, No. 6:26-cv-00585-MTK, 2026 WL 1723913, at *1 (D. Or. June 15, 2026) (granting preliminary injunction to Iranian plaintiff seeking to have her work permit application adjudicated); *Choupanzadeh v. Mullin*, No. 26-cv-0277-SM-TSM, 2026 WL 1724398, at *1 (D.N.H. June 15, 2026) (granting preliminary injunction to Iranian plaintiffs seeking to have their work permit applications adjudicated); *Sunny-Odio v. Trump*, No. 26-cv-04816-RFL, 2026 WL 1763854, at *1 (N.D. Cal. June 18, 2026) (granting preliminary injunction to Nigerian plaintiff seeking to have his work permit application adjudicated); *Doe v. Edlow*, No. 2:26-cv-494, --- F. Supp. 3d ----, 2026 WL 1945085, at *1 (S.D. Ohio July 6, 2026) (granting preliminary injunction to twenty-five plaintiffs, including those from Burma, Iran, Nigeria, Syria, Tanzania, and Venezuela, seeking to have their work permit and green card applications adjudicated); *Hedayati v. Edlow*, No. 26-cv-04054-VKD, 2026 WL 1970745, at *1–2

25

(N.D. Cal. July 7, 2026) (granting in part preliminary injunction to 137 plaintiffs, including those from Afghanistan, Burma, Cote d' Ivoire, Cuba, Haiti, Iran, Malawi, Nigeria, Senegal, Sudan, Syria, Togo, Turkmenistan, Venezuela, and Yemen, seeking to have their work permit applications adjudicated); *Sadighi v. Edlow*, No. 26-cv-02494-CRB, 2026 WL 2020999, at *1 (N.D. Cal. July 13, 2026) (granting preliminary injunction to plaintiffs, including those impacted by the Challenged Policies, seeking to have their naturalization applications adjudicated).

The Government has little to say about the harms that would result to Plaintiffs and the public if a stay were to be granted.  Essentially, the Government contends that because immigration benefit requests already take a long time to be processed, the difference in adjudication times should any hold be put back in place is "likely to be marginal for many applicants."  ECF No. 46 at 38.  But the Government declines to provide an estimate as to how long this hold is supposed to last, and it merely states that USCIS's process of developing and implementing "enhanced vetting procedures" is still ongoing and is expected to be completed "in the coming weeks/months."  *Id.* at 35.[8]

---

[8] When pressed on this issue nearly two months ago at oral argument, the attorney for the Government also could not provide an estimate as to how long USCIS planned for the hold to last.

> THE COURT: Right now, when does USCIS intend to lift the categorical pause, do you know?
>
> THE GOVERNMENT: I do not know.  I do know that the agency is actively working to try and accelerate all the things that have been on hold. . . .  [B]ut in terms of a date certain, I can't give that to you today, your Honor.

That is cold comfort for the individuals whose lives would quite literally be placed on hold, yet again, for those coming weeks/months. *See Dorcas*, 2026 WL 1622708, at *57 ("When USCIS first enacted the policies at the center of this litigation, the agency did not simply place a hold on adjudications. More fundamentally, the Challenged Policies placed the lives of countless individuals on hold—solely by virtue of their countries of birth.").

That the Government "does not address in any meaningful way" the "immediate, predictable" harms that even a short delay in adjudicating benefit requests would cause ultimately "weigh[s] heavily against a stay." *R.I. State Council of Churches*, 158 F.4th at 316; *see also Washington v. U.S. Dep't of Hous. & Urb. Dev.*, 171 F.4th 473, 493 (1st Cir. 2026) ("As for the risk of substantial injury to the interested parties and where the public interest lies, HUD has failed to dispute many of the 'immediate, predicable' harms that would flow to the plaintiffs and their constituents if the preliminary injunctions were lifted.").

The Court therefore finds that the third and fourth stay factors also weigh against granting the Government the stay that it seeks.

## IV.    CONCLUSION

For the reasons stated, the Government has failed to meet its burden of "justifying the extraordinary relief it requests." *Am. Pub. Health Ass'n*, 145 F.4th at 47 (citing *Nken*, 556 U.S. at 433–34). Accordingly, the Government's Motion for a Stay Pending Appeal is DENIED. ECF No. 46.

---

Rough Transcript of Oral Argument at 41:2–8 (May 21, 2026).

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____

JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

July 15, 2026